# Exhibit D

82D CONGRESS
1ST SESSION

# S. 716

---

## IN THE SENATE OF THE UNITED STATES

JANUARY 29, 1951

Mr. McCARRAN introduced the following bill; which was read twice and referred to the Committee on the Judiciary

---

# A BILL

To revise the laws relating to immigration, naturalization, and nationality; and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2   *tives of the United States of America in Congress assembled,*

3   That this Act, divided into titles, chapters, and sections

4   according to the following table of contents, may be cited

5   as the "Immigration and Nationality Act".

## TABLE OF CONTENTS

### TITLE I—GENERAL

Sec. 101. Definitions.
Sec. 102. Applicability of title II to certain nonimmigrants.
Sec. 103. Powers and duties of the Attorney General and the Commissioner.
Sec. 104. Bureau of Passports, Visas, Security and Consular Affairs.
Sec. 105. Liaison with internal security officers.
Sec. 106. Finality of administrative decisions; judicial review.

2

## TABLE OF CONTENTS—Continued

### TITLE II—IMMIGRATION

#### CHAPTER 1—QUOTA SYSTEM

Sec. 201. Numerical limitations; annual quota based upon national origin; minimum quotas.
Sec. 202. Determination of quota to which an immigrant is chargeable.
Sec. 203. Allocation of immigrant visas within quotas.
Sec. 204. Procedure for granting quota status under section 203 (a) (1).
Sec. 205. Procedure for granting nonquota or quota status or preference by reason of relationship.
Sec. 206. Revocation of approval of petitions.
Sec. 207. Unused quota immigrant visas.

#### CHAPTER 2—QUALIFICATIONS FOR ADMISSION OF ALIENS

Sec. 211. Documentary requirements; aliens ineligible to citizenship.
Sec. 212. General classes of aliens excluded from admission.
Sec. 213. Admission of aliens on giving bond or cash deposit.
Sec. 214. Admission, in case of contagious disorder, of spouse or child of citizen or resident alien.
Sec. 215. Admission of nonimmigrants.
Sec. 216. Prevention in time of war of departure from or entry into the United States contrary to the public safety.

#### CHAPTER 3—ISSUANCE OF ENTRY DOCUMENTS

Sec. 221. Issuance of visas.
Sec. 222. Applications for visas.
Sec. 223. Reentry permits.
Sec. 224. Nonquota immigrant visas.

#### CHAPTER 4—PROVISIONS RELATING TO ENTRY AND EXCLUSION

Sec. 231. Lists of alien and citizen passengers arriving or departing; record of resident aliens and citizens leaving permanently for foreign country.
Sec. 232. Detention of aliens for observation and examination.
Sec. 233. Temporary removal upon arrival for examination.
Sec. 234. Physical and mental examination.
Sec. 235. Inspection by immigration officers.
Sec. 236. Special inquiry officers.
Sec. 237. Immediate deportation of aliens excluded from admission or entering in violation of law.
Sec. 238. Entry through or from foreign contiguous territory and adjacent islands; landing stations.
Sec. 239. Designation of ports of entry for aliens arriving by civil aircraft.
Sec. 240. Records of admission.

#### CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS

Sec. 241. General classes of deportable aliens.
Sec. 242. Apprehension and deportation of aliens.
Sec. 243. Countries to which aliens shall be deported; cost of deportation.
Sec. 244. Suspension of deportation.
Sec. 245. Adjustment of status of nonimmigrant to that of person admitted for permanent residence.

3

## TABLE OF CONTENTS—Continued

### TITLE II—IMMIGRATION—Continued

#### CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS—continued

Sec. 246. Rescission of adjustment of status.
Sec. 247. Adjustment of status of certain resident aliens to nonimmigrant status.
Sec. 248. Change of nonimmigrant classification.
Sec. 249. Record of admission for permanent residence in the case of certain aliens who entered prior to July 1, 1924.
Sec. 250. Removal of aliens who have fallen into distress.

#### CHAPTER 6—SPECIAL PROVISIONS RELATING TO ALIEN CREWMEN

Sec. 251. Lists of alien crewmen; reports of illegal landings.
Sec. 252. Permits to land temporarily.
Sec. 253. Hospital treatment of alien crewmen afflicted with certain diseases.
Sec. 254. Control of alien crewmen.
Sec. 255. Employment on passenger vessels of aliens afflicted with certain disabilities.
Sec. 256. Discharge of alien crewmen.
Sec. 257. Bringing in alien crewmen into United States with intent to evade immigration laws.

#### CHAPTER 7—REGISTRATION OF ALIENS

Sec. 261. Aliens seeking entry into the United States.
Sec. 262. Registration of aliens in the United States.
Sec. 263. Provisions governing registration of special groups.
Sec. 264. Forms and procedure.
Sec. 265. Notices of change of address.
Sec. 266. Penalties.

#### CHAPTER 8—GENERAL PENALTY PROVISIONS

Sec. 271. Prevention of unauthorized landing of aliens.
Sec. 272. Bringing in alien subject to disability or afflicted with disease.
Sec. 273. Unlawful bringing of aliens into United States.
Sec. 274. Bringing in and harboring certain aliens.
Sec. 275. Entry of alien at improper time or place; misrepresentation and concealment of facts.
Sec. 276. Reentry of deported alien.
Sec. 277. Aiding or assisting subversive alien to enter the United States.
Sec. 278. Importation of aliens for immoral purposes.
Sec. 279. Jurisdiction of district courts.

#### CHAPTER 9—MISCELLANEOUS

Sec. 281. Schedule of fees.
Sec. 282. Printing of reentry permits and blank forms of manifests and crew lists.
Sec. 283. Travel expenses and expense of transporting remains of immigration officers and employees dying outside the United States.
Sec. 284. Overtime compensation for immigration officers.

**4**

## TABLE OF CONTENTS—Continued

### TITLE II—IMMIGRATION—Continued

#### CHAPTER 9—MISCELLANEOUS—continued

Sec. 285. Disposal of privileges at immigrant stations.
Sec. 286. Disposition of moneys collected under the provisions of this title.
Sec. 287. Powers of immigration officers and employees.
Sec. 288. Local jurisdiction over immigrant stations.
Sec. 289. American Indians born in Canada.
Sec. 290. Central file; information from other departments and agencies.
Sec. 291. Burden of proof.
Sec. 292. Right to counsel.

### TITLE III—NATIONALITY AND NATURALIZATION

#### CHAPTER 1—NATIONALITY AT BIRTH AND BY COLLECTIVE NATURALIZATION

Sec. 301. Nationals and citizens at birth.
Sec. 302. Persons born in Puerto Rico.
Sec. 303. Persons born in the Canal Zone.
Sec. 304. Persons born in Alaska.
Sec. 305. Persons born in the Territory of Hawaii.
Sec. 306. Persons born in the Virgin Islands.
Sec. 307. Persons living in and born in Guam.
Sec. 308. Nationals but not citizens at birth.
Sec. 309. Children born out of wedlock.

#### CHAPTER 2—NATIONALITY THROUGH NATURALIZATION

Sec. 310. Jurisdiction to naturalize.
Sec. 311. Eligibility for naturalization.
Sec. 312. Requirements as to understanding the English language, history, principles and form of government of the United States.
Sec. 313. Prohibition upon the naturalization of persons opposed to government or law, or who favor totalitarian forms of government.
Sec. 314. Ineligibility to naturalization of deserters from the Armed Forces of the United States.
Sec. 315. Alien relieved from training and service in the Armed Forces of the United States solely because of alienage barred from citizenship.
Sec. 316. Requirements as to residence, good moral character, attachment to the principles of the Constitution, and favorable disposition to the United States.
Sec. 317. Temporary absence of persons performing religious duties.
Sec. 318. Prerequisites to naturalization—burden of proof.
Sec. 319. Married persons.
Sec. 320. Children born outside of United States of one alien and one citizen parent.
Sec. 321. Children born outside of United States of alien parent.
Sec. 322. Child born outside of United States: naturalization on petition of citizen parent; requirements and exemptions.
Sec. 323. Children adopted by United States citizens.
Sec. 324. Former citizens regaining United States citizenship.

5

## TABLE OF CONTENTS—Continued

### Title III—Nationality and Naturalization—Continued

#### Chapter 2—Nationality through Naturalization—continued

Sec. 325. Nationals but not citizens of the United States; residence within outlying possessions.
Sec. 326. Resident Filipinos excepted from certain requirements.
Sec. 327. Former United States citizens losing citizenship by entering the armed forces of foreign countries during World War II.
Sec. 328. Naturalization through service in the Armed Forces of the United States.
Sec. 329. Naturalization through active-duty service in Armed Forces during World War I or World War II.
Sec. 330. Constructive residence through service on certain United States vessels.
Sec. 331. Alien enemies; naturalization under specified conditions and procedure.
Sec. 332. Procedural and administrative provisions; executive functions.
Sec. 333. Photographs.
Sec. 334. Petition for naturalization—contents.
Sec. 335. Investigation of petitioners; preliminary examinations on petitions.
Sec. 336. Final hearing in open court; examination of petitioner before the court.
Sec. 337. Oath of renunciation and allegiance.
Sec. 338. Certificate of naturalization; contents.
Sec. 339. Functions and duties of clerks.
Sec. 340. Revocation of naturalization.
Sec. 341. Certificates of citizenship; procedure.
Sec. 342. Revocation of certificates not to affect citizenship status.
Sec. 343. Documents and copies issued by the Attorney General.
Sec. 344. Fiscal provisions.
Sec. 345. Mail relating to naturalization transmitted free of postage and registered.
Sec. 346. Publication and distribution of citizenship textbooks from naturalization fees.
Sec. 347. Compilation of naturalization statistics and payment for equipment.
Sec. 348. Admissibility in evidence of testimony as to statements voluntarily made to officers or employees in the course of their official duties.

#### Chapter 3—Loss of Nationality

Sec. 349. Loss of nationality by native-born or naturalized citizen.
Sec. 350. Divestiture of foreign nationality.
Sec. 351. Restrictions on expatriation.
Sec. 352. Loss of nationality by naturalized national.
Sec. 353. Section 352 not effective as to certain persons.
Sec. 354. Section 352 (a) (2) not effective as to certain persons.
Sec. 355. Loss of American nationality through parent's expatriation; not effective until child attains age of twenty-five years.
Sec. 356. Nationality lost solely from performance of acts or fulfillment of conditions.
Sec. 357. Application of treaties; exceptions.

6

TABLE OF CONTENTS—Continued

TITLE III—NATIONALITY AND NATURALIZATION—Continued

CHAPTER 4—MISCELLANEOUS

Sec. 358. Certificate of diplomatic or consular officer as to loss of American nationality.

Sec. 359. Certificate of nationality for a person not a naturalized citizen for use in proceedings of a foreign state.

Sec. 360. Judicial proceedings for declaration of United States nationality in event of denial of rights and privileges as national.

TITLE IV—MISCELLANEOUS

Sec. 401. Amendments to other laws.
Sec. 402. Laws repealed.
Sec. 403. Authorization of appropriations.
Sec. 404. Rules and regulations.
Sec. 405. Savings clauses.
Sec. 406. Separability.
Sec. 407. Effective date.

# TITLE I—GENERAL

### DEFINITIONS

SEC. 101. (a) As used in this Act—

(1) The term "advocates" includes, but is not limited to, advises, recommends, furthers by overt act, and admits belief in.

(2) The term "alien" means any person not a citizen or national of the United States.

(3) The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

(4) The term "Attorney General" means the Attorney General of the United States.

(5) The term "border crossing identification card"

7

1  means a document of identity bearing that designation

2  issued to an alien, who is lawfully admitted for permanent

3  residence, or to an alien who is a resident in foreign con-

4  tiguous territory, by a consular officer or an immigration

5  officer for the purpose of crossing over the borders between

6  the United States and foreign contiguous territory in accord-

7  ance with such conditions for its issuance and use as may be

8  prescribed by regulations.

9      (6) The term "clerk of court" means a clerk of a

10  naturalization court.

11      (7) The terms "Commissioner" and "Deputy Commis-

12  sioner" mean the Commissioner of Immigration and Naturali-

13  zation and a Deputy Commissioner of Immigration and Natu-

14  ralization, respectively.

15      (8) The term "consular officer" means any consular,

16  diplomatic, or other officer of the United States designated

17  under regulations prescribed under authority contained

18  in this Act, for the purpose of issuing immigrant or

19  nonimmigrant visas. In the cases of aliens in the Canal

20  Zone and the outlying possessions of the United States,

21  the term "consular officer" means an officer designated

22  by the Governor of the Panama Canal, or the gov-

23  ernors of the outlying possessions, for the purpose of

24  issuing immigrant or nonimmigrant visas under this Act.

25      (9) The term "diplomatic visa" means a nonimmigrant

8

1 visa bearing that title and issued to a nonimmigrant in

2 accordance with such regulations as the Secretary of State

3 may prescribe.

4    (10) The term "administrator" means the administra-

5 tor of the Bureau of Passports, Visas, Security and Consular

6 Affairs of the Department of State.

7    (11) The term "doctrine" includes, but is not limited to,

8 policies, practices, purposes, aims, or procedures.

9    (12) The term "entry" means any coming of an alien

10 into the United States, from a foreign port or place or from

11 an outlying possession, whether voluntarily or otherwise,

12 except that an alien having a lawful permanent resi-

13 dence in the United States shall not be regarded as making

14 an entry into the United States for the purposes of the

15 immigration laws if the alien proves to the satisfaction of the

16 Attorney General that his departure to a foreign port

17 or place or to an outlying possession was not intended

18 or reasonably to be expected by him or his presence in a

19 foreign port or place or in an outlying possession was not

20 voluntary: *Provided,* That no person whose departure from

21 the United States was occasioned by deportation proceed-

22 ings, extradition, or other legal process shall be held to be

23 entitled to such exception.

24    (13) The term "foreign state" includes outlying pos-

25 sessions of a foreign state, but does not include self-governing

9

1   dominions or territories under mandate or trusteeship, which

2   shall be regarded as separate foreign states.

3      (14) The term "immigrant" means every alien except

4   an alien who is within one of the following classes of non-

5   immigrant aliens—

6         (A) (i) an ambassador, public minister, or career

7        diplomatic or consular officer who has been accredited

8        by a foreign government recognized de jure by the

9        United States and who is accepted by the President or

10       by the Secretary of State, and the members of the alien's

11       immediate family;

12         (ii) upon a basis of reciprocity, other officials and

13       employees who have been accredited by a foreign gov-

14       ernment recognized de jure by the United States, who

15       are accepted by the Secretary of State, and the members

16       of their immediate families; and

17         (iii) upon a basis of reciprocity, attendants, ser-

18       vants, personal employees, and members of their im-

19       mediate families, of the officials and employees who

20       have a nonimmigrant status under paragraphs (i) and

21       (ii);

22         (B) an alien, other than one coming for the pur-

23       pose of study or as a bona fide representative of foreign

24       press, radio, film, or other foreign information media

25       coming to engage in such vocation, having a residence

10

1    in a foreign country which he has no intention of aban-

2    doning and who is visiting the United States temporarily

3    for business or temporarily for pleasure;

4        (C) an alien in immediate and continuous transit

5    through the United States, or an alien who qualifies as

6    a person entitled to pass in transit to and from the

7    United Nations Headquarters District and foreign coun-

8    tries, under the provisions of paragraphs (3), (4), and

9    (5) of section 11 of the Headquarters Agreement with

10   the United Nations (61 Stat. 758);

11       (D) an alien crewman serving in good faith as such

12   in any capacity required for normal operation and serv-

13   ice on board a vessel (other than a fishing vessel having

14   its home port or operating base in the United States)

15   or aircraft, who intends to land temporarily and solely in

16   pursuit of his calling as a crewman and to depart from

17   the United States with the vessel or aircraft on which

18   he arrived or some other vessel or aircraft;

19       (E) an alien entitled to enter the United States

20   under and in pursuance of the provisions of a treaty of

21   commerce and navigation between the United States and

22   the foreign state of which he is a national, and the

23   spouse and children of any such alien if accompanying

24   or following to join him; (i) solely to carry on sub-

25   stantial trade principally between the United States and

11

1    the foreign state of which he is a national; or (ii) solely

2    to develop and direct the operations of an enterprise in

3    which he has invested, or is in the process of investing,

4    a substantial amount of capital;

5        (F) an alien having a residence in a foreign

6    country which he has no intention of abandoning,

7    who is a bona fide student qualified to pursue a full

8    course of study and who seeks to enter the United States

9    temporarily and solely for the purpose of pursuing such

10   a course of study at an established institution of learn-

11   ing or other recognized place of study in the United

12   States, particularly designated by him and approved by

13   the Attorney General after consultation with the Office

14   of Education of the United States, which institution

15   or place of study shall have agreed to report to the

16   Attorney General the termination of attendance of

17   each nonimmigrant student, and if any such institution

18   of learning or place of study fails to make reports

19   promptly the approval shall be withdrawn;

20       (G) (i) a designated principal resident represent-

21   ative of a foreign government recognized de jure by the

22   United States, which foreign government is a member

23   of an international organization entitled to enjoy priv-

24   ileges, exemptions, and immunities as an international

25   organization under the International Organizations Im-

12

1  munities Act (59 Stat. 669), accredited resident mem-

2  bers of the staff of such representative, and members of

3  his or their immediate family;

4      (ii)  other accredited representatives of such a for-

5  eign government to such international organizations,

6  and the members of their immediate families;

7      (iii)  aliens able to qualify under paragraphs (i) or

8  (ii) except that they are accredited representatives of

9  a foreign government not recognized de jure by the

10  United States, and/or that their government is not a

11  member of such an international organization, and the

12  members of their immediate families;

13      (iv)  officers, or employees of such international

14  organizations, and the members of their immediate

15  families;

16      (v)  attendants, servants, and personal employees

17  of any such representative, officer, or employee, and

18  the members of the immediate families of such attend-

19  ants, servants, and personal employees;

20      (H)  an alien having a residence in ' foreign

21  country which he has no intention of abandoning  (i)

22  who is of distinguished merit and ability and who is

23  coming temporarily to the United States to perform

24  temporary services of an exceptional nature requiring

25  such merit and ability; or  (ii)  who is coming tempo-

13

1 rarily to the United States to perform other temporary

2 services or labor, if unemployed persons capable of per-

3 forming such service or labor cannot be found in this

4 country;

5  (I) upon a basis of reciprocity, an alien who is a

6 bona fide representative of foreign press, radio, film, or

7 other foreign information media, who seeks to enter the

8 United States solely to engage in such vocation, and the

9 spouse and children of such a representative, if accom-

10 panying or following to join him,

11 (15) The term "immigrant visa" means an immigrant

12 visa required by this Act and properly issued by a consular

13 officer to an eligible immigrant under the provisions of this

14 Act.

15 (16) The term "immigration laws" includes this Act

16 and all laws, conventions, and treaties of the United States

17 relating to the immigration, exclusion, deportation, or

18 expulsion of aliens.

19 (17) The term "immigration officer" means any em-

20 ployee or class of employees of the Service or of the United

21 States designated by the Attorney General, individually or

22 by regulation, to perform the functions of an immigration

23 officer specified by this Act or any section thereof.

24 (18) The term "ineligible to citizenship", when used in

25 reference to any individual means, notwithstanding the pro-

14

1  v.sions of any treaty relating to military service, an indi-
2  vidual who is, or was at any time, permanently debarred from
3  becoming a citizen of the United States under section 3 (a)
4  of the Selective Training and Service Act of 1940, as
5  amended (54 Stat. 885, 55 Stat. 844), or under section 4
6  (a) of the Selective Service Act of 1948 (62 Stat. 605)
7  or under any section of this Act, or any later Act or under
8  any law amendatory of, supplementary to, or in substitu-
9  tion for, any of such sections.

10  (19) The term "lawfully admitted for permanent resi-
11  dence" means the status of having been lawfully accorded
12  the privilege of residing permanently in the United States
13  as an immigrant in accordance with the immigration laws,
14  such status not having changed.

15  (20) The term "national" means a person owing per-
16  manent allegiance to a state.

17  (21) The term "national of the United States" means
18  (A) a citizen of the United States, or (B) a person who,
19  though not a citizen of the United States, owes permanent
20  allegiance to the United States.

21  (22) The term "naturalization" means the conferring of
22  nationality of a state upon a person after birth, by any
23  means whatsoever.

**15**

1    (23) The term "naturalization court", unless otherwise

2 particularly described, means a court authorized by section

3 310 (a) of title III to exercise naturalization jurisdiction.

4    (24) The term "noncombatant service" shall not

5 include service in which the individual is not subject to

6 military discipline, court martial, or does not wear the uni-

7 form of any branch of the armed forces.

8    (25) The term "nonimmigrant visa" means a visa

9 properly issued to an alien as an eligible nonimmigrant by

10 a competent officer as provided in this Act.

11    (26) The term "nonquota immigrant" means—

12    (A) an immigrant who is the child or the spouse

13    of a citizen of the United States;

14    (B) an immigrant, lawfully admitted for perma-

15    nent residence, who is returning from a temporary

16    visit abroad;

17    (C) an immigrant who was born in Canada,

18    the Republic of Mexico, the Republic of Cuba,

19    the Republic of Haiti, the Dominican Republic,

20    the Canal Zone, or an independent country of Central

21    or South America, and the spouse or the child of any

22    such immigrant, if accompanying or following to join

23    him; or

16

1    (D) an immigrant who was a citizen of the

2    United States and may, under section 324 (a) or 327

3    of title III, apply for reacquisition of citizenship; or

4    (E) an immigrant included within the second pro-

5    viso to section 349 (1) of title III.

6    (27) The term "organization" means, but is not limited

7    to, an organization, corporation, company, partnership, as-

8    sociation, trust, foundation, or fund; and includes a group

9    of persons, whether or not incorporated, permanently or

10   temporarily associated together for joint action on any sub-

11   ject or subjects.

12   (28) The term "outlying possessions of the United

13   States" means American Samoa and Swain's Island.

14   (29) The term "passport" means any travel document

15   issued by competent authority showing the bearer's origin,

16   identity, and nationality if any, which is valid for the entry

17   of the bearer into a foreign country.

18   (30) The term "permanent" means a relationship of

19   continuing or lasting nature, as distinguished from temporary,

20   but a relationship may be permanent even though it is

21   one that may be dissolved eventually at the instance either

22   of the United States or of the individual, in accordance with

23   law.

24   (31) The term "person" means an individual or an

25   organization.

1     (32) The term "quota immigrant" means any immi-
2 grant who is not a nonquota immigrant. An alien who is
3 not particularly specified in this Act as a nonquota immi-
4 grant or a nonimmigrant shall not be admitted or considered
5 in any manner to be either a nonquota immigrant or a
6 nonimmigrant notwithstanding his relationship to any indi-
7 vidual who is so specified or by reason of being excepted
8 from the operation of any other law regulating or forbid-
9 ding immigration.

10     (33) The term "residence" means the place of general
11 abode; the place of general abode of a person means the
12 principal dwelling place. Residence shall be considered con-
13 tinuous for the purposes of sections 350 and 352 of title III
14 where there is a continuity of stay but not necessarily an
15 uninterrupted physical presence in a foreign state or states
16 or outside the United States.

17     (34) The term "Service" means the Immigration and
18 Naturalization Service of the Department of Justice.

19     (35) The terms "spouse", "wife", or "husband" do not
20 include a spouse, wife, or husband by reason of any mar-
21 riage ceremony where the contracting parties thereto are
22 not physically present in the presence of each other.

23     (36) The term "State" includes (except as used in
24 section 310 (a) of title III) Alaska, Hawaii, the District

18

1  of Columbia, Puerto Rico, Guam, and the Virgin Islands of
2  the United States.

3      (37) The term "totalitarian party" means an organi-
4  zation which advocates the establishment in the United States
5  of a totalitarian dictatorship or totalitarianism. The terms
6  "totalitarian dictatorship" and "totalitarianism" mean and
7  refer to systems of government not representative in fact,
8  characterized by (A) the existence of a single political party,
9  organized on a dictatorial basis, with so close an identity
10  between such party and its policies and the governmental
11  policies of the country in which it exists, that the party and
12  the government constitute an indistinguishable unit, and
13  (B) the forcible suppression of opposition to such party.

14      (38) The term "United States", except as otherwise
15  specifically herein provided, when used in a geographical
16  sense, means the continental United States, Alaska, Hawaii,
17  Puerto Rico, Guam, and the Virgin Islands of the United
18  States.

19      (39) The term "unmarried", when used in reference
20  to any individual as of any time, means an individual who
21  at such time is not married, whether or not previously
22  married.

23      (40) The term "world communism" means a revolu-
24  tionary movement, the purpose of which is to establish
25  eventually a Communist totalitarian dictatorship in any or

19

1   all the countries of the world through the medium of an

2   internationally coordinated Communist political movement.

3       (b)  As used in titles I and II—

4       (1)  The term "child" means an unmarried person under

5   twenty-one years of age who is—

6           (A)  a legitimate child; or

7           (B)  a stepchild, provided the child was not more

8       than sixteen years of age at the time the marriage creat-

9       ing the status of stepchild occurred; or

10          (C)  a child legitimated under the law of the child's

11      residence or domicile, or under the law of the father's

12      residence or domicile, whether in or outside the

13      United States, if such legitimation takes place before the

14      child reaches the age of sixteen years and the child is

15      in the legal custody of the legitimating parent or parents

16      at the time of such legitimation.

17      (2)  The terms "parent", "father", or "mother" mean

18  a parent, father, or mother only where the relationship

19  exists by reason of any of the circumstances set forth in

20  (1) above.

21      (c)  As used in title III—

22      (1)  The term "child" means an unmarried person

23  under twenty-one years of age and includes a child legiti-

24  mated under the law of the child's residence or domicile, or

25  under the law of the father's residence or domicile, whether

1  in the United States or elsewhere, and, except as otherwise

2  provided in sections 320, 321, and 322 of title III, a child

3  adopted in the United States, if such legitimation or adoption

4  takes place before the child attains the age of sixteen years,

5  and the child is in the legal custody of the legitimating or

6  adopting parent or parents at the time of such legitimation

7  or adoption.

8    (2) The terms "parent", "father", and "mother" in-

9  clude in the case of a posthumous child a deceased parent,

10  father, and mother.

11    (d) As used in chapter 3 of title III—

12    (1) The term "veteran" means a person who served in

13  the armed forces of the United States at any time in an

14  active-duty status during the period from April 21, 1898,

15  to August 12, 1898, or from April 6, 1917, to November

16  11, 1918, or from December 7, 1941, to December 31,

17  1946, all dates inclusive, and who was discharged there-

18  from under honorable conditions.  The records of the armed

19  forces shall be conclusive as to type of a discharge and as to

20  whether the conditions under which a discharge was given

21  were honorable.

22    (2) The term "Spanish-American War" relates to the

23  period from April 21, 1898, to August 12, 1898; the term

24  "World War I" relates to the period from April 6, 1917, to

25  November 11, 1918; and the term "World War II" relates

21

1   to the period from December 7, 1941, to December 31,

2   1946, all dates inclusive.

3      (e) For the purposes of this Act—

4      (1) The giving, loaning, or promising of support or

5   of money or any other thing of value to be used for advocat-

6   ing any doctrine shall constitute the advocating of such doc-

7   trine; but nothing in this paragraph shall be construed as

8   an exclusive definition of advocating.

9      (2) The giving, loaning, or promising of support or of

10   money or any other thing of value for any purpose to any

11   organization shall be conclusively presumed to constitute

12   affiliation therewith; but nothing in this paragraph shall be

13   construed as an exclusive definition of affiliation.

14      (3) Advocating the economic, international, and gov-

15   ernmental doctrines of world communism means advocating

16   the establishment of a totalitarian Communist dictatorship in

17   any or all of the countries of the world through the medium

18   of an internationally coordinated Communist movement.

19      (4) Advocating the economic and governmental doc-

20   trines of any other form of totalitarianism means advocating

21   the establishment in the United States of a totalitarian dic-

22   tatorship as defined in subsection (a) (37).

23   APPLICABILITY OF TITLE II TO CERTAIN NONIMMIGRANTS

24      SEC. 102. Except as otherwise provided in this Act,

25   for so long as they continue in the nonimmigrant classes

22

1   enumerated in this section, the provisions of this Act relat-

2   ing to the exclusion or deportation of aliens shall not be

3   construed to apply to nonimmigrants—

4        (1) within the class described in paragraph (14)

5     (A) (i) of section 101 (a), except those provisions

6     relating to reasonable requirements of passports and

7     visas as a means of identification and documentation

8     necessary to establish their qualifications under such

9     paragraph (14) (A) (i), and, under such rules and

10     regulations as the President may deem to be necessary,

11     the provisions of paragraph (27) of section 212 (a) ;

12        (2) within the class described in paragraph (14)

13     (G) (i) of section 101 (a), except those provisions

14     relating to reasonable requirements of passports and

15     visas as a means of identification and documentation

16     necessary to establish their qualifications under such

17     paragraph (14) (G) (i), and the provisions of para-

18     graph (27) of section 212 (a) ; and

19        (3) within the classes described in paragraphs

20     (14) (A) (ii), (14) (G) (ii), (14) (G) (iii),

21     or (14) (G) (iv) of section 101 (a), except those

22     provisions relating to reasonable requirements of pass-

23     ports and visas as a means of identification and docu-

24     mentation necessary to establish their qualifications

23

1    under such paragraphs, and the provisions of paragraphs

2      (27) and (29) of section 212 (a).

3  POWERS AND DUTIES OF THE ATTORNEY GENERAL AND THE

4                        COMMISSIONER

5    SEC. 103. (a) The Attorney General shall be charged

6  with the administration and enforcement of this Act and

7  all other laws relating to the immigration and naturalization

8  of aliens, except as otherwise provided in this Act.   He shall

9  have control, direction, and supervision of all employees and

10  of all the files and records of the Service.   He shall estab-

11  lish such regulations; prescribe such forms of bond, reports,

12  entries and other papers; issue such instructions; and per-

13  form such other acts as he deems necessary for carrying out

14  the provisions of this Act.   He is authorized, in accordance

15  with the civil-service laws and regulations and the Classi-

16  fication Act of 1949, to appoint such employees of the

17  Service as he deems necessary, and to delegate to them in

18  his discretion any other duties and powers imposed upon

19  him in this Act; he may require or authorize any employee

20  of the Service to perform or exercise any of the powers,

21  privileges, or duties conferred or imposed by this Act or

22  regulations issued thereunder upon any other employee of

23  the Service.   He shall have the power and duty to control

24  and guard the boundaries and borders of the United States

24

1   against the illegal entry of aliens and shall, in his discre-

2   tion, appoint for that purpose such number of employees

3   of the Service as to him shall appear necessary and proper.

4   He is authorized to confer or impose upon any employee of

5   the United States, with the consent of the head of the Depart-

6   ment or other independent establishment under whose juris-

7   diction the employee is serving, any of the powers, privileges,

8   or duties conferred or imposed by this Act or regulations

9   issued thereunder upon officers or employees of the Service.

10   (b) The Commissioner shall be a native-born citizen

11   of the United States and shall be appointed by the Presi-

12   dent, by and with the advice and consent of the Senate, and

13   shall receive compensation at the rate of $17,500 per annum.

14   He shall be charged with any and all responsibilities and

15   authority in the administration of the Service and of this Act

16   which are conferred upon the Attorney General as may be

17   delegated to him by the Attorney General or which may

18   be prescribed by the Attorney General.

19   BUREAU OF PASSPORTS, VISAS, SECURITY AND CONSULAR

20                              AFFAIRS

21   SEC. 104. (a) There is hereby established in the De-

22   partment of State a Bureau of Passports, Visas, Security and

23   Consular Affairs, to be headed by an administrator (with

24   an appropriate title to be designated by the Secretary of

25   State), with rank and compensation equal to that of an

25

1 Assistant Secretary of State. The administrator shall be a
2 native-born citizen of the United States, qualified by experi-
3 ence, and shall maintain close liaison with the appropriate
4 committees of Congress in order that they may be advised
5 regarding the administration of this Act by consular officers.

6 (b) The functions of the Passport Division and of the
7 Visa Division of the Department of State shall be performed
8 by the Bureau of Passports, Visas, Security and Consular
9 Affairs.

10 (c) Within the Bureau there shall be a Passport Office,
11 a Visa Office, and such other offices as the Secretary of State
12 may deem to be appropriate, each office to be headed by a
13 director. The Directors of the Passport Office and the Visa
14 Office shall be experienced in the administration of the na-
15 tionality and immigration laws.

16 (d) There shall be a General Counsel of the Visa
17 Office, who shall be appointed by the Secretary of State and
18 who shall serve under the general direction of the Legal
19 Adviser of the Department of State. The General Counsel
20 shall have authority to maintain liaison with the appropriate
21 officers of the Service with a view to securing uniform inter-
22 pretations of the provisions of this Act.

23 (e) The Bureau shall be under the immediate juris-
24 diction of the Deputy Under Secretary of State for Ad-
25 ministration.

LIAISON WITH INTERNAL SECURITY OFFICERS

SEC. 105. The Commissioner and the administrator shall have authority to maintain direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this Act in the interest of the internal security of the United States. The Commissioner and the administrator shall maintain direct and continuous liaison with each other with a view to a coordinated, uniform, and efficient administration of this Act.

FINALITY OF ADMINISTRATIVE DECISIONS; JUDICIAL REVIEW

SEC. 106. (a) Notwithstanding the provisions of any other law—

(1) determinations of fact by administrative officers under the provisions of this Act or regulations issued thereunder shall not be subject to review by any court;

(2) determinations of law other than with respect to liability for the payment of deportation, detention, and related expenses by vessels, aircraft, or other transportation lines, or the master, commanding officer, owner, agent, or consignee thereof, or the imposition of fines and penalties by administrative

27

1    officers under the provisions of this Act or regulations

2    issued thereunder shall not be subject to review by any

3    court except through the writ of habeas corpus; and

4        (3)  the exercise of discretionary authority conferred

5    upon administrative officers by this Act or regulations

6    issued thereunder shall not be subject to review by any

7    court.

8    (b)  Nothing in subsection (a) of this section shall be

9    held to apply to court proceedings instituted under section

10   360 of this Act.

11              TITLE II—IMMIGRATION

12          CHAPTER 1—QUOTA SYSTEM

13   NUMERICAL LIMITATIONS; ANNUAL QUOTA BASED UPON

14          NATIONAL ORIGIN; MINIMUM QUOTAS

15   SEC. 201. (a) The annual quota of any quota area

16   shall be one-sixth of 1 per centum of the number of inhabi-

17   tants in the continental United States in 1920 attributable

18   by national origin to such quota area, as such number of

19   inhabitants was heretofore determined under the provisions

20   of section 11 of the Immigration Act of 1924: *Provided,*

21   That the quota existing for Chinese persons prior to the

22   date of enactment of this Act shall be continued, and, except

23   as otherwise provided in section 202 (e), the minimum

24   quota for any quota area shall be one hundred.

25   (b)  The determination of the annual quota of any quota

1   area shall be made by the Secretary of State, the Secretary

2   of Commerce, and the Attorney General, jointly.   Such

3   officials shall, jointly, report to the President the quota of

4   each quota area, and the President shall proclaim and make

5   known the quotas so reported.   Such determination and

6   report shall be made and such proclamation shall be issued

7   as soon as practicable after the date of enactment of this

8   Act.   Quotas proclaimed therein shall take effect on the

9   first day of the fiscal year, or the next fiscal half year, next

10   following the expiration of six months after the date of

11   the proclamation, and until such date the existing quotas

12   proclaimed under the Immigration Act of 1924 shall remain

13   in effect.   After the making of a proclamation under this

14   subsection the quotas proclaimed therein shall continue with

15   the same effect as if specifically stated herein and shall be

16   final and conclusive for every purpose, except (1) insofar as

17   it is made to appear to the satisfaction of such officials and

18   proclaimed by the President, that an error of fact has occurred

19   in such determination or in such proclamation, or (2) in the

20   case provided for in section 202 (e).

21       (c) There shall be issued to quota immigrants charge-

22   able to any quota (1) no more immigrant visas in any

23   fiscal year than the quota for such year, and (2) in any

24   calendar month of any fiscal year, no more immigrant visas

25   than 10 per centum of the quota for such year.

**29**

1    (d) Nothing in this Act shall prevent the issuance

2  (without increasing the total number of immigrant visas

3  which may be issued) of an immigrant visa to an immigrant

4  as a quota immigrant even though he is a nonquota immi-

5  grant.

6    (e) The quota numbers available under the annual

7  quotas of each quota area proclaimed under this Act shall

8  be reduced by the number of quota numbers which have been

9  ordered to be deducted from the annual quotas authorized

10  prior to the effective date of the annual quotas proclaimed

11  under this Act under—

12      (1) section 19 (c) of the Immigration Act of 1917,

13    as amended;

14      (2) the Displaced Persons Act of 1948, as

15    amended; and

16      (3) any other Act of Congress enacted prior to the

17    effective date of the quotas proclaimed under this Act.

18  DETERMINATION OF QUOTA TO WHICH AN IMMIGRANT

19              IS CHARGEABLE

20    SEC. 202. (a) Each independent country, self-govern-

21  ing dominion, mandated territory, and territory under the

22  international trusteeship system of the United Nations, other

23  than the United States and its outlying possessions and the

24  countries specified in section 101 (a) (26) (C), shall be

25  treated as a separate quota area when approved by the

30

1   Secretary of State. All other inhabited lands shall be attrib-

2   uted to a quota area specified by the Secretary of State.

3   For the purposes of this Act, the annual quota to which an

4   immigrant is chargeable shall be determined by birth within

5   a quota area, except that—

6       (1) an alien child, when accompanied by an alien

7       parent or parents may be charged to the quota area of

8       the accompanying parent or of either accompanying

9       parent if such parent has received or would be qualified

10      for an immigrant visa, if necessary to prevent the separa-

11      tion of the child from the accompanying parent or parents

12      and if the quota to which such parent has been or would

13      be chargeable is not exhausted for that fiscal year;

14      (2) if an alien is chargeable to a different quota

15      area from that of his accompanying spouse, the quota

16      area to which such alien is chargeable may if necessary

17      to prevent the separation of husband and wife be

18      determined by the quota area of the accompanying

19      spouse, if such spouse has received or would be qualified

20      for an immigrant visa and if the quota to which such

21      spouse has been or would be chargeable is not exhausted

22      for that fiscal year;

23      (3) an alien born in the United States shall be

24      considered as having been born in the country of which

25      he is a citizen or subject, or if he is not a citizen or sub-

31

1    ject of any country, then in the last foreign country in

2    which he had his residence, as determined by the consular

3    officer; and

4          (4) notwithstanding the provisions of paragraphs

5    (1), (2), and (3) of this subsection, any alien who

6    is attributable by as much as one-half of his ancestry

7    to a people or peoples indigenous to the Asia-Pacific

8    triangle defined in subsection (b) of this section, un-

9    less such alien is entitled to a nonquota immigrant sta-

10   tus under paragraph (26) (A), (26) (B), (26) (D),

11   or (26) (E) of section 101 (a), shall be charge-

12   able to a quota as specified in subsection (b) of this

13   section.

14   (b) With reference to determination of the quota to

15   which shall be chargeable an immigrant who is attributable

16   by as much as one-half of his ancestry to a people or peoples

17   indigenous to the Asia-Pacific triangle comprising all quota

18   areas and all colonies and other dependent areas situate

19   wholly east of the meridian sixty degrees east of Green-

20   wich, wholly west of the meridian one hundred and sixty-

21   five degrees west, and wholly north of the parallel twenty-

22   five degrees south latitude—

23          (1) there is hereby established, in addition to

24   quotas for separate quota areas comprising independent

25   countries, self-governing dominions, and territories under

32

1    the international trusteeship system of the United

2    Nations situate wholly within said Asia-Pacific triangle,

3    an Asia-Pacific quota of one hundred annually;

4        (2) such immigrant born within a separate quota

5    area situate wholly within such Asia-Pacific triangle

6    shall not be chargeable to the Asia-Pacific quota, but

7    shall be chargeable to the separate quota area in which

8    he was born;

9        (3) such immigrant born within a colony or other

10    dependent area situate wholly within said Asia-Pacific

11    triangle shall be chargeable to the Asia-Pacific quota;

12        (4) such immigrant born outside the Asia-Pacific

13    triangle who is attributable by as much as one-half of

14    his ancestry to a people or peoples indigenous to not

15    more than one separate quota area, situate wholly

16    within the Asia-Pacific triangle, shall be chargeable to

17    the quota of that quota area;

18        (5) such immigrant born outside the Asia-Pacific

19    triangle who is attributable by as much as one-half of

20    his ancestry to a people or peoples indigenous to one

21    or more colonies or other dependent areas situate wholly

22    within the Asia-Pacific triangle, shall be chargeable to

23    the Asia-Pacific quota;

24        (6) such immigrant born outside the Asia-Pacific

25    triangle who is attributable by as much as one-half of

33

1    his ancestry to peoples indigenous to two or more

2    separate quota areas situate wholly within the Asia-

3    Pacific triangle, or to a quota area or areas and one or

4    more colonies and other dependent areas situate wholly

5    therein, shall be chargeable to the Asia-Pacific quota.

6        (c) Any immigrant born in a colony or other depend-

7    ent area for which no separate quota has been established,

8    unless a nonquota immigrant as provided in section 101 (a)

9    (26) of this Act, shall be chargeable to the quota of the

10   governing country, except that (1) not more than one

11   hundred persons born in any one colony or other dependent

12   area shall be chargeable to the quota of its governing

13   country in any one year, and (2) any such immigrant, if

14   attributable by as much as one-half of his ancestry to a

15   people or peoples indigenous to the Asia-Pacific triangle,

16   shall be chargeable to a quota as provided in subsection (b)

17   of this section.

18       (d) The provision of an immigration quota for a quota

19   area shall not constitute recognition by the United States

20   of the political transfer of territory from one country to

21   another, or recognition of a government not recognized by

22   the United States.

23       (e) After the determination of quotas has been made

24   as provided in section 201, revision of the quotas shall

S. 716——3

1 be made by the Secretary of State, the Secretary of

2 Commerce, and the Attorney General, jointly, whenever

3 necessary, to provide for any change of boundaries resulting

4 in transfer of territory from one sovereignty to another, a

5 change of administrative arrangements of a colony or other

6 dependent area, or any other political change, requiring a

7 change in the list of quota areas or of the territorial limits

8 thereof, but any increase in the number of minimum quota

9 areas above fifty shall result in a proportionate decrease in

10 each minimum quota in order that the sum total of all

11 minimum quotas shall not exceed five thousand.   In the

12 case of any change in the territorial limits of quota areas, not

13 requiring a change in the quotas for such areas, the Secre-

14 tary of State shall, upon recognition of such change, issue

15 appropriate instructions to all consular officers concerning the

16 change in the territorial limits of the quota areas involved.

17 ALLOCATION OF IMMIGRANT VISAS WITHIN QUOTAS

18    SEC. 203. (a) Immigrant visas to quota immigrants

19 shall be allotted in each fiscal year as follows:

20        (1) Not to exceed 50 per centum of the quota of

21        each quota area for such year shall be made available

22        for the issuance of immigrant visas (A) to qualified

23        quota immigrants whose services are determined by

24        the Attorney General to be needed urgently in the

25        United States because of the high education, tech-

35

1    nical training, specialized experience, or exceptional

2    ability of such immigrants and to be substantially

3    benefical prospectively to the national economy,

4    cultural interests, or welfare of the United States,

5    and (B) to qualified quota immigrants who are

6    the spouses or children of any immigrant described in

7    clause (A) if accompanying him.

8    (2) Not to exceed 30 per centum of the quota for

9    each quota area for such year shall be made available

10    for the issuance of immigrant visas to qualified quota

11    immigrants who are the parents of citizens of the United

12    States, such citizens being at least 21 years of age.

13    (3) Not to exceed 20 per centum of the quota

14    for each quota area for such year shall be made avail-

15    able for the issuance of immigrant visas to qualified quota

16    immigrants who are the spouses or the children of alien

17    residents of the United States having the status of

18    aliens lawfully admitted to the United States for

19    permanent residence.

20    (4) Any portion of the quota for each quota area

21    for such year, but not exceeding 10 per centum of such

22    quota, not required for the issuance of immigrant visas

23    to the classes specified in paragraphs (1), (2), and

24    (3) shall be made available for the issuance of immi-

25    grant visas to other qualified quota immigrants charge-

36

1    able to such quota area.  Qualified quota immigrants of

2    each quota area who are the brothers or sisters of

3    citizens of the United States shall be entitled to a pref-

4    erence of not exceeding 50 per centum of the immigrant

5    visas available for issuance for each quota area under

6    this paragraph.

7    (b) Quota immigrant visas issued pursuant to para-

8    graph (1) of subsection (a) shall, in the case of each

9    quota area, be issued to eligible quota immigrants in the

10    order in which a petition on behalf of each such immigrant

11    is filed with the Attorney General as provided in section

12    204; and shall be issued in the first calendar month after re-

13    ceipt of notice of approval of such petition in which a quota

14    number is available for an immigrant in such quota area.

15    (c) Quota immigrant visas issued pursuant to para-

16    graphs (2), (3), and (4) of subsection (a) shall, in the

17    case of each quota area, be issued to qualified quota immi-

18    grants strictly in the chronological order in which such

19    immigrants are registered on quota waiting lists which shall

20    be maintained for each quota in accordance with regulations

21    prescribed by the Secretary of State.

22    (d) In determining the order for consideration of appli-

23    cations for quota immigrant visas under subsection (a),

24    consideration shall be given first to applications under para-

25    graph (1), second to applications under paragraph (2),

37

1  third to applications under paragraph (3), and fourth to

2  applications under paragraph (4).

3  (e) Every immigrant shall be presumed to be a quota

4  immigrant until he establishes to the satisfaction of the

5  consular officer, at the time of application for a visa, and to

6  the immigration officers, at the time of application for ad-

7  mission, that he is a nonquota immigrant. Every quota

8  immigrant shall be presumed to be a nonpreference quota

9  immigrant until he establishes to the satisfaction of the

10  consular officer and the immigration officials that he is

11  entitled to a quota status under paragraph (1), (2), or

12  (3) of subsection (a) or to a preference under paragraph

13  (4) of such subsection.

14  PROCEDURE FOR GRANTING QUOTA STATUS UNDER

15  SECTION 203 (a) (1)

16  SEC. 204. (a) In the case of any alien claiming in

17  his application for an immigrant visa to be entitled to a

18  quota immigrant status under section 203 (a) (1), the

19  consular officer shall not grant such status until he has been

20  authorized to do so as provided in this section.

21  (b) Any person, institution, firm, or governmental

22  agency desiring to have an alien classified as an im-

23  migrant under section 203 (a) (1) shall file a peti-

24  tion with the Attorney General for such classification of the

25  alien. The petition shall be in such form as the Attorney

38

1  General may by regulations prescribe and shall state the

2  basis for the need of the services of such alien and contain

3  such additional information and be supported by such docu-

4  mentary evidence as may be required by the Attorney

5  General. The petition shall be made under oath admin-

6  istered by any individual having authority to administer

7  oaths, if executed in the United States, but, if executed out-

8  side the United States, administered by a consular officer.

9     (c) After an investigation of the facts in each case and

10 after consultation with appropriate agencies, the Attorney

11 General shall, if he determines that the facts stated in the

12 petition are true and that the alien in respect of whom

13 the petition is made is eligible for a quota immigrant status

14 under section 203 (a) (1), approve the petition and forward

15 one copy thereof to the Department of State. The Secretary

16 of State shall then authorize the consular officer concerned

17 to grant such quota immigrant status.

18     (d) Nothing in this section shall be construed to entitle

19 an immigrant, in respect of whom a petition under this

20 section is approved, to enter the United States as a quota

21 immigrant under section 203 (a) (1) if upon his arrival

22 at a port of entry in the United States he is found not to

23 be entitled to such classification.

PROCEDURE FOR GRANTING NONQUOTA OR QUOTA STATUS

OR PREFERENCE BY REASON OF RELATIONSHIP

SEC. 205. (a)  In the case of any alien claiming in his application for an immigrant visa to be entitled to (A) a nonquota immigrant status under section 101 (a) (26) (A), or (B) a quota immigrant status under section 203 (a) (2) or 203 (a) (3), or (C) a preference under section 203 (a) (4), the consular officer shall not grant such status or preference until he has been authorized to do so as provided in this section.

(b)  Any citizen of the United States claiming that any immigrant is his spouse or child and that such immigrant is entitled to a nonquota immigrant status under section 101 (a) (26) (A), or any citizen of the United States claiming that any immigrant is his parent and that such immigrant is entitled to a quota immigrant status under section 203 (a) (2), or any alien resident of the United States claiming that any immigrant is his spouse or child and that such immigrant is entitled to a quota immigrant status under section 203 (a) (3), or any citizen of the United States claiming that any immigrant is his brother or sister and that such immigrant is entitled to a preference under section 203 (a) (4) may file a petition with the Attorney General.

40

1   The petition shall be in such form and shall contain such
2   information and be supported by such documentary evidence
3   as the Attorney General may by regulations prescribe.   The
4   petition shall be made under oath administered by any
5   individual having authority to administer oaths, if executed
6   in the United States, but, if executed outside the United
7   States, administered by a consular officer.

8      (c)  After an investigation of the facts in each case the
9   Attorney General shall, if he determines the facts stated in the
10  petition are true and that the alien in respect of whom the pe-
11  tition is made is eligible for a nonquota immigrant status under
12  section 101 (a) (26) (A), or for a quota immigrant status
13  under section 203 (a) (2) or 203 (a) (3), or for a
14  preference under section 203 (a) (4), approve the petition
15  and forward one copy thereof to the Department of State.
16  The Secretary of State shall then authorize the consular
17  officer concerned to grant the nonquota immigrant status,
18  quota immigrant status, or preference, as the case may be.

19     (d)  Nothing in this section shall be construed to entitle
20  an immigrant, in respect of whom a petition under this
21  section is approved, to enter the United States as a non-
22  quota immigrant under section 101 (a) (26) (A) if upon
23  his arrival at a port of entry in the United States he is found
24  not to be entitled to such classification, or to enter the
25  United States as a quota immigrant under section 203 (a)

41

1   (2) or 203 (a) (3) if upon his arrival at a port of

2   entry in the United States he is found not to be entitled to

3   such classification, or to enter the United States as a prefer-

4   ence quota immigrant under section 203 (a) (4) if upon

5   his arrival at a port of entry in the United States he is

6   found not to be entitled to such preference.

7       REVOCATION OF APPROVAL OF PETITIONS

8       SEC. 206. The Attorney General may, at any time, for

9   what he deems to be good and sufficient cause, revoke the

10  approval of any petition approved by him under section 204,

11  section 205, or section 215 (c) of this title.  Such revoca-

12  tion shall be effective as of the date of approval of any such

13  petition.  In no case, however, shall such revocation have

14  effect unless there is mailed to the petitioner's last known

15  address a notice of the revocation and unless notice of the

16  revocation is communicated through the Secretary of State

17  to the beneficiary of the petition before such beneficiary

18  commences his journey to the United States.  If notice of

19  revocation is not so given, and the beneficiary applies for

20  admission to the United States, his admissibility shall be

21  determined in the manner provided for by sections 235

22  and 236.

23         UNUSED QUOTA IMMIGRANT VISAS

24      SEC. 207. If a quota immigrant having an immigrant

25  visa is excluded from admission to the United States and

42

1   deported, or does not apply for admission to the United

2   States before the expiration of the validity of the immigrant

3   visa, or if an alien having an immigrant visa issued to him

4   as a quota immigrant is found not to be a quota immigrant,

5   no immigrant visa shall be issued in lieu thereof to any other

6   immigrant.

7   CHAPTER 2—QUALIFICATIONS FOR ADMISSION OF ALIENS

8   DOCUMENTARY REQUIREMENTS; ALIENS INELIGIBLE TO

9                    CITIZENSHIP

10   SEC. 211. (a) No immigrant shall be admitted into

11   the United States unless at the time of application for admis-

12   sion he (1) has a valid unexpired immigrant visa or was

13   born subsequent to the issuance of such immigrant visa of the

14   accompanying parent, (2) is properly chargeable to the

15   quota specified in the immigrant visa, (3) is a nonquota

16   immigrant if specified as such in the immigrant visa, and

17   (4) is of the proper status under the quota specified in the

18   immigrant visa; and is otherwise admissible under this Act.

19   (b) Notwithstanding the provisions of section 212 (a)

20   (20) of this Act, in such cases or in such classes of cases and

21   under such conditions as may be by regulations prescribed,

22   otherwise admissible aliens who have the status of lawful

23   permanent residents of the United States and who depart

24   therefrom temporarily may be readmitted to the United

25   States by the Attorney General in his discretion without

43

1 being required to obtain a passport, immigrant visa, reentry

2 permit, or other documentation.

3     (c) The Attorney General may in his discretion, subject

4 to subsection (d), admit to the United States any other-

5 wise admissible immigrant not admissible under clause (2),

6 (3), or (4) of subsection (a), if satisfied that such inad-

7 missibility was not known to, and could not have been ascer-

8 tained by the exercise of reasonable diligence by, such immi-

9 grant prior to the departure of the vessel or aircraft from the

10 last port outside the United States and outside foreign

11 contiguous territory, or, in the case of an immigrant coming

12 from foreign contiguous territory, prior to the application of

13 the immigrant for admission.

14     (d) No quota immigrant within clause (2) or (3)

15 of subsection (a) shall be admitted under subsection (c)

16 if the entire number of immigrant visas which may be issued

17 to quota immigrants of the same quota area for the fiscal

18 year, or the next fiscal year, has already been issued.   If

19 such entire number of immigrant visas has not been issued,

20 the Secretary of State, upon notification by the Attorney

21 General of the admission under subsection (c) of a quota

22 immigrant within clause (2) or (3) of subsection (a), shall

23 reduce by one the number of immigrant visas which may be

24 issued to quota immigrants of the same quota area during

25 the fiscal year in which such immigrant is admitted, or, if

44

1    the entire number of immigrant visas which may be issued

2    to quota immigrants of the same quota area for the fiscal year

3    has been issued, then during the next following fiscal year.

4    GENERAL CLASSES OF ALIENS INELIGIBLE TO RECEIVE

5         VISAS AND EXCLUDED FROM ADMISSION

6      SEC. 212. (a) The following classes of aliens shall be

7    ineligible to receive visas and shall be excluded from admis-

8    sion into the United States:

9      (1) Aliens who are idiots, imbeciles, feeble-minded,

10    epileptics, or insane;

11      (2) Aliens who have had one or more attacks of

12    insanity at any time previously;

13      (3) Aliens afflicted with psychopathic personality;

14      (4) Aliens with chronic alcoholism;

15      (5) Aliens who are paupers, professional beggars, or

16    vagrants;

17      (6) Aliens afflicted with tuberculosis in any form or

18    with a loathsome disease or a dangerous contagious disease;

19      (7) Aliens who are homosexuals or sex perverts;

20      (8) Aliens not comprehended within any of the fore-

21    going classes who are certified by the examining surgeon

22    (A) as having a mental defect; or (B) as having a physical

23    defect of a nature which may affect the ability of such alien

24    to earn a living, unless the alien affirmatively establishes that

25    he will not have to earn a living;

45

1    (9)  Aliens who have been convicted of a crime involv-

2  ing moral turpitude (other than a purely political offense),

3  or aliens who admit committing acts which constitute the

4  essential elements of such a crime, or aliens whose admis-

5  sions are tantamount to a confession of guilt of such a crime;

6  except that aliens who have committed only one such crime

7  while under the age of eighteen years shall not be excluded

8  if the crime was committed more than five years prior to the

9  date of the application for a visa or other documentation,

10  and more than five years prior to date of application for

11  admission to the United States, unless the crime resulted in

12  confinement in a prison or correctional institution, in which

13  case such alien must have been released from such confine-

14  ment more than five years prior to the date of the applica-

15  tion for a visa or other documentation, and for admission,

16  to the United States;

17    (10)  Aliens who have been convicted of two or more

18  offenses (other than purely political offenses), regardless of

19  whether the conviction was in a single trial or whether the

20  offenses arose from a single scheme of misconduct and re-

21  gardless of whether the offenses involved moral turpitude,

22  for which the aggregate possible sentence to confinement

23  under the law was more than five years;

24    (11)  Aliens who are polygamists or who practice

25  polygamy or advocate the practice of polygamy;

46

1     (12) Aliens who are prostitutes or who have engaged

2   in prostitution, or aliens coming to the United States solely,

3   principally, or incidentally to engage in prostitution; aliens

4   who directly or indirectly procure or attempt to procure,

5   or who have procured or attempted to procure or to import,

6   prostitutes or persons for the purpose of prostitution or for

7   any other immoral purpose; and aliens who are or have

8   been supported by, or receive or have received, in whole

9   or in part, the proceeds of prostitution or aliens coming to the

10  United States to engage in any other commercialized vice,

11  whether or not related to prostitution;

12     (13) Aliens coming to the United States solely, prin-

13  cipally, or incidentally to engage in any illicit sexual act:

14     (14) Aliens seeking to enter the United States for

15  the purpose of performing skilled or unskilled labor, if

16  unemployed persons can be found in this country to per-

17  form such skilled or unskilled labor, other than aliens seek-

18  ing to enter the United States as nonimmigrants under sec-

19  tion 101 (a) (14) (H), or other than aliens seeking to enter

20  the United States as nonquota immigrants under section 101

21  (a) (26) (A) or (B), or other than aliens seeking to enter

22  the United States as quota immigrants under sections 203

23  (a) (1), 203 (a) (2), 203 (a) (3), or the preference

24  category of section 203 (a) (4), or other than aliens seeking

25  to enter the United States as nonquota immigrants under sec-

1 tion 101 (a) (26) (C), (D), or (E) whose services are
2 determined by the Attorney General to be needed urgently
3 in the United States because of the high education, techni-
4 cal training, specialized experience, or exceptional ability
5 of such immigrants and to be substantially beneficial pros-
6 pectively to the national economy, cultural interest, or wel-
7 fare of the United States.

8 (15) Aliens who, in the opinion of the consular officer,
9 at the time of application for a visa or in the opinion of
10 the Attorney General at the time of application for ad-
11 mission, are likely to become a public charge;

12 (16) Aliens who have been excluded from admission
13 and deported and who again seek admission within one
14 year from the date of such deportation, unless prior to
15 their reembarkation at a place outside the United States
16 or their attempt to be admitted from foreign contiguous
17 territory the Attorney General has consented to their reap-
18 plying for admission;

19 (17) Aliens who have been arrested and deported,
20 or who have fallen into distress and have been removed
21 pursuant to section 250, or who have been removed as
22 alien enemies, or who have been removed at Government
23 expense in lieu of deportation pursuant to section 242 (b),
24 unless prior to their embarkation or reembarkation at a place
25 outside the United States or their attempt to be admitted

48

1   from foreign contiguous territory the Attorney General has
2   consented to their applying or reapplying for admission;

3      (18) Aliens who are stowaways;

4      (19) Any alien who seeks to procure, or has sought
5   to procure, or has procured a visa or other documentation, or
6   seeks to enter the United States, by fraud, or by willfully
7   misrepresenting a material fact;

8      (20) Any immigrant who at the time of application
9   for admission is not in possession of a valid unexpired im-
10  migrant visa, reentry permit, border crossing identification
11  card, or other valid entry document required by this Act;

12     (21) Except as otherwise specifically provided in this
13  Act, any quota immigrant at the time of application for ad-
14  mission whose visa has been issued without compliance with
15  the provisions of section 203;

16     (22) Aliens who are ineligible to citizenship, except
17  aliens seeking to enter as nonimmigrants; or persons who
18  have departed from or who have remained outside the
19  United States to avoid or evade training or service in the
20  armed forces in time of war or a period declared by the
21  President to be a national emergency, except aliens who
22  were at the time of such departure nonimmigrant aliens and
23  who seek to reenter the United States as nonimmigrants.

24     (23) Any alien who is a narcotic drug addict, or who
25  has been convicted of a violation of any law or regulation

49

1   relating to the illicit traffic in narcotic drugs, or who has
2   been convicted of a violation of any law or regulation govern-
3   ing or controlling the taxing, manufacture, production, com-
4   pounding, transportation, sale, exchange, dispensing, giving
5   away, importation, exportation, or the possession for the
6   purpose of the manufacture, production, compounding, trans-
7   portation, sale, exchange, dispensing, giving away, importa-
8   tion or exportation of opium, coca leaves, heroin, marihuana,
9   or any salt derivative or preparation of opium or coca leaves;
10  or any alien who the consular officer or immigration officers
11  know or have reason to believe is or has been an illicit
12  trafficker in any of the aforementioned drugs;

13      (24) Aliens (other than those aliens who are native-
14  born citizens of countries enumerated in section 101 (a)
15  (26) (C) and aliens described in section 101 (a) (26)
16  (B)) who seek admission from foreign contiguous territory
17  or adjacent islands, having arrived there on a vessel or air-
18  craft of a nonsignatory line, or if signatory, a noncomplying
19  transportation line under section 238 (a) and who have not
20  resided for at least two years subsequent to such arrival in
21  such territory or adjacent islands;

22      (25) Aliens (other than aliens who have been law-
23  fully admitted for permanent residence and who are returning
24  from a temporary visit abroad) over sixteen years of age,

S. 716——4

50

1   physically capable of reading, who cannot read and under-
2   stand some language or dialect;

3      (26) Any nonimmigrant who is not in possession of
4   (A) a passport valid for a minimum period of one year
5   from the date of his application for admission authorizing
6   him to return to the country from which he came or to
7   proceed to and enter some other country during such period;
8   and (B) at the time of application for admission a valid
9   nonimmigrant visa or border crossing identification card;

10      (27) Aliens who the consular officer or the Attorney
11   General knows or has reason to believe seek to enter the
12   United States solely, principally, or incidentally, to engage
13   in activities which would be prejudicial to the public interest,
14   or endanger the welfare, safety, or security of the United
15   States;

16      (28) Aliens who are, or at any time have been, mem-
17   bers of any of the following classes:

18         (A) Aliens who are anarchists;

19         (B) Aliens who advocate or teach, or who are
20         members of or affiliated with any organization that
21         advocates or teaches, opposition to all organized
22         government;

23         (C) Aliens who are members of or affiliated with
24         (i) the Communist Party of the United States, (ii)
25         any other totalitarian party of the United States, (iii)

1   the  Communist Political Association, (iv) the Com-

2   munist or any other totalitarian party of any State of the

3   United States, of any foreign state, or of any political

4   or geographical subdivision of any foreign state; (v)

5   any section, subsidiary, branch, affiliate, or subdivision

6   of any such association or party; or (vi) the direct

7   predecessors or successors of any such association or

8   party, regardless of what name such group or organ-

9   ization may have used, may now bear, or may here-

10   after adopt: *Provided*, That nothing in this paragraph,

11   or in any other provision of this Act, shall be construed

12   as declaring that the Communist Party does not advocate

13   the overthrow of the Government of the United States

14   by force, violence, or other unconstitutional means;

15   (D) Aliens not within any of the other provisions

16   of this paragraph who advocate the economic, inter-

17   national, and governmental doctrines of world com-

18   munism or the economic and governmental doctrines of

19   any other form of totalitarianism, or who are mem-

20   bers of or affiliated with any organization that advocates

21   the economic, international, and governmental doc-

22   trines of world communism, or the economic and gov-

23   ernmental doctrines of any other form of totalitarianism,

24   either through its own utterances or through any written

25   or printed publications issued or published by or with

52

1    the permission or consent of or under the authority of

2    such organization or paid for by the funds of, or funds

3    furnished by, such organization;

4    (E)  Aliens not within any of the other provisions

5    of this paragraph, who are members of or affiliated with

6    any organization which is registered or required to be

7    registered under section 7 of the Subversive Activities

8    Control Act of 1950, unless such aliens establish that

9    they did not know or have reason to believe at the time

10    they became members of such an organization (and did

11    not thereafter and prior to the date upon which such

12    organization was so registered or so required to be

13    registered have such knowledge or belief) that such

14    organization was a Communist organization;

15    (F) Aliens who advocate or teach or who are

16    members of or affiliated with any organization that ad-

17    vocates or teaches (i) the overthrow by force, vio-

18    lence, or other unconstitutional means of the Govern-

19    ment of the United States or of all forms of law, or

20    (ii) the duty, necessity, or propriety of the unlawful

21    assaulting or killing of any officer or officers (either

22    of specific individuals or of officers generally) of the

23    Government of the United States or of any other

24    organized government, because of his or their official

53

1    character; or (iii) the unlawful damage, injury, or

2    destruction of property; or (iv) sabotage;

3        (G) Aliens who write or publish, or cause to be

4    written or published, or who knowingly circulate, dis-

5    tribute, print, or display, or knowingly cause to be

6    circulated, distributed, printed, published, or displayed,

7    or who knowingly have in their possession for the pur-

8    pose of circulation, publication, distribution, or display,

9    any written or printed matter, advocating or teaching

10   opposition to all organized government, or advocating or

11   teaching, (i) the overthrow by force, violence, or other

12   unconstitutional means of the Government of the United

13   States or of all forms of law; or (ii) the duty, neces-

14   sity, or propriety of the unlawful assaulting or killing

15   of any officer or officers (either of specific individuals

16   or of officers generally) of the Government of the

17   United States or of any other organized govern-

18   ment, because of his or their official character; or

19   (iii) the unlawful damage, injury, or destruction of

20   property; (iv) sabotage; or (v) the economic, inter-

21   national, and governmental doctrines of world com-

22   munism or the economic and governmental doctrines of

23   any other form of totalitarianism;

24       (H) Aliens who are members of or affiliated with

54

1    any organization that writes, circulates, distributes,

2    prints, publishes, or displays, or causes to be written,

3    circulated, distributed, printed, published, or displayed,

4    or that has in its possession for the purpose of circula-

5    tion, distribution, publication, issue, or display, any

6    written . ~inted matter of the character described in

7    paragraph (G).

8        (I) Any alien who is within the classes described

9    in subparagraphs (C), (D), (E), (F), (G), and (H)

10   of this paragraph solely because of past membership in

11   or past affiliation with a party or organization or a sec-

12   tion, subsidiary, branch, affiliate, or subdivision thereof,

13   may be issued a visa if such alien establishes to the

14   satisfaction of the consular officer when applying for a

15   visa and the consular officer finds that (i) such past

16   membership or past affiliation was involuntary or oc-

17   curred and terminated prior to the attainment by such

18   alien of the age of fourteen years, or (ii) (a) such

19   alien is and has been, for at least two years prior to the

20   date of the application for a visa, actively opposed to

21   the doctrine, program, principles, and ideology of such

22   party or organization or the section, subsidiary, branch,

23   or affiliate or subdivision thereof, and (b) the consular

24   officer finds that the admission of such alien into the

25   United States would be in the public interest.  Any such

1   alien to whom a visa has been issued under the pro-

2   visions of this subparagraph may be admitted into the

3   United States if he shall establish to the satisfaction of

4   the Attorney General when applying for admission to

5   the United States and the Attorney General finds that

6   (i) such past membership or past affiliation was invol-

7   untary or occurred and terminated prior to the attain-

8   ment by such alien of the age of fourteen years, or

9   (ii) (a) such alien is and has been, for at least two

10  years prior to the date of the application for admission,

11  actively opposed to the doctrine, program, principles,

12  and ideology of such party or organization or the section,

13  subsidiary, branch, or affiliate or subdivision thereof, and

14  (b) the Attorney General finds that the admission of

15  such alien into the United States would be in the public

16  interest.  The Attorney General shall promptly make a

17  detailed report to the Congress in the case of each such

18  alien who is or shall be admitted into the United States.

19  (29) Aliens who the consular officer or the Attorney

20  General knows or has reason to believe would, after entry, be

21  likely to (A) engage in activities which would be prohibited

22  by the laws of the United States relating to espionage, sabo-

23  tage, public disorder, or in other activity subversive to the na-

24  tional security; (B) engage in any activity a purpose of

25  which is the opposition to, or the control or overthrow by

56

1   force, violence, or other unconstitutional means of, the Gov-

2   ernment of the United States; or (C) organize, join, affiliate

3   with, or participate in the activities of any organization which

4   is registered or required to be registered under section 7 of

5   the Subversive Activities Control Act of 1950.

6   　　(30) Any alien, accompanying another alien ordered

7   to be excluded and deported and certified to be helpless

8   from sickness or mental or physical disability or infancy

9   pursuant to section 237 (e), whose protection or guardian-

10  ship is required by the alien ordered excluded and deported.

11  　　(31) Any alien who at any time shall have, knowingly

12  and for gain, encouraged, induced, assisted, abetted, or aided

13  any other alien to enter or to try to enter the United States

14  in violation of law.

15  　　(b) For the purpose of ascertaining whether an alien

16  can read under paragraph (25) of subsection (a), the

17  consular officers and immigration officers shall be furnished

18  with slips of uniform size, prepared under direction of the

19  Attorney General, each containing not less than thirty nor

20  more than forty words in ordinary use, printed in plainly

21  legible type, in one of the various languages or dialects

22  of immigrants.　Each alien may designate the particular

23  language or dialect in which he desires the examination

24  to be made and shall be required to read and understand

25  the words printed on the slip in such language or dialect.

1    (c)  Aliens who have the status of lawful permanent

2    residents who temporarily proceeded abroad voluntarily and

3    not under an order of deportation, and who are returning to

4    a lawful unrelinquished domicile of seven consecutive years,

5    may be admitted in the discretion of the Attorney General

6    without regard to the provisions of paragraphs (13 through

7    (24) and paragraphs (30) and (31) of subsection (a).

8    Nothing contained in this subsection shall limit the authority

9    of the Attorney General to exercise the discretion vested

10   in him under section 211 (b).

11    (d)  (1) The provisions of paragraphs (11) and (25)

12   of subsection (a) shall not be applicable to any alien who

13   in good faith is seeking to enter the United States as a non-

14   immigrant.

15    (2) The provisions of paragraph (28) of subsection

16   (a) of this section shall not be applicable to any alien who

17   is seeking to enter the United States temporarily as a non-

18   immigrant under paragraph (14) (A) (iii) or (14) (G)

19   (v) of section 101 (a).

20    (3) Except as provided in this subsection, an alien

21   (A) who is applying for a nonimmigrant visa and is known

22   or believed by the consular officer to be ineligible for such

23   visa under one or more of the paragraphs enumerated in

24   subsection (    (other than paragraphs (27) and (29)),

25   may, after    roval by the Attorney General of a recom-

58

1  mendation by the consular officer that the alien be admitted

2  temporarily despite his inadmissibility, be granted such a

3  visa and may be admitted into the United States temporarily

4  as a nonimmigrant in the discretion of the Attorney General,

5  or (B) who is inadmissible under one or more of the para-

6  graphs enumerated in subsection (a) (other than para-

7  graphs (27) and (29)), but who is in possession of appro-

8  priate documents or is granted a waiver thereof and is seeking

9  admission, may be admitted into the United States tem-

10  porarily as a nonimmigrant in the discretion of the Attorney

11  General.

12  (4) Either or both of the requirements of paragraph

13  (26) of subsection (a) may be waived by the Attorney

14  General and the Secretary of State acting jointly (A) on the

15  basis of unforeseen emergency in individual cases, or (B)

16  on the basis of reciprocity with respect to nationals of for-

17  eign contiguous territory or of adjacent islands, or (C) in

18  the case of aliens proceeding in immediate and continuous

19  transit through the United States under contracts authorized

20  in section 238 (d).

21  (5) The Attorney General may in his discretion parole

22  into the United States any inadmissible alien temporarily

23  for the purposes of receiving medical treatment. Any alien

24  so paroled shall be regarded as automatically excluded from

**59**

1   admission to the United States and shall, upon termination

2   of such medical treatment or whenever the Attorney Gen-

3   eral shall require, be deported in the same manner as other

4   aliens who are excluded from the United States.

5      (6) The Attorney General shall prescribe conditions,

6   including exaction of such bonds as may be necessary, to

7   control and regulate the admission and return of exclud-

8   able aliens applying for temporary admission under this

9   subsection.   The Attorney General shall make a detailed

10   report to the Congress in any case in which he exercises

11   his authority under paragraph (3) of this subsection on

12   behalf of any alien excludable under paragraphs (9), (10),

13   and (28) of subsection (a).

14      (7) The exclusion of aliens provided by subsection

15   (a) of this section, except paragraphs (19), (20), (21),

16   and (26), shall be applicable to any alien who shall leave

17   the Canal Zone, Hawaii, Alaska, Guam, Puerto Rico, or

18   the Virgin Islands of the United States or any outlying

19   Territory or possession of the United States, and who seeks

20   to enter the continental United States or any other place

21   under the jurisdiction of the United States.

22      (8) Upon a basis of reciprocity accredited officials of

23   foreign governments, their immediate families, attendants,

24   servants, and employees may be admitted in immediate

60

1   and continuous transit through the United States without
2   regard to the provisions of this Act except paragraphs (26),
3   (27), and (29) of subsection (a) of this section.

4       (e) Whenever the President finds that the entry of
5   any aliens or of any class of aliens into the United States
6   would be detrimental to the interests of the United States,
7   he may by proclamation, and for such period as he shall
8   deem necessary, suspend the entry of all aliens or any class
9   of aliens as immigrants or nonimmigrants, or impose on the
10  entry of aliens any restrictions he may deem to be
11  appropriate.

12  ADMISSION OF ALIENS ON GIVING BOND OR CASH DEPOSIT

13      SEC. 213. Any alien excludable because he is likely to
14  become a public charge or because of physical disability other
15  than tuberculosis in any form or a loathsome disease or a dan-
16  gerous contagious disease may, if otherwise admissible, be
17  admitted in the discretion of the Attorney General upon the
18  giving of a suitable and proper bond or undertaking ap-
19  proved by the Attorney General, in such amount and con-
20  taining such conditions as he may prescribe, to the United
21  States and to all States, Territories, counties, towns, munici-
22  palities, and districts thereof holding the United States and
23  all States, Territories, counties, towns, municipalities, and
24  districts thereof harmless against such alien becoming a public
25  charge.  In lieu of such bond such alien may deposit in cash

61

1   with the Attorney General such amount as the Attorney Gen-

2   eral may require, and which amount shall be deposited by him

3   in the United States Postal Savings System, a receipt therefor

4   to be given the person furnishing such sums showing the fact

5   and object of its receipt and such other information as the

6   Attorney General may deem advisable.  All accruing interest

7   on such deposit during the time it shall be held in the United

8   States Postal Savings System shall be paid to the person fur-

9   nishing such sum.  In the event such alien becomes a public

10  charge, the Attorney General shall dispose of such deposit

11  in the same manner as if it had been collected under a bond

12  as provided in this section.  In the event of the permanent

13  departure from the United States, the naturalization, or the

14  death of such alien, such sum shall be returned to the person

15  by whom furnished, or to his legal representatives.  The

16  admission of such alien shall be a consideration for the giving

17  of such bond, undertaking, or cash deposit.  Suit may be

18  brought thereon in the name and by the proper law officers

19  of the United States for the use of the United States, or of any

20  State, Territory, district, county, town, or municipality in

21  which such alien becomes a public charge.

22  ADMISSION, IN CASE OF CONTAGIOUS DISORDER, OF SPOUSE

23       OR CHILD OF CITIZEN OR RESIDENT ALIEN

24       SEC. 214. Whenever any citizen of the United States

25  or any alien who has been lawfully admitted for permanent

62

1  residence shall send for his alien spouse or alien children

2  to join him, and such spouse or any of such children shall

3  be found to be affected with any contagious disorder, such

4  spouse or children shall be detained, under such regulations as

5  the Attorney General shall prescribe, until it shall be deter-

6  mined whether the disorder will be easily curable or whether

7  they can be permitted to land without danger to other

8  persons; and they shall not be either admitted or deported

9  until such facts have been ascertained.  If it shall be deter-

10  mined that the disorder is easily curable and the citizen

11  or resident spouse or parent or other responsible person

12  is willing to bear all expenses incurred, such spouse or

13  children may be accorded treatment in a hospital until cured

14  and then admitted, if otherwise admissible, or if it shall

15  be determined that they can be permitted to land without

16  danger to other persons, they may, if otherwise admissible,

17  thereupon be admitted: *Provided,* That nothing in this

18  section shall be construed as exempting any aliens from

19  visa or other documentary requirements, or as requiring the

20  issuance of a visa or any other document.

21            ADMISSION OF NONIMMIGRANTS

22      SEC. 215. (a) The admission to the United States of

23  any alien as a nonimmigrant shall be for such time and under

24  such conditions as the Attorney General may by regula-

25  tions prescribe, including when he deems necessary the

63

1   giving of a bond with sufficient surety in such sum and con-

2   taining such conditions as the Attorney General shall pre-

3   scribe, to insure that at the expiration of such time or upon

4   failure to maintain the status under which he was admitted, or

5   to which he is changed under section 248, such alien will

6   depart from the United States.

7       (b)  Every alien shall be presumed to be an immigrant

8   until he establishes to the satisfaction of the consular officer,

9   at the time of application for a visa, and the immigration

10  officers, at the time of application for admission, that he is

11  entitled to a nonimmigrant status under section 101 (a)

12  (14).  Aliens who are officers or employees of any foreign

13  government or of any international organization entitled to

14  enjoy privileges, exemptions, and immunities under the

15  International Organizations Immunities Act, or who are the

16  attendants, servants, employees, or members of the imme-

17  diate families of any such officer or employee shall not be

18  entitled to apply for or receive an immigrant visa, or to

19  enter the United States as an immigrant unless he executes

20  a written waiver in the same form and substance as is pre-

21  scribed by section 247 (b).

22      (c)  The question of the necessity of importing any alien

23  as a nonimmigrant under section 101 (a) (14) (H) in any

24  specific case or cases shall be determined by the Attorney

25  General upon petition of the importing employer.  Such

64

1  petition shall be made before importation and shall be in

2  such form and contain such information as the Attorney

3  General shall prescribe.  The approval of such a petition

4  shall not, of itself, be construed as establishing that the

5  alien is a nonimmigrant.

6  PREVENTION IN TIME OF WAR OF DEPARTURE FROM OR

7      ENTRY INTO THE UNITED STATES CONTRARY TO THE

8      PUBLIC SAFETY

9      SEC. 216. (a) When the United States is at war or

10  during the existence of any national emergency proclaimed

11  by the President, or, as to aliens, whenever there exists a

12  state of war between or among two or more states, and the

13  President shall find that the interests of the United States

14  require that restrictions and prohibitions in addition to those

15  provided otherwise than by this section be imposed upon the

16  departure of persons from and their entry into the United

17  States, and shall make public proclamation thereof, it shall,

18  until otherwise ordered by the President or the Congress,

19  be unlawful—

20      (1) for any alien to depart from or enter or attempt

21      to depart from or enter the United States except under

22      such reasonable rules, regulations, and orders, and sub-

23      ject to such limitations and exceptions as the President

24      may prescribe;

25      (2) for any person to transport or attempt to

65

1  transport from or into the United States another person

2  with knowledge or reasonable cause to believe that the

3  departure or entry of such other person is forbidden

4  by this section;

5  (3) for any person knowingly to make any false

6  statement in an application for permission to depart

7  from or enter the United States with intent to induce

8  or secure the granting of such permission either for

9  himself or for another;

10  (4) for any person knowingly to furnish or at-

11  tempt to furnish or assist in furnishing to another a

12  permit or evidence of permission to depart or enter

13  not issued and designed for such other person's use;

14  (5) for any person knowingly to use or attempt

15  to use any permit or evidence of permission to depart

16  or enter not issued and designed for his use;

17  (6) for any person to forge, counterfeit, mutilate,

18  or alter, or cause or procure to be forged, counterfeited,

19  mutilated, or altered, any permit or evidence of permis-

20  sion to depart from or enter the United States;

21  (7) for any person knowingly to use or attempt

22  to use or furnish to another for use any false, forged,

23  counterfeited, mutilated, or altered permit, or evidence

24  of permission, or any permit or evidence of permission

66

1    which, though originally valid, has become or been

2    made void or invalid.

3    (b) After such proclamation as is provided for in sub-

4    section (a) has been made and published and while such

5    proclamation is in force, it shall, except as otherwise pro-

6    vided by the President, and subject to such limitations and

7    exceptions as the President may authorize and prescribe, be

8    unlawful for any citizen of the United States to depart from

9    or enter, or attempt to depart from or enter, the United

10   States unless he bears a valid passport.

11   (c) Any person who shall willfully violate any of the

12   provisions of this section, or of any order or proclamation of

13   the President promulgated, or of any permit, rule, or regula-

14   tion issued thereunder, shall, upon conviction, be fined not

15   more than $5,000, or, if a natural person, imprisoned for

16   not more than five years, or both; and the officer, director,

17   or agent of any corporation who knowingly participates in

18   such violation shall be punished by like fine or imprison-

19   ment, or both; and any vehicle, vessel, or aircraft together

20   with its appurtenances, equipment, tackle, apparel, and furni-

21   ture, concerned in any such violation, shall be forfeited to

22   the United States.

23   (d) The term "United States" as used in this section

24   includes the Canal Zone, and all territory and waters, con-

25   tinental or insular, subject to the jurisdiction of the United

67

1 States.  The term "person" as used in this section shall be

2 deemed to mean any individual, partnership, association,

3 company, or other incorporated body of individuals, or cor-

4 poration, or body politic.

5 (e) Nothing in this section shall be construed to en-

6 title an alien to whom a permit to enter the United States

7 has been issued to enter the United States, if, upon arrival

8 in the United States, he is found to be inadmissible under

9 any of the provisions of this Act, or any other law, relating

10 to the entry of aliens into the United States.

11 (f) The revocation of any proclamation, rule, regula-

12 tion, or order issued in pursuance of this section shall not

13 prevent prosecution for any offense committed, or the im-

14 position of any penalties or forfeitures, liability for which was

15 incurred under this section prior to the revocation of such

16 proclamation, rule, regulation, or order.

17 (g) Passports, visas, reentry permits, and other docu-

18 ments required for entry under this Act may be considered

19 as permits to enter for the purposes of this section.

20 CHAPTER 3—ISSUANCE OF ENTRY DOCUMENTS

21 ISSUANCE OF VISAS

22 SEC. 221. (a) Under the conditions hereinafter pre-

23 scribed and subject to the limitations prescribed in this Act

24 or regulations issued thereunder, a consular officer may

25 issue (1) to an immigrant who has made proper applica-

68

1  tion therefor, a immigrant visa which shall consist of one

2  copy of the application provided for in section 222, visaed

3  by such consular officer, and shall specify the quota area,

4  if any, to which the immigrant is charged, the immigrant's

5  particular status under such quota, the particular nonquota

6  category in which the immigrant is classified, if a nonquota

7  immigrant, the date on which the validity of the visa shall

8  expire, and such additional information as may be required;

9  and (2) to a nonimmigrant who has made proper applica-

10  tion therefor, a nonimmigrant visa, which shall specify the

11  classification under section 101 (a) (14) of the nonimmi-

12  grant, the period during which the nonimmigrant visa shall

13  be valid, and such additional information as may be required.

14    (b) Each alien who applies for a visa shall be regis-

15  tered and fingerprinted in connection with his application,

16  and shall furnish copies of his photograph for such use as

17  may be by regulations required.  The requirements of this

18  subsection may be waived in the discretion of the Secretary

19  of State in the case of any alien who is within that class of

20  nonimmigrants enumerated in sections 101 (a) (14) (A),

21  and 101 (a) (14) (G), or in the case of any alien who is

22  granted a diplomatic visa on a diplomatic passport or on the

23  equivalent thereof.

24    (c) An immigrant visa shall be valid for such period,

25  not exceeding four months, as shall be by regulations pre-

69

1    scribed.  A nonimmigrant visa shall be valid for such periods

2    as shall be by regulations prescribed.  In prescribing the

3    period of validity of a nonimmigrant visa in the case of

4    nationals of any foreign country who are eligible for such

5    visas, the Secretary of State shall, insofar as practicable,

6    accord to such nationals the same treatment upon a reciprocal

7    basis as such foreign country accords to nationals of the

8    United States who are within a similar class.

9        (d)  Prior to the issuance of an immigrant visa to any

10   alien, the consular officer shall require such alien to submit

11   to a physical and mental examination in accordance with

12   such regulations as may be prescribed.  Prior to the issuance

13   of a nonimmigrant visa to any alien, the consular officer may

14   require such alien to submit to a physical or mental exam-

15   ination, or both, if in his opinion such examination is neces-

16   sary to ascertain whether such alien is eligible to receive a

17   visa.

18       (e)  Each immigrant shall surrender his immigrant visa

19   to the immigration officer at the port of entry, who shall

20   endorse on the visa the date and the port of arrival, the

21   identity of the vessel or other means of transportation by

22   which the immigrant arrived, and such other endorsements

23   as may be by regulations required.

24       (f)  Each nonimmigrant shall present or surrender to

25   the immigration officer at the port of entry such documents

70

1  as may be by regulation required.  In the case of an alien

2  crewman not in possession of any individual documents other

3  than a passport and until such time as it becomes practicable

4  to issue individual documents, such alien crewman may be

5  admitted, subject to the provisions of this title, if his name

6  appears in the crew list of the vessel or aircraft on which

7  he arrives and the crew list is visaed by a consular officer,

8  but the consular officer shall have the right to exclude any

9  alien crewman from the crew list visa.

10  (g)  No visa or other documentation shall be issued to

11  an alien if (1) it appears to the consular officer, from

12  statements in the application, or in the papers submitted

13  therewith, that such alien is ineligible to receive a visa or

14  such other documentation under section 212, or any other

15  provision of law, (2) the application fails to comply with

16  the provisions of this Act, or the regulations issued there-

17  under, or (3) the consular officer knows or has reason to

18  believe that such alien is ineligible to receive a visa or such

19  other documentation under section 212, or any other provi-

20  sion of law: *Provided*, That a visa or other documentation

21  may be issued to an alien who is within the purview of sec-

22  tion 212 (a) (8) because of physical defect, or section 212

23  (a) (15), if such alien is otherwise entitled to receive a visa

24  or other documentation, upon receipt of notice by the consu-

25  lar officer from the Attorney General of the giving of a bond

71

1    or undertaking providing indemnity as in the case of aliens

2    admitted under section 213.

3        (h) Nothing in this Act shall be construed to entitle

4    any alien, to whom a visa or other documentation has been

5    issued, to enter the United States, if, upon arrival at a

6    port of entry in the United States, he is found to be inad-

7    missible under this Act, or any other provision of law.

8    The substance of this subsection shall appear upon every

9    visa application.

10       (i) After the issuance of a visa or other documentation

11   to any alien, the consular officer or the Secretary or State may

12   at any time, in his discretion, revoke such visa or other

13   documentation.   Notice of such revocation shall be com-

14   municated to the Attorney General, and such revocation

15   shall invalidate the visa or other documentation from the

16   date of issuance: *Provided,* That carriers or transportation

17   companies shall not be penalized for action taken in reli-

18   ance on such visas or other documentation, unless they re-

19   ceived notice of such revocation prior to the alien's em-

20   barkation.

21                    APPLICATIONS FOR VISAS

22       SEC. 222. (a) Every alien applying for an immigrant

23   visa and for alien registration shall make application therefor

24   in such form and manner as shall be by regulations prescribed.

25   Such application shall be filed only with the consular officer in

72

1    whose district the applicant has his residence, except that an

2    application for an immigrant visa to be issued under section

3    101 (a) (26) (B) may be filed with such consular officer

4    as may be designated by regulation.  In the application the

5    immigrant shall state his full and true name, and any other

6    name which he has used or by which he has been known;

7    age and sex; race and ethnic classification; the date and

8    place of his birth; present address and places of previous

9    residence; whether married or single, and the names and

10    places of residence of spouse and minor children, if any;

11    calling or occupation; personal description (including

12    height, complexion, color of hair and eyes, and marks of

13    identification) ; languages he can speak, read, or write;

14    names and addresses of parents, and if neither parent living,

15    then the name and address of his next relative in the country

16    from which he comes; port of entry into the United States;

17    final destination, if any, beyond the port of entry; whether

18    he has a ticket through to such final destination; whether

19    going to join a relative or friend, and, if so, what relative

20    or friend and his name and complete address; the purpose

21    for which he is going to the United States; the length of

22    time he intends to remain in the United States; whether

23    or not he intends to abide in the United States permanently;

24    whether he was ever arrested, convicted or was ever in

73

1 prison or alms house; whether he has ever been the bene-

2 ficiary of a pardon or an amnesty; whether he or either

3 of his parents has ever been in an institution or hospital

4 for the care and treatment of the insane; if he claims to

5 be a preference quota or a nonquota immigrant, the facts

6 on which he bases such claim; whether or not he is a

7 member of any class of individuals excluded from admis-

8 sion into the United States, or whether he claims to be

9 exempt from exclusion under the immigration laws; and

10 such additional information necessary to the identification

11 of the applicant and the enforcement of the immigration

12 and naturalization laws as may be by regulations prescribed.

13 (b) The immigrant shall furnish to the consular officer

14 with his application two copies of a certification by the

15 appropriate police authorities stating what their records show

16 concerning the immigrant; two certified copies of any exist-

17 ing prison record, military record, and record of his birth;

18 and two certified copies of all other records concerning him

19 which may be required by the consular officer.  One copy

20 of each document so furnished shall be permanently attached

21 to each copy of the application and become a part thereof.

22 In the event that the immigrant establishes to the satisfaction

23 of the consular officer that any document or record required

24 by this subsection is unobtainable, the consular officer may

74

1   permit the immigrant to submit in lieu of such document or

2   record other satisfactory evidence of the fact to which such

3   document or record would, if obtainable, pertain.

4   (c) Every alien applying for a visa and for alien regis-

5   tration as a nonimmigrant shall make application therefor in

6   such form and manner as shall be by regulation prescribed.

7   In the application the alien shall state his full and true name,

8   the date and place of his birth, his nationality, his race and

9   ethnic classification; the purpose and length of his intended

10   stay in the United States; personal description (including

11   height, complexion, color of hair and eyes, and marks of

12   identification) ; his marital status; and such additional in-

13   formation necessary to the identification of the applicant and

14   the enforcement of the immigration and naturalization laws

15   as may be by regulations prescribed.

16   (d) Every alien applying for a nonimmigrant visa and

17   alien registration shall furnish to the consular officer, with his

18   application, a certified copy of such documents pertaining

19   to him as may be by regulations required.

20   (e) Except as may be otherwise prescribed by regula-

21   tions, each copy of an application required by this section

22   shall be signed by the applicant in the presence of the

23   consular officer, and verified by the oath of the applicant

24   administered by the consular officer. One copy of the

25   application for an immigrant visa, when visaed by the con-

**75**

1   sular officer, shall become the immigrant visa, and the other

2   copy shall be disposed of as may be by regulations pre-

3   scribed.   The application for a nonimmigrant visa or other

4   documentation as a nonimmigrant shall be disposed of as

5   may be by regulations prescribed.   The issuance of a non-

6   immigrant visa shall, except as may be otherwise by regu-

7   lations prescribed, be evidenced by a stamp placed by the

8   consular officer in the alien's passport.

9                               REENTRY PERMITS

10      SEC. 223. (a)   (1)  Any lawfully permanent resident

11   alien, or  (2)  any alien lawfully admitted to the United

12   States pursuant to clause 6 of section 3 of the Immigration

13   Act of 1924, between July 1, 1924, and July 5, 1932, both

14   dates inclusive, who intends to depart temporarily from the

15   United States may make application to the Attorney Gen-

16   eral for a permit to reenter the United States, stating the

17   length of his intended absence or absences, and the reasons

18   therefor.   Such applications shall be made under oath, and

19   shall be in such form, contain such information, and be accom-

20   panied by such photographs of the applicant as may be by

21   regulations prescribed.

22      (b) If the Attorney General finds (1) that the appli-

23   cant under subsection (a)  (1) has been lawfully admitted to

24   the United States for permanent residence or that the appli-

25   cant under subsection (a)  (2) has since admission main-

1   tained the status required of him at the time of his admission

2   and such applicant desires to visit abroad and to return to the

3   United States to resume the status existing at the time of his

4   departure for such visit, (2) that the application is made in

5   good faith, and (3) that the alien's proposed departure

6   from the United States would not be contrary to the interests

7   of the United States, the Attorney General may, in his dis-

8   cretion, issue the permit, which shall be valid for not more

9   than one year from the date of issuance. The permit shall be

10   in such form as shall be by regulations prescribed for the com-

11   plete identification of the alien.

12   (c) During the period of validity, such permit may be

13   used by the alien in making one or more applications for

14   reentry into the United States.

15   (d) Upon the return of the alien to the United States

16   the permit shall be presented to the immigration officer at

17   the port of entry, and upon the expiration of its validity, the

18   permit shall be surrendered to the Service.

19   (e) A permit issued under this section, in the possession

20   of the person to whom issued, shall be accepted in lieu of

21   any visa which otherwise would be required from

22   such person under this Act. Otherwise a permit issued

23   under this section shall have no effect under the immigration

24   laws except to show that the alien to whom it was issued

25   is returning from a temporary visit abroad; but nothing in

77

1  this section shall be construed as making such permit the

2  exclusive means of establishing that the alien is so returning.

3             NONQUOTA IMMIGRANT VISAS

4     SEC. 224. A consular officer may, subject to the limita-

5  tions provided in sections 204, 205, and 221, issue an

6  immigrant visa to a nonquota immigrant as such upon satis-

7  factory proof, under regulations prescribed under this Act,

8  that the applicant is entitled to a nonquota immigrant status.

9  CHAPTER 4—PROVISIONS RELATING TO ENTRY AND

10                 EXCLUSION

11  LISTS OF ALIEN AND CITIZEN PASSENGERS ARRIVING OR

12      DEPARTING; RECORD OF RESIDENT ALIENS AND CITI-

13      ZENS LEAVING PERMANENTLY FOR FOREIGN COUNTRY

14     SEC. 231. (a) Upon the arrival of any person, other

15  than an alien crewman, by water or air at any port within

16  the United States from any place outside the United States,

17  it shall be the duty of the master or commanding officer,

18  or authorized agent, owner, or consignee of the vessel or

19  aircraft, having any such person on board to deliver to the

20  immigration officers at the port of arrival typewritten or

21  printed lists or manifests of the persons on board such vessel

22  or aircraft.  Such lists or manifests shall be prepared at such

23  time, be in such form and shall contain such information as

24  the Attorney General shall prescribe by regulation as being

78

1   necessary for the identification of the persons transported and

2   for the enforcement of the immigration laws.

3       (b)  It shall be the duty of the master or commanding

4   officer or authorized agent of every vessel or aircraft taking

5   passengers on board at any port of the United States, who

6   are destined to any place outside the United States, to file

7   with the immigration officers before departure from such

8   port a list of all such persons taken on board.  Such list shall

9   be in such form, contain such information, and be accom-

10  panied by such documents, as the Attorney General shall

11  prescribe by regulation as necessary for the identification

12  of the persons so transported and for the enforcement of the

13  immigration laws.  No master or commanding officer of any

14  such vessel or aircraft shall be granted clearance papers for

15  his vessel or aircraft until he or the authorized agent has

16  deposited such list or lists and accompanying documents

17  with the immigration officer at such port and made oath

18  that they are full and complete as to the information re-

19  quired to be contained therein, except that in the case of

20  vessels or aircraft which the Attorney General determines

21  are making regular trips to ports of the United States, the

22  Attorney General may, when expedient, arrange for the

23  delivery of lists of outgoing persons at a later date.

24      (c)  It shall be the duty of immigration officers to record

25  the following information regarding every resident person

79

1  leaving the United States by way of the Canadian or Mexi-
2  can borders for permanent residence in a foreign country:
3  Names, age, and sex; whether married or single; calling or
4  occupation; whether able to read or write; nationality;
5  country of birth; country of which citizen or subject; race;
6  last permanent residence in the United States; intended
7  future permanent residence; and time and port of last
8  arrival in the United States; and if a United States citizen
9  or national, the facts on which claim to that status is based.

10      (d) If it shall appear to the satisfaction of the
11  Attorney General that the master or commanding
12  officer, owner, or consignee of any vessel or aircraft,
13  or the agent of any transportation line, as the case
14  may be, has refused or failed to deliver any list or mani-
15  fest required by subsections (a) or (b), or that the list or
16  manifest delivered is not accurate and full, such master or
17  commanding officer, owner, or consignee, or agent, as the
18  case may be, shall pay to the collector of customs at the
19  port of arrival or departure the sum of $10 for each person
20  concerning whom such accurate and full list or manifest is
21  not furnished, or concerning whom the manifest or list is
22  not prepared and sworn to as prescribed by this section or by
23  regulations issued pursuant thereto.  No vessel or aircraft
24  shall be granted clearance pending determination of the ques-
25  tion of the liability to the payment of such penalty, or while it

80

1    remains unpaid, and no such penalty shall be remitted or

2    refunded, except that clearance may be granted prior to the

3    determination of such question upon the deposit with the

4    collector of customs of a bond or undertaking approved by

5    the Attorney General or a sum sufficient to cover such

6    penalty.

7            DETENTION OF ALIENS FOR OBSERVATION AND

8                        EXAMINATION

9        SEC. 232. For the purpose of determining whether

10   aliens arriving at ports of the United States belong to any

11   of the classes excluded by this Act, by reason of being

12   afflicted with any of the diseases or mental or physical defects

13   or disabilities set forth in section 212 (a), or when-

14   ever the Attorney General has received information

15   showing that any aliens are coming from a country or have

16   embarked at a place where any of such diseases are prevalent

17   or epidemic, such aliens shall be detained on board the ves-

18   sel or at the airport of arrival of the aircraft bringing them,

19   unless the Attorney General directs their detention in a

20   United States immigration station or other place specified

21   by him at the expense of such vessel or aircraft except as

22   otherwise provided in this act, as circumstances may re-

23   quire or justify, for a sufficient time to enable the immigration

24   officers and medical officers to subject such aliens to ob-

81

1 servation and an examination sufficient to determine

2 whether or not they belong to the excluded classes.

3 TEMPORARY REMOVAL UPON ARRIVAL FOR EXAMINATION

4     SEC. 233. (a) Upon the arrival at a port of the United

5 States of any vessel or aircraft bringing aliens, including alien

6 crewmen, the immigration officers may order a temporary

7 removal of such aliens for examination and inspection at

8 a designated time and place, but such temporary removal

9 shall not be considered a landing, nor shall it relieve vessels

10 or aircraft, the transportation lines, or the masters, com-

11 manding officers, agents, owners, or consignees of the

12 vessel or aircraft upon which such aliens are brought to

13 any port of the United States from any of the obliga-

14 tions which, in case such aliens remain on board, would,

15 under the provisions of this Act bind such vessels or air-

16 craft, transportation lines, masters, commanding officers,

17 agents, owners, or consignees, except that where removal

18 is made to premises owned or controlled by the United

19 States, such vessels or aircraft, transportation lines, masters,

20 commanding officers, agents, owners, or consignees, shall,

21 so long as detention there lasts, be relieved of responsi-

22 bility for the safekeeping of such aliens.

23     (b) Whenever a temporary removal of aliens is made

    S. 716——6

82

1   under this section, the vessels or aircraft or transportation

2   lines which brought them, and the masters, commanding

3   officers, owners, agents, and consignees of the vessel,

4   aircraft, or transportation line upon which they ar-

5   rived shall pay all expenses of such removal and all

6   expenses arising during subsequent detention, pending a

7   decision on the aliens' eligibility to enter the United States

8   and until they are either allowed to land or returned to

9   the care of the transportation line or to the vessel or aircraft

10   which brought them.  Such expenses shall include mainte-

11   nance, medical treatment in hospital or elsewhere, burial

12   in the event of death, and transfer to the vessel, aircraft,

13   or transportation line in the event of deportation, except

14   where such expenses arise under section 237 (d), or in

15   such cases as the Attorney General may prescribe in the

16   case of aliens admitted temporarily under the provisions

17   of section 212 (d) (5).

18   (c) Any detention expenses and expenses incident to

19   detention incurred pursuant to sections 232 and 233 shall

20   not be assessed under this Act against the vessel or aircraft

21   or transportation line or the master, commanding officer,

22   owner, agent, or consignee of the vessel, aircraft, or trans-

23   portation line in the case of any alien who arrived in pos-

24   session of an unexpired immigrant or nonimmigrant visa or

25   other documentation in lieu thereof issued by a consular

83

1  officer, and the vessel, aircraft, or transportation line, or the

2  master, commanding officer, owner, agent, or consignee of

3  the vessel, aircraft, or transportation line shall establish to

4  the satisfaction of the Attorney General that the ground of

5  detention could not have been ascertained by the exercise

6  of due diligence on its or their part prior to the alien's

7  embarkation.

8    (d) Any refusal or failure to comply with the pro-

9  visions of this section shall be punished in the manner

10  specified in section 237 (b) of this Act.

11           PHYSICAL AND MENTAL EXAMINATION

12    SEC. 234. The physical and mental examination of

13  arriving aliens, including alien crewmen, shall be made by

14  medical officers of the United States Public Health Service,

15  who shall conduct all medical examinations and shall certify,

16  for the information of the immigration officers and the special

17  inquiry officers, any physical and mental defect or disease

18  observed by such medical officers in any such alien.  If

19  medical officers of the United States Public Health Service

20  are not available, civil surgeons of not less than four years'

21  professional experience may be employed for such service

22  upon such terms as may be prescribed by the Attorney

23  General.  Aliens, including alien crewmen, arriving at ports

24  of the United States shall be examined by at least one such

25  medical officer or civil surgeon under such administrative

84

1  regulations as the Attorney General may prescribe, and under

2  medical regulations prepared by the Surgeon General of the

3  United States Public Health Service.  Medical officers of the

4  United States Public Health Service who have had special

5  training in the diagnosis of insanity and mental defects shall

6  be detailed for duty or employed at such ports of entry as

7  the Attorney General may designate, and such medical

8  officers shall be provided with suitable facilities for the deten-

9  tion and examination of all arriving aliens who it is suspected

10  may be excludable under paragraphs (1), (2), (3), (7),

11  and (8) (A) of section 212 (a), and the services of in-

12  terpreters shall be provided for such examination.  Any alien

13  certified under paragraphs (1), (2), (3), (7), and (8)

14  (A) of section 212 (a) may appeal to a board of medical

15  officers of the United States Public Health Service, which

16  shall be convened by the Surgeon General of the United

17  States Public Health Service, and any such alien may intro-

18  duce before such board one expert medical witness at his own

19  cost and expense.

20  INSPECTION BY IMMIGRATION OFFICERS

21  SEC. 235. (a) The inspection, other than the physical

22  and mental examination, of aliens, including alien crewmen,

23  seeking admission or readmission to, or the privilege of pass-

24  ing through the United States shall be conducted by immigra-

25  tion officers, except as otherwise provided in regard to special

1    inquiry officers. All aliens arriving at ports of the United

2    States shall be examined by one or more immigration offi-

3    cers at the discretion of the Attorney General and under

4    such regulations as he may prescribe. Immigration officers

5    are hereby authorized and empowered to board and search

6    any vessel, aircraft, railway car, or other conveyance, or

7    vehicle in which they believe or suspect aliens are being

8    brought into the United States. The Attorney General and

9    any immigration officer, including special inquiry officers,

10   shall have power to administer oaths and to take and

11   consider evidence of or from any person touching the

12   privilege of any alien or person he believes or suspects to

13   be an alien to enter, reenter, pass through, or reside in the

14   United States or concerning any matter which is material

15   and relevant to the enforcement of this Act and the adminis-

16   tration of the Service, and, where such action may be

17   necessary, to make a written record of such evidence. Any

18   person coming into the United States may be required to

19   state under oath the purpose or purposes for which he

20   comes, the length of time he intends to remain in the United

21   States, whether or not he intends to remain in the United

22   States permanently and, if an alien, whether he intends to

23   become a citizen thereof, and such other items of information

24   as will aid the immigration officer in determining whether

25   he is a national or alien and, if the latter, whether he

86

1   belongs to any of the excluded classes enumerated in section

2   212.   The Attorney General and any immigration officer,

3   including special inquiry officers, shall have power to require

4   by subpena the attendance and testimony of witnesses before

5   immigration officers and special inquiry officers and the

6   production of books, papers, and documents touching the

7   privilege of any person to enter, reenter, reside in, or pass

8   through the United States or concerning any matter which

9   is material and relevant to the enforcement of this Act and

10   the administration of the Service, and to that end may invoke

11   the aid of any court of the United States.   Any United

12   States district court within the jurisdiction of which in-

13   vestigations or inquiries are being conducted by an immigra-

14   tion officer or special inquiry officer may, in the event of

15   neglect or refusal to respond to a subpena issued under this

16   subsection or refusal to testify before an immigration officer

17   or special inquiry officer, issue an order requiring such per-

18   sons to appear before an immigration officer or special inquiry

19   officer, produce books, papers, and documents if demanded,

20   and testify, and any failure to obey such order of the court

21   may be punished by the court as a contempt thereof.

22       (b)  Every alien,   ier than an alien crewman, and

23   except as otherwise provided in subsection (c) of this section

24   and in section 273 (d), who may not appear to the

25   examining immigration officer at the port of arrival to be

1 clearly and beyond a doubt entitled to land shall be detained
2 for further inquiry to be conducted by a special inquiry
3 officer.  The decision of the examining immigration officer,
4 if favorable to the admission of any alien, shall be
5 subject to challenge by any other immigration officer and
6 such challenge shall operate to take the alien, whose privilege
7 to land is so challenged, before a special inquiry officer for
8 further inquiry.

9     (c) Any alien, including an alien crewman, who may
10 appear to the examining immigration officer or to the special
11 inquiry officer during the examination before either of such
12 officers to be excludable under paragraph (27), (28), or
13 (29) of section 212 (a) shall be temporarily excluded,
14 and no further inquiry by a special inquiry officer shall be
15 conducted until after the case is reported to the Attorney
16 General and such an inquiry or further inquiry is directed
17 by the Attorney General.  If the Attorney General i satis-
18 fied that the alien is excludable under any of such para-
19 graphs on the basis of information of a confidential nature,
20 the disclosure of which in his opinion would be prejudicial
21 to the public interest, safety, or security, he may in his
22 discretion order such alien to be excluded and deported
23 without any inquiry or further inquiry by a special inquiry
24 officer.

88

SPECIAL INQUIRY OFFICERS

SEC. 236. (a) Special inquiry officers shall be such immigration officers as may be designated and selected by the Attorney General for the purpose of performing the functions of special inquiry officers required under this Act. No immigration officer shall act as the special inquiry officer under this section in any case in which such officer has engaged in investigative or prosecuting functions. Subject to the provisions of section 235 (c), one special inquiry officer shall have authority in any case to determine whether an arriving alien who has been held for inquiry under section 235 shall be allowed to enter or shall be excluded and deported, and such determination shall be made by such officer only after he shall have conducted an inquiry under oath. At such inquiry, which shall be kept separate and apart from the public, the alien may have one friend or relative present, under such conditions as may be prescribed by the Attorney General. A complete and permanent record of the proceedings, and of all testimony and evidence produced at such inquiry, shall be kept by the conducting officer. Proceedings before special inquiry officers under this section shall be conducted in accordance with this section and such regulations as the Attorney General shall prescribe. Notwithstanding any other law, including the Act of June 11, 1946 (60 Stat. 237), the proceedings so established shall be the

89

1    sole and exclusive procedure for determining the admissi-

2    bility of a person to the United States.

3        (b) From a decision of a special inquiry officer exclud-

4    ing an alien, such alien may take a timely appeal to the At-

5    torney General, and any such alien shall be advised of his

6    right to take such appeal.  No appeal may be taken from a

7    temporary exclusion under section 235 (c).  From a deci-

8    sion of the special inquiry officer to admit an alien, the immi-

9    gration officer in charge at the port where the inquiry is

10   held may take a timely appeal to the Attorney General.

11   An appeal by the alien, or such officer in charge, shall op-

12   erate to stay any final action with respect to any alien whose

13   case is so appealed until the final decision of the Attorney

14   General is made.  Except as provided in section 235 (c),

15   such decision shall be rendered solely upon the evidence ad-

16   duced before the special inquiry officer.

17       (c) Except as provided in subsections (b) and (d), in

18   every case where an alien is excluded from admission into the

19   United States, under this Act or any other law or treaty now

20   existing or hereafter made, the decision of a special inquiry

21   officer shall be final unless reversed on appeal to the Attorney

22   General.

23       (d) If a medical officer or civil surgeon or board of

24   medical officers has certified under section 234 that an alien

25   is afflicted with a disease specified in section 212 (a) (6),

90

1 or with any mental disease, defect, or disability which would

2 bring such alien within any of the classes excluded from

3 admission to the United States under paragraphs (1), (2),

4 (3), (7), and (8) (A) under section 212 (a), the decision

5 of the special inquiry officer shall be based solely upon

6 such certification.   No alien shall have a right to appeal from

7 such an excluding decision of a special inquiry officer.   If

8 an alien is excluded by a special inquiry officer because of

9 the existence of a physical disease, defect, or disability, other

10 than one specified in section 212 (a) (6), the alien may

11 appeal from the excluding decision in accordance with sub-

12 section (b) of this section, and the provisions of section 213

13 may be invoked.

14 IMMEDIATE DEPORTATION OF ALIENS EXCLUDED FROM

15 ADMISSION OR ENTERING IN VIOLATION OF LAW

16 SEC. 237. (a) Any alien arriving in the United States

17 who is excluded under this Act, shall be immediately

18 deported, in accommodations of the same class in which

19 he arrived, on the vessel or aircraft bringing him, unless

20 the Attorney General, in an individual case, in his discretion,

21 concludes that immediate deportation is not practicable or

22 proper.   The cost of the maintenance including detention

23 expenses and expenses incident to deportation of any such

24 alien while he is being detained, as well as the transportation

25 expense of his removal from the United States shall be borne

1    by the owner or owners of the vessel or aircraft on which he

2    arrived, except that the cost of maintenance including deten-

3    tion expenses and expenses incident to deportation under

4    this section shall not be assessed against the owner or owners

5    of such vessel or aircraft if the alien was in possession of

6    an unexpired immigrant or nonimmigrant visa or other

7    documentation in lieu thereof issued by a consular officer,

8    and the owner or owners of such vessel or aircraft shall

9    establish to the satisfaction of the Attorney General that the

10   ground of detention could not have been ascertained by the

11   exercise of due diligence on his or their part prior to the

12   alien's embarkation.

13       (b) It shall be unlawful for any master, commanding

14   officer, purser, person in charge, agent, owner, or consignee

15   of any vessel or aircraft (1) to refuse to receive any alien,

16   other than an alien crewman, ordered deported under this

17   section back on board such vessel or aircraft or another

18   vessel or aircraft owned or operated by the same interests;

19   (2) to fail to detain any alien on board any such vessel or

20   at the airport of arrival of the aircraft when required by this

21   Act or if so ordered by an immigration officer, or to fail or

22   refuse to deliver him for medical or other inspection, or for

23   further medical or other inspection, as and when so ordered

24   by such officer; (3) to refuse or fail to remove him from

25   the United States; (4) to fail to pay the cost of his mainte-

92

1   nance while being detained as required by this section or

2   section 233 of this title; (5) to take any consideration to

3   be returned in case the alien is landed; or (6) knowingly

4   to bring to the United States any alien, other than an alien

5   crewman, excluded or arrested and deported under any pro-

6   vision of law until such alien may be lawfully entitled to

7   reapply for admission to the United States. If it shall

8   appear to the satisfaction of the Attorney General that any

9   such master, commanding officer, purser, person in charge,

10  agent, owner, or consignee of any vessel or aircraft has

11  violated any of the provisions of this section or of section

12  233 of this title, such master, commanding officer, purser,

13  person in charge, agent, owner, or consignee shall pay to

14  the collector of customs of the district in which port of arrival

15  is situated or in which any vessel or aircraft of the line may

16  be found, the sum of $300 for each violation.  No such ves-

17  sel or aircraft shall have clearance from any port of the

18  United States while any such fine is unpaid or while the

19  question of liability to pay any such fine is being determined,

20  nor shall any such fine be remitted or refunded, except that

21  clearance may be granted prior to the determination of such

22  question upon the deposit with the collector of customs of

23  a bond or undertaking approved by the Attorney General

24  or a sum sufficient to cover such fine.

25       (c) If the vessel or aircraft, by which any alien who has

93

1   been ordered deported under this section arrived, has left the

2   United States and it is impracticable to deport the alien

3   within a reasonable time by another vessel or aircraft owned

4   by the same person, the cost of deportation may be paid

5   from the appropriation for the enforcement of this Act and

6   recovered by civil suit from any owner, agent, or consignee

7   of the vessel or aircraft.

8       (d) The Attorney General, under such conditions as are

9   by regulations prescribed, may stay the deportation of any

10  alien deportable under this section, if in his judgment

11  the testimony of such alien is necessary on behalf of

12  the United States in the prosecution of offenders against

13  any provision of this Act or other laws of the United

14  States.   The cost of maintenance of any person so de-

15  tained resulting from a stay of deportation under this sub-

16  section and a witness fee in the sum of $1 per day for

17  each day such person is so detained may be paid from the

18  appropriation for the enforcement of this title.   Such alien

19  may be released under bond in the penalty of not less

20  than $500 with security approved by the Attorney General

21  on condition that such alien shall be produced when required

22  as a witness and for deportation, and on such other condi-

23  tions as the Attorney General may prescribe.

24      (e) Upon the certificate of an examining medical offi-

25  cer to the effect that an alien ordered to be excluded and

94

1   deported under this section is helpless from sickness or

2   mental or physical disability, or infancy, if such alien is ac-

3   companied by another alien whose protection or guardian-

4   ship is required by the alien ordered excluded and deported,

5   such accompanying alien may also be excluded and deported,

6   and the master, commanding officer, agent, owner, or con-

7   signee of the vessel or aircraft in which such alien and accom-

8   panying alien arrived in the United States shall be required

9   to return the accompanying alien in the same manner as

10   other aliens denied admission and ordered deported under

11   this section.

12   ENTRY THROUGH OR FROM FOREIGN CONTIGUOUS TERRI-

13       TORY AND ADJACENT ISLANDS; LANDING STATIONS

14       SEC. 238. (a)  The Attorney General shall have power

15   to enter into contracts with transportation lines for the entry

16   and inspection of aliens coming to the United States through

17   foreign contiguous territory or through adjacent islands.   In

18   prescribing rules and regulations and making contracts for

19   the entry and inspection of aliens applying for admission

20   through foreign contiguous territory or through adjacent

21   islands, due care shall be exercised to avoid any discrim-

22   inatory action in favor of transportation companies trans-

23   porting to such territory or islands aliens destined to the

24   United States, and all such transportation companies shall

25   be required, as a condition precedent to the inspection or

95

1   examination under such rules and contracts at the ports of

2   such contiguous territory or such adjacent islands of aliens

3   brought thereto by them, to enter into a contract which will

4   require them to submit to and comply with all the require-

5   ments of this Act which would apply were they bringing

6   such aliens directly to ports of the United States.

7        (b) The Attorney General shall have power to enter

8   into contracts with transportation lines for the entry and

9   inspection of aliens coming to the United States from foreign

10  contiguous territory or from adjacent islands.   No such

11  transportation line shall be allowed to land any such alien in

12  the United States until and unless it has entered into any

13  such contracts which may be required by the Attorney

14  General.

15       (c) Every transportation line engaged in carrying alien

16  passengers for hire to the United States from foreign con-

17  tiguous territory or from adjacent islands shall provide and

18  maintain at its expense suitable landing stations, ap-

19  proved by the Attorney General, conveniently located at

20  the point or points of entry.   No such transportation line

21  shall be allowed to land any alien passengers in the United

22  States until such landing stations are provided, and unless

23  such stations are thereafter maintained to the satisfaction

24  of the Attorney General.

25       (d) The Attorney General shall have power to enter

96

1 into contracts including bonding agreements with transporta-

2 tion lines to guarantee the passage through the United States

3 in immediate and continuous transit of aliens destined

4 to foreign countries.

5     (e) As used in this section the terms "transportation

6 line" and "transportation company" include, but are not

7 limited to, the owner, charterer, consignee, or authorized

8 agent operating any vessel or aircraft bringing aliens to

9 the United States, to foreign contiguous territory, or to

10 adjacent islands.

11 DESIGNATION OF PORTS OF ENTRY FOR ALIENS ARRIVING

12                 BY CIVIL AIRCRAFT

13     SEC. 239. The Attorney General is authorized (1) to

14 designate as ports of entry for aliens arriving by aircraft any

15 of the ports of entry for civil aircraft designated as such in

16 accordance with law; and (2) by regulation to provide for

17 the application to civil air navigation of the provisions of this

18 Act where not expressly so provided in this Act to such

19 extent and upon such conditions as he deems necessary.

20                RECORDS OF ADMISSION

21     SEC. 240. (a) The Attorney General shall cause to be

22 filed, as a record of admission of each immigrant, the immi-

23 grant visa required by section 221 (e) to be surrendered

24 at the port of entry by the arriving alien to an immigration

25 officer.

97

1     (b) The Attorney General shall cause to be filed such

2     record of the entry into the United States of each immigrant

3     admitted under section 211 (b) and of each nonimmigrant as

4     the Attorney General deems necessary for the enforcement

5     of the immigration laws.

6     CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS

7     GENERAL CLASSES OF DEPORTABLE ALIENS

8     SEC. 241. (a) Any alien in the United States including

9     an alien crewman shall, upon the order of the Attorney

10    General, be deported who—

11        (1) at the time of entry was within one or more of

12        the classes of aliens excludable by law;

13        (2) entered the United States without inspection

14        or at any time or place other than as designated by the

15        Attorney General or is in the United States in violation

16        of this Act or in violation of any other law of the United

17        States;

18        (3) within five years after entry becomes institu-

19        tionalized because of mental disease, defect, or

20        deficiency;

21        (4) (A) within five years after entry is convicted of

22        a crime involving moral turpitude and either sentenced

23        to confinement or confined therefor in a prison or cor-

24        rective institution for a year or more, or who at any

S. 716——7

1 time after entry is convicted of two crimes involving

2 moral turpitude, not arising out of a single scheme of

3 criminal misconduct, regardless of whether confined

4 therefor and regardless of whether the convictions were

5 in a single trial; or at any time after entry is convicted

6 in the United States of any criminal offense, not com-

7 prehended within any of the foregoing, if the Attorney

8 General in his discretion concludes that the alien is an

9 undesirable resident of the United States; or

10 (B) admits committing within five years after

11 entry acts which constitute the essential elements of a

12 crime involving moral turpitude, or whose admission is

13 tantamount to a confession of guilt of such a crime;

14 (5) has failed to comply with the provisions of

15 section 265, or has been convicted under section 266 (c)

16 of this title, or under section 36 (c) of the Alien

17 Registration Act of 1940, or has been convicted of

18 violating or conspiracy to violate any provision of the

19 Act entitled "An Act to require the registration of

20 certain persons employed by agencies to disseminate

21 propaganda in the United States, and for other pur-

22 poses", approved June 8, 1938, as amended, or has

23 been convicted under section 1546 of title 18 of the

24 United States Code;

25 (6) is or at any time after entry has been a member

99

1    of any one of the classes of aliens described in para-

2    graph (28) of section 212 (a) of this title, except

3    that this paragraph shall not apply to an alien who

4    was lawfully admitted to the United States for per-

5    manent residence, if the sole ground for deportation

6    under this paragraph ceased to exist prior to such

7    lawful entry into the United States;

8        (7) is engaged, or at any time after entry has

9    engaged, or at any time after entry has had a pur-

10   pose to engage, in any of the activities described in

11   paragraph (27) or (29) of section 212 (a), unless the

12   Attorney General is satisfied, in the case of any alien

13   within category (C) of paragraph (29) of such sec-

14   tion, that such alien did not know or have reason to

15   believe at the time such alien became a member of,

16   affiliated with, or participated in the activities of the

17   organization (and did not thereafter and prior to the

18   date upon which such organization was registered or

19   required to be registered under section 7 of the Sub-

20   versive Activities Control Act of 1950 have such

21   knowledge or belief) that such organization was a

22   Communist organization;

23       (8) in the opinion of the Attorney General is,

24   or at any time after entry became, a public charge from

25   causes not affirmatively shown to have arisen after entry;

100

1       (9) was admitted as a nonimmigrant, and failed to

2     maintain the nonimmigrant status in which admitted

3     or to which changed pursuant to section 248, or to

4     comply with the conditions under which admitted or

5     transferred;

6       (10) entered the United States from foreign con-

7     tiguous territory or adjacent islands, having arrived

8     there on a vessel or aircraft of a nonsignatory trans-

9     portation company under section 238 (a) and was with-

10    out the required period of stay in such foreign con-

11    tiguous territory or adjacent islands following such

12    arrival;

13      (11) is or at any time after entry has been a nar-

14    cotic drug addict, or who at any time has been convicted

15    of a violation of any law or regulation relating to the

16    illicit traffic in narcotic drugs, or who has been convicted

17    of a violation of any law or regulation governing or

18    controlling the taxing, manufacture, production, com-

19    pounding, transportation, sale, exchange, dispensing,

20    giving away, importation, exportation, or the possession

21    for the purpose of the manufacture, production, com-

22    pounding, transportation, sale, exchange, dispensing,

23    giving away, importation or exportation of opium, coca

24    leaves, heroin, marihuana, or any salt derivative or

25    preparation of opium or coca leaves;

101

1     (12) is or at any time after entry became a member of any of the classes specified in paragraph (12) of section 212 (a); or is or at any time after entry became the manager, or is or at any time after entry became connected with the management, of a house of prostitution or any other immoral place; or

7     (13) is an alien who prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law.

13 (b) The provisions of subsection (a) (4) respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States, or (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the

102

1   Service, and prosecution authorities, who shall be granted

2   an opportunity to make representations in the matter.

3       (c) An alien shall be deported as having procured a

4   visa or other documentation by fraud within the meaning of

5   paragraph (19) of section 212 (a), and to be in the United

6   States in violation of this Act within the meaning of sub-

7   section (a) (2) of this section, if (1) at any time he or

8   she obtained any entry into the United States with an immi-

9   grant visa or other documentation procured on the basis of

10  a marriage entered into less than two years prior to such

11  entry of the alien and which within two years subsequent

12  to any entry of the alien into the United States, was or shall

13  be judicially terminated, unless such alien shall establish to

14  the satisfaction of the Attorney General that such marriage

15  was not contracted for the purpose of evading any pro-

16  visions of the immigration laws; or (2) it appears to the

17  satisfaction of the Attorney General that he or she has failed

18  or refused to fulfill his or her marital agreement made for

19  the purpose of procuring his or her entry as an immigrant.

20      (d) The provisions of this section shall be applicable to

21  all aliens belonging to any of the classes enumerated in sub-

22  sections (a) and (c) without regard to the fact (1) that

23  any such alien entered the United States prior to the date

24  of enactment of this Act, or (2) except as otherwise pro-

25  vided in    graph (6) of subsection (a) of this section

103

1  that the facts, by reason of which any such alien belongs to

2  any of the classes enumerated in subsections (a) and (c),

3  occurred prior to the date of enactment of this Act.

4      (e) An alien, admitted as a nonimmigrant under the

5  provisions of either section 101 (a) (14) (A) (i) or 101

6  (a) (14) (G) (i), and who fails to maintain a status under

7  either of those provisions, shall not be required to depart

8  from the United States without the approval of the Secre-

9  tary of State, unless such alien is subject to deportation under

10  subsection (a) (6) or (7) of this section.

11  APPREHENSION AND DEPORTATION OF ALIENS

12      SEC. 242. (a) Pending a determination of deport-

13  ability in the case of any alien as provided in subsection

14  (b) of this section, such alien may, upon warrant of the

15  Attorney General, be arrested and taken into custody.

16  Any such alien taken into custody may, in the discretion

17  of the Attorney General and pending such final determi-

18  nation of deportability, (1) be continued in custody; or

19  (2) be released under bond in the amount of not less

20  than $500 with security approved by the Attorney Gen-

21  eral, containing such conditions as the Attorney General

22  may prescribe; or (3) be released on conditional parole.

23  But such bond or parole, whether heretofore or hereafter

24  authorized, may be revoked at any time by the Attorney

25  General, in his discretion, and the alien may be returned

104

1  to custody under the warrant which initiated the pro-

2  ceedings against him and detained until final determina-

3  tion of his deportability.

4    (b) A final order of deportation in any case shall be

5  made by the Attorney General only upon a record made

6  in a proceeding before a special inquiry officer, at which the

7  alien shall be present.  Such proceedings before a special

8  inquiry officer shall be in accordance with such regulations

9  as the Attorney General shall prescribe.  No immigration

10  officer shall act as the special inquiry officer under this section

11  in any case in which such officer has engaged in investigative

12  or prosecuting functions.  Such regulations shall include as

13  minimum requirements that—

14      (1) the alien shall have notice of the nature of the

15      charges against him and of the time and place at which

16      the proceedings will be held;

17      (2) the alien shall have the privilege of being

18      represented by counsel of his choice at no expense to

19      the Government;

20      (3) the alien shall have a reasonable opportunity

21      to examine the evidence against him, to present evidence

22      in his own behalf, and to cross-examine witnesses pre-

23      sented by the Government.  nd

24      (4) no decision shall be v 'd unless it is based

25      upon probative evidence.

105

1  Provisions shall also be made which, in the opinion of the

2  Attorney General, are necessary and proper to safeguard the

3  rights and privileges of mentally incompetent aliens against

4  whom such proceedings are instituted, in whose cases the

5  application of the preceding provisions of this subsection are

6  impracticable.

7  Notwithstanding any other law, including the Act of

8  June 11, 1946 (60 Stat. 237), the proceedings so prescribed

9  shall be the sole and exclusive procedure for determining the

10  deportability of an alien who is in the United States.   In any

11  case in which an alien is ordered deported from the United

12  States under the provisions of this Act, or of any other law

13  or treaty, the decision of the Attorney General shall be final.

14  In the discretion of the Attorney General, and under such

15  regulations as he may prescribe, deportation proceedings,

16  including issuance of a warrant of arrest, and a finding of

17  deportability under this subsection need not be required in

18  the case of any alien who admits to belonging to a class of

19  aliens which is deportable under section 241 if such alien

20  voluntarily departs from the United States at his own ex-

21  pense, unless the Attorney General has reason to believe

22  that such alien is deportable under paragraph (4), (5), (6),

23  (7), (11), or (12) of section 241 (a).   If any alien is

24  financially unable to depart at his own expense, and the

25  Attorney General deems his removal without the institution

106

1   of deportation proceedings to be in the best interests of the

2   United States, the expense of such removal may be paid from

3   the appropriation for the enforcement of this Act.

4      (c)  When an order of deportation is made against any

5   alien, the Attorney General shall have a period of six months

6   from the date of such order within which to effect the alien's

7   departure from the United States, during which period, at the

8   Attorney General's discretion, the alien may be detained,

9   released on bond in an amount and containing such condi-

10   tions as the Attorney General may prescribe, or released on

11   such other condition as the Attorney General may prescribe.

12   If deportation has not been practicable, advisable, or possible,

13   or departure of the alien from the United States under the

14   order of deportation has not been effected, within six months

15   from the date of the order of deportation, the alien shall

16   become subject to such further supervision and detention

17   pending eventual deportation as is authorized in this section.

18   The Attorney General is hereby authorized and directed to

19   arrange for appropriate places of detention for those aliens

20   whom he shall take into custody and detain.   For the pur-

21   poses of this subsection an order of deportation heretofore or

22   hereafter entered against an alien in legal detention or con-

23   finement, other than under an immigration process, shall be

24   considered as being made as of the moment he is released

25   from such detention or confinement, and not prior thereto.

107

1    (d) Any alien, against whom a final order of depor-

2    tation heretofore or hereafter issued, has been outstanding

3    for more than six months, shall, pending eventual deporta-

4    tion, be subject to supervision under regulations prescribed

5    by the Attorney General. Such regulations shall include

6    provisions which will require any alien subject to supervision

7    (1) to appear from time to time before an immigration

8    officer for identification; (2) to submit, if necessary, to

9    medical and psychiatric examination at the expense of the

10   United States; (3) to give information under oath as to

11   his nationality, circumstances, habits, associations, and activ-

12   ities, and such other information, whether or not related to

13   the foregoing, as the Attorney General may deem fit and

14   proper; and (4) to conform to such reasonable written re-

15   strictions on his conduct or activities as are prescribed by the

16   Attorney General in his case. Any alien who shall will-

17   fully fail to comply with such regulations, or willfully fail

18   to appear or to give information or submit to medical or

19   psychiatric examination if required, or knowingly give false

20   information in relation to the requirements of such regula-

21   tions, or knowingly violate a reasonable restriction imposed

22   upon his conduct or activity, shall upon conviction be guilty

23   of a felony, and shall be fined not more than $1,000 or shall

24   be imprisoned not more than one year, or both.

25   (e) Any alien against whom a final order of deporta-

108

1 tion is outstanding by reason of being a member of any of

2 the classes described in paragraph (4), (5), (6), (7),

3 (11), or (12) of section 241 (a) who shall willfully fail

4 or refuse to depart from the United States within a period

5 of six months from the date of the final order of deportation

6 under administrative processes, or, if judicial review is had

7 then from the date of the final order of the court, or from

8 the date of the enactment of the Subversive Activities Con-

9 trol Act of 1950, whichever is the later, or shall willfully

10 fail or refuse to make timely application in good faith for

11 travel or other documents necessary to his departure, or who

12 shall connive or conspire, or take any other action, designed

13 to prevent or hamper or with the purpose of preventing or

14 hampering his departure pursuant to such order of deporta-

15 tion, or who shall willfully fail or refuse to present himself for

16 deportation at the time and place required by the Attorney

17 General pursuant to such order of deportation, shall upon

18 conviction be guilty of a felony, and shall be imprisoned not

19 more than ten years: *Provided,* That this subsection shall

20 not make it illegal for any alien to take any proper steps

21 for the purpose of securing cancellation of or exemption from

22 such order of deportation or for the purpose of securing his

23 release from incarceration or custody: *Provided further,* That

24 the court may for good cause suspend the sentence of such

25 alien and order his release under such conditions as the

109

1    court may prescribe.  In determining whether good cause

2    has been shown to justify releasing the alien, the court shall

3    take into account such factors as (1) the age, health, and

4    period of detention of the alien; (2) the effect of the alien's

5    release upon the national security and public peace or safety;

6    (3) the likelihood of the alien's resuming or following a

7    course of conduct which made or would make him deport-

8    able; (4) the character of the efforts made by such alien

9    himself and by representatives of the country or countries

10    to which his deportation is directed to expedite the alien's

11    departure from the United States; (5) the reason for the

12    inability of the Government of the United States to secure

13    passports, other travel documents, or deportation facilities

14    from the country or countries to which the alien has been

15    ordered deported; and (6) the eligibility of the alien for

16    discretionary relief under the immigration laws.

17    (f) Should the Attorney General find that any alien

18    has unlawfully reentered the United States after having

19    previously departed or been deported pursuant to an order

20    of deportation, whether before or after the date of enactment

21    of this Act, on any ground described in any of the paragraphs

22    enumerated in subsection (e), the previous order of deporta-

23    tion shall be deemed to be reinstated from its original date

24    and such alien shall be deported under such previous order

25    at any time subsequent to such reentry.  For the purposes

1   of subsection (e) the date on which the finding is made that

2   such reinstatement is appropriate shall be deemed the date

3   of the final order of deportation.

4      (g) If any alien, subject to supervision or detention

5   under subsections (c) or (d) of this section, is able to depart

6   from the United States under the order of deportation, except

7   that he is financially unable to pay his passage, the Attorney

8   General may in his discretion permit such alien to depart

9   voluntarily, and the expense of such passage to the country

10   to which he is destined may be paid from the appropriation

11   for the enforcement of this Act, unless such payment is

12   otherwise provided for under this Act.

13      (h) An alien sentenced to imprisonment shall not be

14   deported until such imprisonment has been terminated by

15   the release of the alien from confinement.   Parole, probation,

16   or possibility of rearrest or further confinement in respect of

17   the same offense shall not be a ground for deferral of

18   deportation.

19      COUNTRIES TO WHICH ALIENS SHALL BE DEPORTED;

20         COST OF DEPORTATION

21      SEC. 243. (a) The deportation of an alien in the United

22   States provided for in this Act, or any other Act of Congress,

23   shall be directed by the Attorney General, to a country

24   promptly designated by the alien, if that country is willing

25   to accept him into its territory: *Provided,* That no alien

111

1   shall be permitted to make more than one such designation.

2   If the country designated by the alien does not accept him,

3   such alien shall be deported to any country of which such

4   alien is a subject, national, or citizen if such country is willing

5   to accept him into its territory, but if such country does

6   not accept him, then such deportation shall be directed by

7   the Attorney General within his discretion and without

8   necessarily giving any priority or preference because of their

9   order as herein set forth, either—

10       (1) to the country from which such alien last

11   entered the United States;

12       (2) to the country in which is located the foreign

13   port at which such alien embarked for the United States

14   or for foreign contiguous territory;

15       (3) to the country in which he was born;

16       (4) to the country in which the place of his birth is

17   situated at the time he is ordered deported;

18       (5) to any country in which he resided prior to

19   entering the country from which he entered the United

20   States;

21       (6) to the country which had sovereignty over the

22   birthplace of the alien at the time of his birth; or

23       (7) if deportation to any of the foregoing places or

24   countries is impracticable, inadvisable, or impossible,

112

1     then to any country which is willing to accept such alien

2     into its territory.

3     (b)  If the United States is at war and the deportation,

4 in accordance with the provisions of subsection (a), of

5 any alien who is deportable under any law of the United

6 States shall be found by the Attorney General to be imprac-

7 ticable, inadvisable, inconvenient, or impossible because of

8 enemy occupation of the country from which such alien came

9 or wherein is located the foreign port at which he embarked

10 for the United States or because of reasons connected with

11 the war, such alien may, in the discretion of the Attorney

12 General, be deported as follows:

13     ·(1)  if such alien is a citizen or subject of a country

14     whose recognized government is in exile, to the country

15     in which is located that government in exile if that

16     country will permit him to enter its territory; or

17     (2)  if such alien is a citizen or subject of a country

18     whose recognized government is not in exile, then to a

19     country or any political or territorial subdivision thereof

20     which is proximate to the country of which the alien

21     is a citizen or subject, or, with the consent of the

22     country of which the alien is a citizen or subject, to any

23     other country.

24     (c)  If deportation proceedings are instituted at any

25 time within five years after the entry of the alien, the cost

113

1   of removal to the port of deportation shall be at the expense

2   of the appropriation for the enforcement of this Act, and

3   the deportation from such port shall be at the expense of

4   the owner or owners of the vessels, aircraft, or other trans-

5   portation lines by which such alien came to the United

6   States, or if in the opinion of the Attorney General that is

7   not practicable, at the expense of the appropriation for the

8   enforcement of this Act: *Provided*, That the costs of the

9   deportation of any such alien from such port shall not be

10   assessed against the owner or owners of the vessels, aircraft,

11   or other transportation lines in the case of any alien who

12   arrived in possession of an unexpired immigrant or non-

13   immigrant visa or other documentation in lieu thereof issued

14   by a consular officer and the owner or owners of the vessels,

15   aircraft, or other transportation lines shall establish to the

16   satisfaction of the Attorney General that the ground of

17   deportation could not have been ascertained by the exercise

18   of due diligence on his or their part prior to the alien's

19   embarkation.  In the case of an alien crewman, if depor-

20   tation proceedings are instituted at any time within five

21   years after the granting of the last permit to land tempo-

22   rarily under the provisions of section 252, the cost of

23   removal to the port of deportation shall be at the expense

24   of the appropriation for the enforcement of this Act and the

S. 716——8

114

1   deportation from such port shall be at the expense of the

2   owner or owners of the vessels or aircraft by which such

3   alien came to the United States, or if in the opinion of the

4   Attorney General that is not practicable, at the expense of

5   the appropriation for the enforcement of this Act.

6       (d) If deportation proceedings are instituted later than

7   five years after the entry of the alien, or in the case of an

8   alien crewman later than five years after the granting of

9   the last permit to land temporarily, or, if the deportation is

10  made by reason of causes arising subsequent to entry, the

11  cost thereof shall be payable from the appropriation for

12  the enforcement of this Act.

13      (e) A failure or refusal on the part of the master, com-

14  manding officer, agent, owner, charterer, or consignee of a

15  vessel, aircraft, or other transportation line to comply with

16  the order of the Attorney General to take on board, guard

17  safely, and transport to the destination specified any alien

18  ordered to be deported under the provisions of this Act, or a

19  failure or refusal by any such person to comply with an

20  order of the Attorney General to pay deportation expenses

21  in accordance with the requirements of this section, shall

22  be punished by the imposition of a penalty in the sum and

23  manner prescribed in section 237 (b).

24      (f) When in the opinion of the Attorney General the

115

1 mental or physical condition of an alien being deported

2 is such as to require personal care and attendance, the

3 Attorney General shall, when necessary, employ a suit-

4 able person for that purpose who shall accompany such

5 alien to his or her final destination, and the expense inci-

6 dent to such service shall be defrayed in the same manner

7 as the expense of deporting the accompanied alien is de-

8 frayed, and any failure or refusal to defray such expenses

9 shall be punished in the manner prescribed by subsection

10 (c) of this section.

11     (g) Upon the notification by the Attorney General

12 that any country upon request denies or unduly delays

13 acceptance of the return of any alien who is a national,

14 citizen, subject or resident thereof, the Secretary of State

15 shall instruct consular officers performing their duties in

16 the territory of such country to discontinue the issuance

17 of immigration visas to nationals, citizens, subjects, or resi-

18 dents of such country, until such time as the Attorney Gen-

19 eral shall inform the Secretary of State that such country

20 has accepted such alien.

21     (h) No alien shall be deported under any provisions

22 of this Act to any country in which the Attorney General

23 shall in his discretion find that such alien would be sub-

24 jected to physical persecution.

116

### SUSPENSION OF DEPORTATION

1

2 SEC. 244. (a) As hereinafter prescribed in this section,

3 the Attorney General may, in his discretion, suspend deporta-

4 tion and adjust the status to that of an alien lawfully admitted

5 for permanent residence, in the case of an alien who—

6     (1) applies to the Attorney General within five

7     years after the effective date of this Act for suspension of

8     deportation; last entered the United States more than

9     two years prior to the date of enactment of this Act;

10     is deportable under any law of the United States and

11     is not a member of a class of aliens whose deportation

12     could not have been suspended by reason of section 19

13     (d) of the Immigration Act of 1917, as amended; and

14     has been physically present in the United States for a

15     continuous period of not less than seven years imme-

16     diately preceding the date of such application, and proves

17     that during all of such period he was a person of good

18     moral character; and is a person whose deportation

19     would, in the opinion of the Attorney General, result

20     in exceptional and extremely unusual hardship to the

21     members of his immediate family who are citizens or

22     legal residents of the United States; or

23     (2) last entered the United States within two years

24     prior to or at any time after the date of enactment of

25     this Act; is deportable under any law of the United

1    States for an act committed or status existing prior to or

2    at the time of such entry into the United States and is not

3    within the provisions of paragraph (4) of this sub-

4    section; was possessed of all of the requisite documents

5    at the time of such entry into the United States; is not

6    found by the Attorney General to be an undesirable

7    resident of the United States; has been physically present

8    in the United States for a continuous period of not less

9    than five years immediately preceding his application

10   under this paragraph, and proves that during all of such

11   period he has been a person of good moral character;

12   has not been served with a final order of deportation in

13   deportation proceedings up to the time of applying to

14   the Attorney General for suspension of deportation; and

15   is a person whose deportation would, in the opinion of

16   the Attorney General, result in exceptional and ex-

17   tremely unusual hardship to the members of his imme-

18   diate family who are citizens or legal residents of the

19   United States; or

20       (3) last entered the United States within two years

21   prior to, or at any time after the date of enactment of

22   this Act; is deportable under any law of the United

23   States for an act committed or status acquired subse-

24   quent to such entry into the United States and is not

25   within the provisions of paragraph (5) of this sub-

118

1    section; is not found by the Attorney General to be an

2    undesirable resident of the United States; was possessed

3    of all of the requisite documents at the time of such

4    entry into the United States; has been physically present

5    in the United States for a continuous period of

6    not less than five years immediately following the

7    commission of an act, or the assumption of a status,

8    constituting a ground for deportation, and proves that

9    during all of such period he has been a person of good

10   moral character; has not been served with a final order

11   of deportation in deportation proceedings up to the time

12   of applying to the Attorney General for suspension of

13   deportation; and is a person whose deportation would,

14   in the opinion of the Attorney General, result in excep-

15   tional and extremely unusual hardship to the members

16   of his immediate family who are citizens or legal residents

17   of the United States; or

18        (4) last entered the United States within two years

19   prior to, or at any time after the date of enactment of

20   this Act; is deportable under paragraph (1) of section

21   241 (a) insofar as it relates to criminals, prostitutes or

22   other immoral persons, subversives, violators of narcotic

23   laws and si  lar classes or under paragraph (2) of sec-

24   tion 241 (a), as a person who entered the United States

25   without inspection or at a time or place other than as

119

1     designated by the Attorney General, or without the

2     proper documents; has been physically present in the

3     United States for a continuous period of not less than

4     ten years after such entry and immediately preceding

5     his application under this paragraph and proves that

6     during all of such period he has been a person of good

7     moral character; has not been served with a final order

8     of deportation in deportation proceedings up to the time

9     of applying to the Attorney General for suspension of

10     deportation; and is a person whose deportation would,

11     in the opinion of the Attorney General, result in excep-

12     tional and extremely unusual hardship to the members

13     of his immediate family who are citizens or legal resi-

14     dents of the United States; or

15        (5) last entered the United States within two years

16     prior to, or at any time after the date of enactment of

17     this Act; is deportable under paragraph (2) of section

18     241 (a) as a person who has remained longer in the

19     United States than the period for which he was admitted,

20     (4), (5), (6), (7), (11), or (12) of section 241 (a)

21     for an act committed or status acquired subsequent to

22     such entry into the United States; has been physically

23     present in the United States for a continuous period of

24     not less than ten years immediately following the com-

25     mission of an act, or the assumption of a status, constitut-

1   ing a ground for deportation, and proves that during all of

2   such period he has been a person of good moral character;

3   has not been served with a final order of deportation in

4   deportation proceedings up to the time of applying to

5   the Attorney General for suspension of deportation; and

6   is a person whose deportation would, in the opinion of

7   the Attorney General, result in exceptional and extremely

8   unusual hardship to the members of his immediate family

9   who are citizens or legal residents of the United States.

10   (b) Upon application by any alien who is found by

11   the Attorney General to meet the requirements of clause (1),

12   (2), or (3) of subsection (a) of this section, the Attorney

13   General may in his discretion suspend deportation of such

14   alien, or permit such alien to depart the United States to any

15   country of his choice, in lieu of deportation. If the

16   deportation of any alien is suspended under the provisions

17   of this subsection, a complete and detailed statement of the

18   facts and pertinent provisions of law in the case shall be

19   reported to the Congress with the reasons for such suspen-

20   sion. Such reports shall be submitted on the first and fif-

21   teenth day of each calendar month in which Congress is

22   in session. If during the session of the Congress at which

23   a case is reported, or, if a case is reported less than thirty

24   days prior to the close of the session, then during the next

25   session of Congress, either the Senate or the House of Rep-

1   resentatives passes a resolution stating in substance that it

2   does not favor the suspension of such deportation, the At-

3   torney General shall thereupon deport such alien or authorize

4   the alien's voluntary departure at his own expense under the

5   order of deportation in the manner provided by law.  If

6   neither the Senate nor the House of Representatives shall,

7   within the time above specified, pass such a resolution, the

8   Attorney General shall cancel deportation proceedings.  The

9   provisions of this subsection relating to the granting of

10  suspension of deportation shall not be applicable to any alien

11  who is a native of any country contiguous to the United

12  States or of any island adjacent to the United States, unless

13  he establishes to the satisfaction of the Attorney General

14  that he is ineligible to obtain a nonquota immigrant visa.

15      (c) Upon application by any alien who is found by

16  the Attorney General to meet the requirements of clause

17  (4) or (5) of subsection (a) of this section, the At-

18  torney General may in his discretion suspend deportation

19  of such alien, or permit such alien to depart the United

20  States to any country of his choice in lieu of deporta-

21  tion.  If the deportation of any alien is suspended under

22  the provisions of this subsection, a complete and detailed

23  statement of the facts and pertinent provisions of law

24  in the case shall be reported to the Congress with the

25  reasons for such suspension.  Such reports shall be sub-

**122**

1    mitted on the first and fifteenth day of each calendar month

2    in which Congress is in session.  If during the session of

3    the Congress at which a case is reported, or, if a case is

4    reported less than thirty days prior to the close of the ses-

5    sion, then during the next session of Congress, the Congress

6    passes a concurrent resolution stating in substance that it

7    favors the suspension of such deportation, the Attorney Gen-

8    eral shall cancel deportation proceedings.  If within the time

9    above specified the Congress does not pass such a concurrent

10   resolution, or if the Congress passes a concurrent resolu-

11   tion stating in substance that it does not favor the suspen-

12   sion of the deportation of such alien, the Attorney General

13   shall thereupon deport such alien in the manner provided

14   by law.

15        (d)  Upon the cancellation of deportation in the case

16   of any alien under this section, the Attorney General shall

17   record the alien's lawful admission for permanent residence

18   as of the date the cancellation of deportation of such alien is

19   made, and the Secretary of State shall, if the alien was a quota

20   immigrant at the time of entry and was not charged to the

21   appropriate quota, reduce by one the immigration quota of

22   the quota area to which the alien is chargeable under

23   section 202 for the fiscal year then current at the time of

24   cancellation, or the next following year in which a quota

123

1   is available.  No quota shall be so reduced by more than

2   50 per centum in any fiscal year.

3   ADJUSTMENT OF STATUS OF NONIMMIGRANT TO THAT OF

4         PERSON ADMITTED FOR PERMANENT RESIDENCE

5        SEC. 245.  (a)  The status of an alien lawfully admitted

6   to the United States as a nonimmigrant and who is con-

7   tinuing to maintain that status may be adjusted by the

8   Attorney General in his discretion, under such regulations as

9   he may prescribe, to that of an alien lawfully admitted for

10  permanent residence, if  (1)  the alien makes application

11  for adjustment,  (2)  the alien is admissible to the United

12  States for permanent residence under this Act,  (3)  a quota

13  or nonquota immigrant visa was immediately available to him

14  had he applied for such visa when he received his non-

15  immigrant visa,  (4)  a quota or nonquota immigrant visa

16  was immediately available to him at the time of his applica-

17  tion for adjustment, and  (5)  a quota or nonquota immigrant

18  visa is immediately available to him at the time his applica-

19  tion is approved.

20       (b)  Upon the approval of an application for adjust-

21  ment made under subsection  (a), the Attorney General shall

22  record the alien's lawful admission for permanent residence

23  as of the date of the order of the Attorney General approv-

24  ing the application for the adjustment of status is made, and

124

1    the Secretary of State shall reduce by one the immigration

2    quota of the quota area to which the alien is chargeable

3    under section 202 for the fiscal year current at the time such

4    adjustment is made.   The provisions of this section shall not

5    be applicable to any alien who is a native of a country con-

6    tiguous to the United States or of any island adjacent to the

7    United States.

8                    RESCISSION OF ADJUSTMENT OF STATUS

9        SEC. 246. (a) If, at any time within five years after the

10   status of an alien has been adjusted under the provisions of

11   sections 244, 245, or 249 of this Act, or any other

12   provision of law, to that of an alien lawfully admitted for

13   permanent residence, it shall appear to the satisfaction of the

14   Attorney General that the alien was not in fact eligible for

15   such adjustment of status, the Attorney General shall

16   rescind the action taken granting an adjustment of status

17   to such alien and cancelling deportation in the case of such

18   alien if that occurred, and the alien shall thereupon be subject

19   to all provisions of this Act to the same extent as if the

20   adjustment of status had not been made.

21       (b) Any person who has become a naturalized citizen

22   of the United States upon the basis of a record of a lawful

23   admission for permanent residence, created as a result of an

24   adjustment of status for which such person was not in fact

25   eligible, and which is subsequently rescinded under sub-

125

1   section (a) of this section, shall be subject to the provisions

2   of section 340 of this Act as a person whose naturalization

3   was procured by concealment of a material fact or by willful

4   misrepresentation.

5       ADJUSTMENT OF STATUS OF CERTAIN RESIDENT

6           ALIENS TO NONIMMIGRANT STATUS

7       SEC. 247. (a) The status of an alien lawfully admitted

8   for permanent residence shall be adjusted by the Attorney

9   General, under such regulations as he may prescribe, to that

10   of a nonimmigrant under paragraph (14) (A), (14) (E),

11   or (14) (G) of section 101 (a), if such alien had at the

12   time of entry or subsequently acquires an occupational

13   status which would, if he were seeking admission to the

14   United States, entitle him to a nonimmigrant status under

15   such sections.   As of the date of the Attorney General's

16   order making such adjustment of status, the Attorney Gen-

17   eral shall cancel the record of the alien's admission for per-

18   manent residence, and the immigrant status of such alien

19   shall thereby be terminated.

20       (b) The adjustment of status required by subsection

21   (a) shall not be applicable in the case of any alien who

22   requests that he be permitted to retain his status as an im-

23   migrant and who, in such form as the Attorney General

24   may require, executes and files with the Attorney General

25   a written waiver of all rights, privileges, exemptions, and

126

1   .immunities under any law or any executive order which

2   would otherwise accrue to him because of the acquisition

3   of an occupational status entitling him to a nonimmigrant

4   status under paragraph (14) (A), (14) (E), or (14)

5   (G) of section 101 (a).

6       CHANGE OF NONIMMIGRANT CLASSIFICATION

7       SEC. 248. The Attorney General may, in his discretion

8   and under such conditions as he may prescribe, authorize a

9   change from any nonimmigrant classification to any other

10  nonimmigrant classification in the case of any alien lawfully

11  admitted to the United States as a nonimmigrant who is con-

12  tinuing to maintain that status, except an alien classified as

13  a nonimmigrant under paragraph (14) (C) or (14)

14  (D) of section 101 (a).

15  RECORD OF ADMISSION FOR PERMANENT RESIDENCE IN

16      THE CASE OF CERTAIN ALIENS WHO ENTERED THE

17      UNITED STATES PRIOR TO JULY 1, 1924

18      SEC. 249. (a) A record of lawful admission for per-

19  manent residence may, in the discretion of the Attorney

20  General and under such regulations as he may prescribe,

21  be made in the case of any alien, if no such record is other-

22  wise available and such alien shall satisfy the Attorney

23  General that he—

127

1    (1) entered the United States prior to July 1,

2    1924;

3    (2) has had his residence in the United States

4    continuously since such entry;

5    (3) is a person of good moral character;

6    (4) is not subject to deportation; and

7    (5) is not ineligible to citizenship.

8    (b) An alien in respect of whom a record of admis-

9    sion has been made as authorized by subsection (a), shall

10   be deemed to have been lawfully admitted to the United

11   States for permanent residence as of the date of his entry

12   prior to July 1, 1924.

13   REMOVAL OF ALIENS WHO HAVE FALLEN INTO DISTRESS

14   SEC. 250. The Attorney General may remove from

15   the United States any alien who falls into distress or

16   who needs public aid from causes arising subsequent to

17   his entry, and is desirous of being so removed, to the

18   native country of such alien, or to the country from which

19   he came, or to the country of which he is a citizen or sub-

20   ject, or to any other country to which he wishes to go and

21   which will receive him at the expense of the appropriation

22   for the enforcement of this Act.  Any alien so removed

23   shall be ineligible to apply for or receive a visa or other

1 documentation for readmission to the United States except

2 with the prior approval of the Attorney General.

3 CHAPTER 6—SPECIAL PROVISIONS RELATING TO ALIEN

4 CREWMEN

5 LISTS OF ALIEN CREWMEN; REPORTS OF ILLEGAL LANDINGS

6 SEC. 251. (a) Upon arrival of any vessel or aircraft in

7 the United States from any place outside the United States

8 it shall be the duty of the owner, agent, consignee, master,

9 or commanding officer thereof to deliver to an immigration

10 officer at the port of arrival (1) a complete, true, and cor-

11 rect list containing the names of all aliens employed on such

12 vessel or aircraft, the positions they respectively hold in the

13 crew of the vessel or aircraft, when and where they were

14 respectively shipped or engaged, and those to be paid off

15 or discharged in the port of arrival; or (2) in the discretion

16 of the Attorney General, such a list containing so much of

17 such information, or such additional or supplemental infor-

18 mation, as the Attorney General shall by regulations pre-

19 scribe.  In the case of a vessel engaged solely in traffic on

20 the Great Lakes, Saint Lawrence River, and connecting

21 waterways, such lists shall be furnished at such times as the

22 Attorney General may require.

23 (b) It shall be the duty of any owner, agent, consignee,

24 master, or commanding officer of any vessel or aircraft to

25 report to an immigration officer, in writing, as soon as dis-

129

1   covered, all cases in which any alien crewman has illegally

2   landed in the United States from the vessel or aircraft,

3   together with a description of such alien and any information

4   likely to lead to his apprehension.

5       (c) Before the departure of any vessel or aircraft from

6   any port in the United States, it shall be the duty of the

7   owner, agent, consignee, master, or commanding officer

8   thereof, to deliver to an immigration officer a list containing

9   the names of all alien employees who were not employed

10  thereon at the time of the arrival at that port but who will

11  leave such port thereon at the time of the departure of such

12  vessel or aircraft and the names of those, if any, who have

13  been paid off or discharged, and of those, if any, who have

14  deserted or landed at that port, and such further information

15  as the Attorney General may require.

16      (d) In case any owner, agent, consignee, master, or

17  commanding officer shall fail to deliver complete, true, and

18  correct lists or reports of aliens, or to report cases of deser-

19  tion or landing, as required by subsections (a), (b), and

20  (c), such owner, agent, consignee, master, or commanding

21  officer, shall, if required by the Attorney General, pay to

22  the collector of customs of any customs district in which

23  the vessel or aircraft may at any time be found the sum of

24  $10 for each alien concerning whom such lists are not de-

130

1  livered or such reports are not made as required in the pre-
2  ceding subsections.   No such vessel or aircraft shall be
3  granted clearance from any port at which it arrives pending
4  the determination of the question of the liability to the pay-
5  ment of such fine, and if such fine is imposed, while it re-
6  mains unpaid.   No such fine shall be remitted or refunded.
7  Clearance may be granted prior to the determination of such
8  question upon deposit of a bond or a sum sufficient to cover
9  such fine.

10  (e) The Attorney General is authorized to prescribe by
11  regulations the circumstances under which a vessel or air-
12  craft shall be deemed to be arriving in, or departing from,
13  the United States or any port thereof within the meaning of
14  any provision of this chapter.

15  PERMITS TO LAND TEMPORARILY

16  SEC. 252. (a) No alien crewman shall be permitted
17  to land temporarily in the United States except as provided
18  in this section, section 212 (d) (5), and section 253.   If
19  an immigration officer finds upon examination that an alien
20  crewman is a nonimmigrant under paragraph (14) (D)
21  of section 101 (a) and is otherwise admissible, he may, in
22  his discretion, grant the crewman a permit to land tem-
23  porarily pursuant to regulations prescribed by the Attorney
24  General, for a period of time not to exceed—

25  (1) the period of time (not exceeding twenty-

131

1    nine days) during which the vessel or aircraft on which

2    he arrived remains in port, if the immigration officer

3    is satisfied that the crewman intends to depart on the

4    vessel or aircraft on which he arrived; or

5         (2) twenty-nine days, if the immigration officer

6    is satisfied that the crewman intends to depart, within

7    the period for which he is permitted to land, on a vessel

8    or aircraft other than the one on which he arrived.

9    (b)  Pursuant to regulations prescribed by the Attorney

10   General, any immigration officer may, upon the basis of

11   evidence satisfactory to such officer that an alien is not a

12   bona fide crewman, or does not intend to depart on the

13   vessel or aircraft which brought him, revoke the permit

14   to land which was granted such crewman under the provisions

15   of subsection  (a)  (1), take such crewman into custody,

16   and require the master or commanding officer of the vessel

17   or aircraft on which the crewman arrived to receive and

18   detain him on board such vessel or aircraft, if practicable,

19   and such crewman shall be deported from the United States

20   at the expense of the transportation line which brought him

21   to the United States.  Until such alien is so deported, any

22   expenses of his detention shall be borne by such transportation

23   company.  Nothing in this section shall be construed to

24   require the procedure prescribed in section 242 of this Act

25   to cases falling within the provisions of this subsection.

132

1    (c) Any alien crewman who willfully remains in the

2    United States in excess of the number of days allowed in any

3    permit issued under subsection (a) shall be guilty of a

4    misdemeanor, and upon conviction thereof shall be fined not

5    more than $500 or shall be imprisoned for not more than

6    six months, or both.

7    HOSPITAL TREATMENT OF ALIEN CREWMEN AFFLICTED

8                    WITH CERTAIN DISEASES

9    SEC. 253. An alien crewman, including an alien crew-

10   man ineligible for a permit to land under section 252 (a),

11   who is found on arrival in a port of the United States to be

12   afflicted with any of the disabilities or diseases mentioned in

13   section 255, shall be placed in a hospital designated by the

14   immigration officer in charge at the port of arrival and

15   treated, all expenses connected therewith, including burial

16   in the event of death, to be borne by the owner, agent, con-

17   signee, commanding officer, or master of the vessel or air-

18   craft, and not to be deducted from the crewman's wages.

19   No such vessel or aircraft shall be granted clearance until

20   such expenses are paid, or their payment appropriately

21   guaranteed, and the collector of customs is so notified by the

22   immigration officer in charge.  An alien crewman suspected

23   of being afflicted with any such disability or disease may

24   be removed from the vessel or aircraft on which he arrived

25   to an immigration station, or other appropriate place, for

1   such observation as will enable the examining surgeons to

2   determine definitely whether or not he is so afflicted, all

3   expenses connected therewith to be borne in the manner

4   hereinbefore prescribed.   In cases in which it appears to the

5   satisfaction of the immigration officer in charge that it will

6   not be possible within a reasonable time to effect a cure, the

7   return of the alien crewman shall be enforced on, or at the

8   expense of, the transportation line on which he came, upon

9   such conditions as the Attorney General shall prescribe,

10  to insure that the alien shall be properly cared for and pro-

11  tected, and that the spread of contagion shall be guarded

12  against.

13              CONTROL OF ALIEN CREWMEN

14      SEC. 254. (a) The owner, agent, consignee, charterer,

15  master, or commanding officer of any vessel or aircraft arriv-

16  ing in the United States from any place outside thereof who

17  fails (1) to detain on board the vessel, or in the case of an

18  aircraft to detain at a place specified by an immigration

19  officer at the expense of the airline, any alien crewman em-

20  ployed thereon until an immigration officer has completely

21  inspected such alien crewman, including a physical examina-

22  tion by the medical examiner, or (2) to detain any alien

23  crewman on board the vessel, or in the case of an aircraft at

24  a place specified by an immigration officer at the expense

25  of the airline, after such inspection unless a permit to land

134

1   temporarily has been granted such alien crewman under

2   section 252 or unless an alien crewman has been permitted

3   to land temporarily under section 212 (d) (5) or 253 for

4   medical or hospital treatment, or (3) to deport such alien

5   crewman if required to do so by an immigration officer,

6   whether such deportation requirement is imposed before or

7   after the crewman is permitted to land temporarily under

8   section 212 (d) (5), 252, or 253, shall pay to the collector

9   of customs of the customs district in which the port of

10  arrival is located or in which the failure to comply with the

11  orders of the officer occurs the sum of $1,000 for each alien

12  crewman in respect of whom any such failure occurs.   No

13  such vessel or aircraft shall be granted clearance pending the

14  determination of the liability to the payment of such fine,

15  or while the fine remains unpaid, except that clearance may

16  be granted prior to the determination of such question upon

17  the deposit of a sum sufficient to cover such fine, or of a

18  bond with sufficient surety to secure the payment thereof

19  approved by the collector of customs.   The Attorney General

20  may, upon application in writing therefor, mitigate such

21  penalty to not less than $200 for each alien crewman in

22  respect of whom such failure occurs, upon such terms as he

23  shall think proper.

24       (b) Proof that an alien crewman did not appear upon

25  the outgoing manifest of the vessel or aircraft on which he

1    arrived in the United States from any place outside thereof,

2    or that he was reported by the master or commanding officer

3    of such vessel or aircraft as a deserter, shall be prima facie

4    evidence of a failure to detain or deport such alien crewman.

5         (c) If the Attorney General finds that deportation of

6    an alien crewman under this section on the vessel or aircraft

7    on which he arrived is impracticable or impossible, or would

8    cause undue hardship to such alien crewman, he may cause

9    the alien crewman to be deported from the port of arrival

10   or any other port on another vessel or aircraft of the same

11   transportation line, unless the Attorney General finds this

12   to be impracticable.   All expenses incurred in connection

13   with such deportation, including expenses incurred in trans-

14   ferring an alien crewman from one place in the United States

15   to another under such conditions and safeguards as the At-

16   torney General shall impose, shall be paid by the vessel or

17   aircraft on which the alien arrived in the United States.

18   The vessel or aircraft on which the alien arrived shall not

19   be granted clearance until such expenses have been paid

20   or their payment guaranteed to the satisfaction of the

21   Attorney General.   An alien crewman who is transferred

22   within the United States in accordance with this subsection

23   shall not be regarded as having been landed in the United

24   States.

EMPLOYMENT ON PASSENGER VESSELS OF ALIENS

AFFLICTED WITH CERTAIN DISABILITIES

SEC. 255. It shall be unlawful for any vessel or aircraft carrying passengers between a port of the United States and a port outside thereof to have employed on board upon arrival in the United States any alien afflicted with idiocy, imbecility, insanity, epilepsy, tuberculosis in any form, or a loathsome disease or a dangerous contagious disease. If it appears to the satisfaction of the Attorney General, from an examination made by a medical officer of the United States Public Health Service, and is so certified by such officer, that any such alien was so afflicted at the time he was shipped or engaged and taken on board such vessel or aircraft and that the existence of such affliction might have been detected by means of a competent medical examination at such time, the owner, commanding officer, agent, consignee, or master thereof shall pay for each alien so afflicted to the collector of customs of the customs district in which the port of arrival is located the sum of $50. No vessel or aircraft shall be granted clearance pending the determination of the question of the liability to the payment of such sums, or while such sums remain unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of an amount sufficient to cover such sums or of a bond approved by the collector of customs with

137

1 sufficient surety to secure the payment thereof. Any such

2 fine may, in the discretion of the Attorney General be

3 mitigated or remitted.

4 DISCHARGE OF ALIEN CREWMEN

5 SEC. 256. It shall be unlawful for any person, includ-

6 ing the owner, agent, consignee, charterer, master, or com-

7 manding officer of any vessel or aircraft, to pay off or dis-

8 charge any alien crewman employed on board a vessel or

9 aircraft arriving in the United States without first having ob-

10 tained the consent of the Attorney General. If it shall appear

11 to the satisfaction of the Attorney General that any alien

12 crewman has been paid off or discharged in the United States

13 in violation of the provisions of this section, such owner,

14 agent, consignee, charterer, master, commanding officer,

15 or other person, shall pay to the collector of customs of

16 the customs district in which the violation occurred the

17 sum of $1,000 for each such violation. No vessel or air-

18 craft shall be granted clearance pending the determina-

19 tion of the question of the liability to the payment of such

20 sums, or while such sums remain unpaid, except that clear-

21 ance may be granted prior to the determination of such ques-

22 tion upon the deposit of an amount sufficient to cover such

23 sums, or of a bond approved by the collector of customs

24 with sufficient surety to secure the payment thereof. Such

25 fine may, in the discretion of the Attorney General, be

1 mitigated to not less than $500 for each violation, upon

2 such terms as he shall think proper.

3 BRINGING ALIEN CREWMEN INTO UNITED STATES WITH

4 INTENT TO EVADE IMMIGRATION LAWS

5 SEC. 257. Any person, including the owner, agent, con-

6 signee, master, or commanding officer of any vessel or aircraft

7 arriving in the United States from any place outside thereof,

8 who shall knowingly sign on the vessel's articles, or bring to

9 the United States as one of the crew of such vessel or aircraft,

10 any alien, with intent to permit or assist such alien to enter or

11 land in the United States in violation of law, or who shall

12 falsely and knowingly represent to a consular officer at the

13 time of application for visa, or to the immigration officer at

14 the port of arrival in the United States, that such alien is a

15 bona fide member of the crew employed in any capacity

16 regularly required for normal operation and services aboard

17 such vessel or aircraft, shall be liable to a penalty not exceed-

18 ing $5,000 for each such violation, for which sum such

19 vessel or aircraft shall be liable and may be seized and

20 proceeded against by way of libel in any district court of

21 the United States having jurisdiction of the offense.

139

1   CHAPTER 7—REGISTRATION OF ALIENS

2   ALIENS SEEKING ENTRY INTO THE UNITED STATES

3   SEC. 261. No visa shall be issued to any alien seeking to

4   enter the United States unless such alien has been reg-

5   istered and fingerprinted in accordance with section 221

6   (b).

7   REGISTRATION OF ALIENS IN THE UNITED STATES

8   SEC. 262. (a) Except as otherwise provided in section

9   221 (b), it shall be the duty of every alien now or hereafter

10   in the United States, who (1) is fourteen years of age

11   or older, (2) has not been registered and fingerprinted

12   under section 221 (b) of this Act or section 30 or 31

13   of the Alien Registration Act, 1940, and (3) remains in

14   the United States for thirty days or longer, to apply for

15   registration and to be fingerprinted before the expiration of

16   such thirty days.

17   (b) It shall be the duty of every parent or legal

18   guardian of any alien now or hereafter in the United States,

19   who (1) is less than fourteen years of age, (2) has not

20   been registered under section 221 (b) of this Act or section

21   30 or 31 of the Alien Registration Act, 1940, and (3)

140

1  remains in the United States for thirty days or longer, to

2  apply for the registration of such alien before the expiration

3  of such thirty days. Whenever any alien attains his four-

4  teenth birthday in the United States he shall, within thirty

5  days thereafter, apply in person for registration and to be

6  fingerprinted.

7  PROVISIONS GOVERNING REGISTRATION OF SPECIAL GROUPS

8      SEC. 263. Notwithstanding the provisions of sections

9  261 and 262, the Attorney General is authorized to prescribe

10  special regulations and forms for the registration and finger-

11  printing, except where these requirements have been waived

12  under section 221 (b) of this Act, of (1) alien crewmen,

13  (2)  holders  of  border-crossing  identification  cards,

14  (3) aliens confined in institutions within the United States,

15  (4) aliens under order of deportation, and (5) aliens of

16  any other class not lawfully admitted to the United States

17  for permanent residence.

18                    FORMS AND PROCEDURE

19      SEC. 264. (a) The Attorney General and the Secre-

20  tary of State jointly are authorized and directed to prepare

21  forms for the registration and fingerprinting of aliens under

22  section 261 of this title, and the Attorney General is author-

23  ized and directed to prepare forms for the registration and

24  fingerprinting of aliens under section 262 of this title. Such

25  forms shall contain inquiries with respect to (1) the date

1   and place of entry of the alien into the United States;

2   (2) activities in which he has been and intends to be en-

3   gaged; (3) the length of time he expects to remain in the

4   United States; (4) the criminal record, if any, of such alien;

5   and (5) such additional matters as may be prescribed.

6      (b) All registration and fingerprint records made under

7   the provisions of this title shall be confidential, and shall be

8   made available only to such persons or agencies as may be

9   designated by the Attorney General.

10      (c) Every person required to apply for the registration

11   of himself or another under this title shall submit under

12   oath the information required for such registration. Any

13   person authorized under regulations issued by the Attorney

14   General to register aliens under this title shall be authorized

15   to administer oaths for such purpose.

16      (d) Every alien in the United States who has been

17   registered and fingerprinted under the provisions of the Alien

18   Registration Act, 1940, or under the provisions of this Act

19   shall be issued a certificate of alien registration or an alien

20   registration receipt card in such form and manner and at

21   such time as shall be prescribed under regulations issued

22   by the Attorney General.

23      (e) Every alien shall at all times carry with him and

24   have in his personal possession any certificate of alien regis-

25   tration or alien registration receipt card issued pursuant to

142

1  subsection (d). Any alien who fails to comply with the

2  provisions of this subsection shall be guilty of a misdemeanor

3  and shall upon conviction for each offense be fined not to

4  exceed $100 or be imprisoned not more than thirty days,

5  or both.

6  NOTICES OF CHANGE OF ADDRESS

7  SEC. 265. Every alien required to be registered under

8  this title, or who was required to be registered under the

9  Alien Registration Act, 1940, who is within the United

10  States on January 1, 1952, or on January 1st of each

11  succeeding year shall, within ten days following such dates,

12  notify the Attorney General in writing of his current

13  address and furnish such additional information as may

14  by regulations be required by the Attorney General. Any

15  such alien shall likewise notify the Attorney General in

16  writing of each change of address and new address within

17  five days from the date of such change. Any such alien who

18  is temporarily absent from the United States on January 1,

19  1952, or any succeeding year shall furnish his current

20  address and other information as required by this section

21  within ten days after his return. Any such alien in the

22  United States in a lawful temporary residence status shall

23  in like manner also notify the Attorney General in writing

24  of his address at the expiration of each three-month period

25  during which he remains in the United States, regardless of

143

1    whether there has been any change of address.  In the case

2    of an alien for whom a parent or legal guardian is required to

3    apply for registration, the notice required by this section

4    shall be given by such parent or legal guardian.

5                  **PENALTIES**

6    SEC. 266.  (a)  Any alien required to apply for regis-

7    tration and to be fingerprinted in the United States who

8    willfully fails or refuses to make such application or to be

9    fingerprinted, and any parent or legal guardian required to

10    apply for the registration of any alien who willfully fails or

11    refuses to file application for the registration of such alien

12    shall, upon conviction thereof, be fined not to exceed $1,000

13    or be imprisoned not more than six months, or both.

14    (b)  Any alien or any parent or legal guardian in the

    United States of any alien who fails to give written notice to

16    the Attorney General, as required by section 265 of this title,

17    shall, upon conviction thereof, be fined not to exceed $200 or

18    be imprisoned not more than thirty days, or both.  Irre-

19    spective of whether an alien is convicted and punished as

20    herein provided, any alien who fails to give written notice

21    to the Attorney General, as required by section 265, shall

22    be taken into custody and deported in the manner provided

23    by chapter 5 of this title, unless such alien establishes to the

24    satisfaction of the Attorney General that such failure was

25    reasonably excusable or was not willful.

144

1    (c) Any alien or any parent or legal guardian of any

2    alien, who files an application for registration containing

3    statements known by him to be false, or who procures or

4    attempts to procure registration of himself or another person

5    through fraud, shall, upon conviction thereof, be fined not to

6    exceed $1,000, or be imprisoned not more than six months,

7    or both; and any alien so convicted shall, upon the warrant

8    of the Attorney General, be taken into custody and be

9    deported in the manner provided in chapter 5 of this title.

10   (d) Any person who with unlawful intent photographs,

11   prints, or in any other manner makes, or executes, any en-

12   graving, photograph, print, or impression in the likeness of

13   any certificate of alien registration or an alien registration

14   receipt card or any colorable imitation thereof, except when

15   and as authorized under such rules and regulations as may

16   be prescribed by the Attorney General, shall upon convic-

17   tion be fined not to exceed $5,000 or be imprisoned not

18   more than five years, or both.

19   CHAPTER 8—GENERAL PENALTY PROVISIONS

20   PREVENTION OF UNAUTHORIZED LANDING OF ALIENS

21   SEC. 271. (a) It shall be the duty of every person,

22   including the owners, masters, officers, and agents of vessels,

23   aircraft, transportation lines, or international bridges or toll

24   roads, other than transportation lines which may enter into a

25   contract as provided in section 238, bringing an alien to, or

1  providing a means for an alien to come to, the United
2  States, including an alien crewman whose case is not covered
3  by section 254 (a), to prevent the landing of such alien
4  in the United States at a port of entry other than as desig-
5  nated by the Attorney General or at any time or place other
6  than as designated by the immigration officers.  Any such
7  person, owner, master, officer, or agent who fails to comply
8  with the foregoing requirements shall be liable to a penalty
9  to be imposed by the Attorney General of not less than
10  $200 nor more than $1,000, which shall be a lien upon the
11  vessel or aircraft whose owner, master, officer, or agent
12  violates the provisions of this section, and such vessel or air-
13  craft may be libeled therefor in the appropriate United
14  States court.

15      (b) Proof that the alien failed to present himself at the
16  time and place designated by the immigration officers shall
17  be prima facie evidence that such alien has landed in the
18  United States at a time or place other than as designated
19  by the immigration officers.

20      BRINGING IN ALIENS SUBJECT TO DISABILITY OR
21              AFFLICTED WITH DISEASE

22      SEC. 272. (a) Any person who shall bring to the
23  United States an alien who is (1) an idiot, (2) insane,
24  (3) an imbecile, (4) feeble-minded, (5) an epileptic,

S. 716——10

146

1   (6) afflicted with psychopathic personality, (7) afflicted

2   with chronic alcoholism, (8) afflicted with tuberculo-

3   sis in any form, (9) afflicted with a loathsome disease or a

4   dangerous contagious disease, (10) a narcotic drug addict,

5   or (11) an homosexual or sex pervert, unless the alien was

6   in possession of an unexpired immigrant or nonimmigrant visa

7   or other documentation in lieu thereof issued by a consular

8   officer and such person shall establish to the satisfaction of the

9   Attorney General that the existence of such disease or dis-

10  ability could not have been detected by the exercise of due

11  diligence on his part prior to the alien's embarkation, shall

12  pay to the collector of customs of the customs district in

13  which the place of arrival is located for each and every alien

14  so afflicted, the sum of $1,000 and in addition a sum equal

15  to that paid by such alien for his transportation from the

16  initial port of departure, as indicated by his ticket, to the

17  place of arrival, such latter sum to be delivered by the col-

18  lector of customs to the alien on whose account the assess-

19  ment is made.

20      (b) Any person who shall bring to the United States

21  an alien afflicted with any mental defect other than those

22  enumerated in subsection (a) of this section, or any physical

23  defect of a nature which may affect his ability to earn a

24  living, as provided in section 212 (a) (8), unless the

147

1  alien was in possession of an unexpired immigrant or non-

2  immigrant visa or other documentation in lieu thereof issued

3  by a consular officer and such person shall establish to the

4  satisfaction of the Attorney General that the existence of

5  such mental or physical defect could not have been detected

6  by the exercise of due diligence on his part prior to the

7  alien's embarkation, shall pay to the collector of customs

8  of the customs district in which the place of arrival

9  is located, for each and every alien so afflicted, the sum

10  of $250, and, except in any case in which any such alien

11  is admitted, or permitted to land temporarily, in addition

12  a sum equal to that paid by such alien for his transportation

13  from the initial point of departure, as indicated by his ticket,

14  to the place of arrival, such latter sum to be delivered by the

15  collector of customs to the alien on whose account the

16  assessment is made.

17      (c) If a fine is imposed under subsection (a) or

18  (b) of this section for the bringing of an alien to the

19  United States, and if such alien is accompanied by another

20  alien who is excluded from admission under section 237 (e),

21  the person liable for such fine shall pay to the collector of

22  customs, in addition to such fine but as part thereof, a sum

23  equal to that paid by such accompanying alien for his trans-

24  portation from his initial point of departure as indicated by

1 his ticket, to the place of arrival, such sum to be delivered
2 by the collector of customs to the accompanying alien when
3 deported.

4    (d) No vessel or aircraft shall be granted clearance
5 papers pending determination of the question of liability to
6 the payment of any fine under this section, or while the fines
7 remain unpaid, nor shall such fines be remitted or refunded;
8 but clearance may be granted prior to the determination of
9 such question upon the deposit of a sum sufficient to cover
10 such fines or of a bond with sufficient surety to secure the
11 payment thereof, approved by the collector of customs.

12    (e) Nothing contained in this section shall be construed
13 to subject transportation companies to a fine for bringing
14 to ports of entry in the United States aliens who are
15 entitled by law to exemption from the excluding provisions
16 of section 212 (a).

17    (f) As used in this section, the term "person" means
18 the owner, master, agent, commanding officer, charterer,
19 or consignee of any vessel or aircraft.

20 UNLAWFUL BRINGING OF ALIENS INTO UNITED STATES
21    SEC. 273. (a) It shall be unlawful for any person,
22 including any transportation company, or the owner, master,
23 commanding officer, agent, charterer, or consignee of any
24 vessel or aircraft, to bring to the United States from any
25 place outside thereof any alien who does not have an un-

1  expired visa, if a visa was required under this Act or regula-

2  tions issued thereunder.

3      (b) If it appears to the satisfaction of the Attorney

4  General that any alien has been so brought, such person, or

5  transportation company, or the master, commanding officer,

6  agent, owner, charterer, or consignee of any such vessel or

7  aircraft, shall pay to the collector of customs of the customs

8  district in which the port of arrival is located the sum of

9  $1,000 for each alien so brought and, except in the case

10  of any such alien who is admitted, or permitted to land tem-

11  porarily, in addition, a sum equal to that paid by such

12  alien for his transportation from the initial point of departure,

13  indicated in his ticket, to the port of arrival, such latter sum

14  to be delivered by the collector of customs to the alien on

15  whose account the assessment is made.   No vessel or aircraft

16  shall be granted clearance pending the determination of

17  the liability to the payment of such sums or while such

18  sums remain unpaid, except that clearance may be granted

19  prior to the determination of such question upon the deposit

20  of an amount sufficient to cover such sums, or of a bond

21  with sufficient surety to secure the payment thereof approved

22  by the collector of customs.

23      (c) Such sums shall not be remitted or refunded, unless

24  it appears to the satisfaction of the Attorney General that such

25  person, and the owner, master, commanding officer, agent,

150

1   charterer, and consignee of the vessel or aircraft, prior to

2   the departure of the vessel or aircraft from the last port

3   outside the United States, did not know, and could not have

4   ascertained by the exercise of reasonable diligence, that the

5   individual transported was an alien and that a visa was

6   required.

7       (d) The owner, charterer, agent, consignee, command-

8   ing officer, or master of any vessel or aircraft arriving at the

9   United States from any place outside thereof who fails to

10  discover and present any alien stowaway on board to an

11  immigration officer for inspection or who fails to detain on

12  board or such other place as may be designated by an immi-

13  gration officer any alien stowaway until such stowaway has

14  been inspected by an immigration officer, or who fails to

15  detain such stowaway on board or such other designated

16  place after inspection if ordered to do so by an immigration

17  officer, or who fails to deport such stowaway on the vessel

18  or aircraft on which he arrived or on another vessel or air-

19  craft at the expense of the vessel or aircraft on which he

20  arrived when required to do so by an immigration officer,

21  shall pay to the collector of customs of the customs district

22  in which the port of arrival is located the sum of $1,000 for

23  each alien stowaway, in respect of whom any such failure

24  occurs.  Pending final determination of liability for such fine,

25  no such vessel or aircraft shall be granted clearance, except

151

1   that clearance may be granted upon the deposit of a sum suf-

2   ficient to cover such fine, or of a bond with sufficient surety

3   to secure the payment thereof approved by the collector

4   of customs. The provisions of section 235 for detention

5   of aliens for examination before special inquiry officers

6   and the right of appeal provided for in section 236, shall

7   not apply to aliens who arrive as stowaways and no

8   such alien shall be permitted to land in the United States,

9   except temporarily for medical treatment, or pursuant to

10   such regulations as the Attorney General may prescribe for

11   the ultimate departure or removal or deportation of such

12   alien from the United States.

13      (e) The owner, charterer, agent, consignee, command-

14   ing officer, or master of any vessel or aircraft arriving in

15   the United States from any place outside thereof who dis-

16   covers and presents any alien stowaway on board to an

17   immigration officer for inspection shall pay to the collector

18   of customs of the customs district in which the port of

19   arrival is located the sum of $500 for each such alien

20   stowaway aboard such vessel or aircraft. Pending

21   final determination for liability to such fine, no such

22   vessel or aircraft shall be granted clearance while such

23   fine is unpaid, except that clearance may be granted upon

24   the deposit of a sum sufficient to cover such fine, or of a

25   bond with sufficient surety to secure the payment thereof

152

1 approved by the collector of customs.   No fines imposed

2 under the provisions of this subsection shall be subject to

3 refund, but the Attorney General may, upon application in

4 writing therefor, mitigate such penalty to not less than $200

5 for any such violation for which such penalty is imposed,

6 upon proof satisfactory to him that the presence of the alien

7 stowaway aboard the vessel or aircraft at the time of its em-

8 barkation from the last port outside the United States was not

9 known to and could not have been ascertained by the exercise

10 of reasonable diligence by the owner, charterer, agent, con-

11 signee, commanding officer, or master of the vessel or aircraft

12 aboard which such stowaway arrived in the United States.

13  BRINGING IN AND HARBORING CERTAIN ALIENS

14  SEC. 274. Any person, including the owner, operator,

15 pilot, master, commanding officer, agent, or consignee of

16 any means of transportation who—

17   (1) brings into or lands in the United States, by

18   any means of transportation or otherwise, or attempts,

19   by himself or through another, to bring into or land in

20   the United States, by any means of transportation or

21   otherwise; or

22   (2) conceals or harbors, or attempts to conceal or

23   harbor in any place, including any building, or any

24   means of transportation,

1  any alien, including an alien crewman, not duly admitted

2  by an immigration officer or not lawfully entitled to

3  enter or to reside within the United States under the

4  terms of this Act or any other law relating to the immi-

5  gration or expulsion of aliens, shall be guilty of a felony,

6  and upon conviction thereof shall be punished by a

7  fine not exceeding $2,000 and by imprisonment for a term

8  not exceeding five years for each alien in respect to whom

9  any violation of this section occurs.

10  ENTRY OF ALIEN AT IMPROPER TIME OR PLACE; MISREPRE-

11  SENTATION AND CONCEALMENT OF FACTS

12  SEC. 275. Any alien who (1) enters the United States

13  at any time or place other than as designated by immigration

14  officers, or (2) eludes examination or inspection by immi-

15  gration officers, or (3) obtains entry to the United States

16  by a willfully false or misleading representation or the will-

17  ful concealment of a material fact, shall, for the first com-

18  mission of any such offenses, be guilty of a misdemeanor and

19  upon conviction thereof be punished by imprisonment for not

20  more than six months, or by a fine of not more than $500, or

21  by both, and for a subsequent commission of any such

22  offenses shall be guilty of a felony and upon conviction

23  thereof shall     punished by imprisonment for not more

24  than two year    or by a fine of not more than $1,000, or both.

154

1    REENTRY OF DEPORTED ALIEN

2    SEC. 276. Any alien who—

3    (1) has been arrested and deported or excluded

4    and deported, and thereafter

5    (2) enters, attempts to enter, or is at any time

6    found in, the United States, unless prior to his reem-

7    barkation at a place outside the United States or his

8    application for admission from foreign contiguous terri-

9    tory, the Attorney General has expressly consented to

10    such alien's reapplying for admission, and, if such alien

11    is at any time found in the United States, unless he

12    shall establish that he has been lawfully admitted,

13   shall be guilty of a felony, and upon conviction thereof, be

14   punished by imprisonment of not more than two years or

15   by a fine of not more than $1,000, or both.

16   AIDING OR ASSISTING SUBVERSIVE ALIEN TO ENTER THE

17                   UNITED STATES

18   SEC. 277. Any person who knowingly aids or assists

19   any alien excludable under section 212 (a) (27), (28), or

20   (29) to enter the United States, or who connives or con-

21   spires with any person or persons to allow, procure, or permit

22   any such alien to enter the United States, shall be guilty of

23   a felony, and upon conviction thereof shall be punished by

155

1   a fine of not more than $5,000 or by imprisonment for not

2   more than five years, or both.

3   IMPORTATION OF ALIEN FOR IMMORAL PURPOSE

4   SEC. 278. The importation into the United States of

5   any alien for the purpose of prostitution, or for any other

6   immoral purpose, is hereby forbidden.   Whoever shall,

7   directly or indirectly, import, or attempt to import into

8   the United States any alien for the purpose of prostitution

9   or for any other immoral purpose, or shall hold or attempt

10   to hold any alien for any such purpose in pursuance of

11   such illegal importation, or shall keep, maintain, control,

12   support, employ, or harbor in any house or other place,

13   for the purpose of prostitution or for any other immoral

14   purpose, any alien, in pursuance of such illegal importation,

15   shall, in every such case, be guilty of a felony and upon

16   conviction thereof shall be punished by a fine of not more

17   than $5,000 and by imprisonment for a term of not more

18   than ten years.   The trial and punishment of offenses

19   under this section may be in any district to or into

20   which such alien is brought in pursuance of importation

21   by the person or persons accused, or in any district in which

22   a violation of any of the provisions of this section occurs.

23   In all prosecutions under this section, the testimony of a

156

1 husband or wife shall be admissible and competent evidence

2 against each other.

3 <div align="center">JURISDICTION OF DISTRICT COURTS</div>

4 SEC. 279. The district courts of the United States shall

5 have jurisdiction of all causes civil and criminal arising

6 under any of the provisions of this title. It shall be the

7 duty of the United States attorney of the proper district to

8 prosecute every such suit when brought by the United

9 States. Notwithstanding any other law, such prosecutions

10 or suits may be instituted at any place in the United States

11 at which the violation may occur or at which the person

12 charged with a violation under section 275 or 276 may be

13 apprehended. No suit or proceeding for a violation of any of

14 the provisions of this title shall be settled, compromised, or

15 discontinued without the consent of the court in which it is

16 pending and any such settlement, compromise, or discon-

17 tinuance shall be entered of record with the reasons therefor.

18 <div align="center">CHAPTER 9—MISCELLANEOUS</div>

19 <div align="center">SCHEDULE OF FEES</div>

20 SEC. 281. The following fees shall be charged:

21 (1) For the furnishing and verification of each

22 application for an immigrant visa (which shall include

23 the furnishing and verification of the duplicate), $5;

24 (2) For the issuance of each immigrant visa, $20;

25 (3) For the issuance of each reentry permit, $10;

157

1  (4) For the filing of each application for adjust-
2  ment of status under sections 245 and 248, for the
3  creation of a record of admission for permanent resi-
4  dence under section 249, or for suspension of deporta-
5  tion, $25;

6  (5) For the issuance of each extension of stay to
7  nonimmigrants, other than nonimmigrants described in
8  section 101 (a) (14) (F), $10;

9  (6) For filing with the Attorney General of each
10  petition under sections 204 (b), 205 (b), and 215 (c),
11  $10;

12  (7) For the filing of each application for adjust-
13  ment of status under section 4 of the Displaced Persons
14  Act of 1948, as amended, $25; and

15  (8) For approval of each application for, including
16  issuance of each certificate of, admission to practice as
17  attorney or representative before the Service, pursuant
18  to such regulations as may be prescribed by the Attorney
19  General, $10.

20  The fees for the furnishing and verification of applications
21  for visas by nonimmigrants of each foreign country and
22  for the issuance of visas to nonimmigrants of each foreign
23  country shall be prescribed by the Secretary of State in
24  amounts corresponding, as nearly as practicable, to the
25  total of all similar visa, entry, residence, or other fees charged

1 nationals of the United States by the foreign countries of

2 which such nonimmigrants are nationals or stateless residents.

3 PRINTING OF REENTRY PERMITS AND BLANK FORMS OF

4 MANIFESTS AND CREW LISTS

5 SEC. 282. (a) Reentry permits issued under section

6 223 shall be printed on distinctive safety paper and shall

7 be prepared and issued under regulations prescribed by the

8 Attorney General.

9 (b) The Public Printer is authorized to print for sale

10 to the public by the Superintendent of Documents, upon

11 prepayment, copies of blank forms of manifests and crew lists

12 and such other forms as may be prescribed and authorized by

13 the Attorney General to be sold pursuant to the provisions

14 of this title.

15 TRAVEL EXPENSES AND EXPENSE OF TRANSPORTING

16 REMAINS OF OFFICERS AND EMPLOYEES DYING OUT-

17 SIDE THE UNITED STATES

18 SEC. 283. When officers, inspectors, or other employees

19 of the Service are ordered to perform duties in a foreign

20 country, or transferred from one station to another, in the

21 United States or in a foreign country, they shall be allowed

22 their traveling expenses in accordance with such regulations

23 as the Attorney General may deem advisable, and they may

24 also be allowed, within the discretion and under written

25 orders of the Attorney General, the expenses incurred for

1   the transfer of their wives and dependent minor children,
2   their household effects and other personal property, includ-
3   ing the expenses for packing, crating, freight, un-
4   packing, temporary storage, and drayage thereof in
5   accordance with the Act of August 2, 1946 (60 Stat.
6   806; 5 U. S. C., sec. 73b–1). The expense of transport-
7   ing the remains of such officers, inspectors, or other employ-
8   ees who die while in, or in transit to, a foreign country in
9   the discharge of their official duties to their former homes
10   in this country for interment, and the ordinary and neces-
11   sary expenses of such interment and of preparation for
12   shipment, are authorized to be paid on the written order
13   of the Attorney General.

14   OVERTIME COMPENSATION FOR IMMIGRATION OFFICERS

15   Sec. 284. (a) The Attorney General shall fix a reason-
16   able rate of extra compensation for overtime services of
17   immigration officers and employees of the Service who may
18   be required to remain on duty between the hours of 5 o'clock
19   postmeridian and 8 o'clock antemeridian, or on Sundays or
20   holidays, to perform duties in connection with the examina-
21   tion and landing of passengers and crews of steamships,
22   trains, airplanes, or other vehicles, arriving in the United
23   States from a foreign port by water, land, or air, such rates
24   to be fixed on a basis of one-half day's additional pay for each
25   two hours or fraction thereof of at least one hour that the

160

1   overtime extends beyond 5 o'clock postmeridian (but not

2   to exceed two and one-half days' pay for the full period

3   from 5 o'clock postmeridian to 8 o'clock antemeridian) and

4   two additional days' pay for Sunday and holiday duty; in

5   those ports where the customary working hours are other

6   than those heretofore mentioned, the Attorney General is

7   vested with authority to regulate the hours of such employees

8   so as to agree with the prevailing working hours in said

9   ports, but nothing contained in this section shall be construed

10   in any manner to affect or alter the length of a working day

11   for such employees or the overtime pay herein fixed.

12   (b) The said extra compensation shall be paid by the

13   master, owner, agent, or consignee of such vessel or other

14   conveyance arriving in the United States from a foreign port

15   to the Attorney General, who shall pay the same to the

16   several immigration officers and employees entitled thereto

17   as provided in subsection (a). Such extra compensation

18   shall be paid if such officers or employees have been ordered

19   to report for duty and have so reported, whether the actual

20   inspection or examination of passengers or crew takes place

21   or not: *Provided*, That this subsection shall not apply to the

22   inspection at designated ports of entry of passengers arriving

23   by international ferries, bridges, or tunnels, or by aircraft,

24   railroad trains, or vessels on the Great Lakes and connecting

25   waterways, when operating on regular schedules.

161

1    (c) Moneys collected on or after July 1, 1941, as extra

2  compensation for overtime service of inspectors and em-

3  ployees of the Service pursuant to subsections (a) and (b)

4  shall be deposited in the Treasury of the United States to

5  the credit of the appropriation for the payment of salaries

6  and expenses of the Service, and the appropriation so credited

7  shall be available for the payment of such compensation.

8  DISPOSAL OF PRIVILEGES AT IMMIGRANT STATIONS

9    SEC. 285. (a) Subject to such conditions and limita-

10  tions as the Attorney General shall prescribe, all exclusive

11  privileges of exchanging money, transporting passengers or

12  baggage, keeping eating houses, or other like privileges in

13  connection with any United States immigrant station, shall

14  be disposed of to the lowest responsible and capable bidder

15  (other than an alien) in accordance with the provisions of

16  section 3709 of the Revised Statutes, as amended (41

17  U. S. C. 5), and for the use of Government property

18  in connection with the exercise of such exclusive privileges

19  a reasonable rental may be charged.  The feeding of aliens,

20  or the furnishing of any other necessary service in connection

21  with any United States immigrant station, may be performed

22  by the Service without regard to the foregoing provisions of

23  this subsection if the Attorney General shall find that it would

24  be advantageous to the Government in terms of economy and

162

1  efficiency.   No intoxicating liquors shall be sold at any
2  immigrant station.

3      (b) Such articles determined by the Attorney General
4  to be necessary to the health and welfare of aliens detained at
5  any immigrant station, when not otherwise readily procurable
6  by such aliens, may be sold at reasonable prices to such
7  aliens through Government canteens operated by the Service,
8  under such conditions and limitations as the Attorney General
9  shall prescribe.

10      (c) All rentals or other receipts accruing from the
11  disposal of privileges, and all moneys arising from the sale of
12  articles through Service-operated canteens, authorized by this
13  section, shall be covered into the Treasury to the credit of
14  the appropriation for the enforcement of this title.

15          DISPOSITION OF MONEYS COLLECTED UNDER THE
16                  PROVISIONS OF THIS TITLE

17      SEC. 286. (a) All moneys paid into the Treasury to
18  reimburse the Service for detention, transportation, hospi-
19  talization, and all other expenses of detained aliens paid from
20  the appropriation for the enforcement of this Act, and all
21  moneys paid into the Treasury to reimburse the Service for
22  expenses of landing stations referred to in section 238 (c)
23  paid by the Service from the appropriation for the enforce-
24  ment of this Act, shall be credited to the appropriation for

163

1  the enforcement of this Act for the fiscal year in which the

2  expenses were incurred.

3  (b) Except as otherwise provided in subsection (a),

4  or in any other provision of this title, all moneys received

5  in payment of fees and administrative fines and penalties

6  under this title shall be covered into the Treasury as

7  miscellaneous receipts.

8  POWERS OF IMMIGRATION OFFICERS AND EMPLOYEES

9  SEC. 287. (a) Any officer or employee of the Service

10  authorized under regulations prescribed by the Attorney

11  General shall have power without warrant—

12  (1) to interrogate any alien or person believed to

13  be an alien as to his right to be or to remain in the

14  United States;

15  (2) to arrest any alien who in his presence or view

16  is entering or attempting to enter the United States in

17  violation of any law or regulation made in pursuance of

18  law regulating the admission, exclusion, or expulsion

19  of aliens, or to arrest any alien in the United States,

20  if he has reason to believe that the alien so arrested

21  is in the United States in violation of any such law or

22  regulation and is likely to escape before a warrant can

23  be obtained for his arrest, but the alien arrested shall be

24  taken without unnecessary delay for examination before

164

1    an officer of the Service having authority to examine

2    aliens as to their right to enter or remain in the United

3    States;

4        (3) to board and search for aliens any vessel within

5    the territorial waters of the United States and any rail-

6    way car, aircraft, conveyance, or vehicle, within a rea-

7    sonable distance from any external boundary of the

8    United States; and

9        (4) to make arrests for felonies which have been

10   committed and which are cognizable under any law of

11   the United States regulating the admission, exclusion, or

12   expulsion of aliens, if he has reason to believe that the

13   person so arrested is guilty of such felony and if there

14   is likelihood of the person escaping before a warrant

15   can be obtained for his arrest, but the person arrested

16   shall be taken without unnecessary delay before the

17   nearest available officer empowered to commit persons

18   charged with offenses against the laws of the United

19   States. Any such employee shall also have the power to

20   execute any warrant or other process issued by any

21   officer under any law regulating the admission, exclusion,

22   or expulsion of aliens.

165

1    (b)  Any officer or employee of the Service designated
2    by the Attorney General, whether individually or as one of
3    a class, shall have power and authority to administer oaths
4    and to take and consider evidence concerning the privilege
5    of any person to enter, reenter, pass through, or reside in
6    the United States, or concerning any matter which is material
7    or relevant to the enforcement of this Act and the administra-
8    tion of the Service; and any person to whom such oath
9    has been administered, under the provisions of this Act,
10   who shall knowingly or willfully give false evidence or swear
11   to any false statement concerning any matter referred to
12   in this subsection shall be guilty of perjury and shall be pun-
13   ished as provided by 18 United States Code 1621.

14   (c)  Any officer or employee of the Service authorized
15   and designated under regulations prescribed by the Attorney
16   General, whether individually or as one of a class, shall have
17   power to conduct a search, without warrant, of the person,
18   and of the personal effects in the possession of any person
19   seeking admission to the United States, concerning whom
20   such officer or employee may have reasonable cause to sus-
21   pect that grounds exist for exclusion from the United States
22   under this Act which would be disclosed by such search.

1   LOCAL JURISDICTION OVER IMMIGRANT STATIONS

2   SEC. 288. The officers in charge of the various immi-

3   grant stations shall admit therein the proper State and local

4   officers charged with the enforcement of the laws of the

5   State or Territory of the United States in which any such

6   immigrant station is located in order that such State and

7   local officers may preserve the peace and make arrests for

8   crimes under the laws of the States and Territories.   For

9   the purpose of this section the jurisdiction of such State

10   and local officers and of the State and local courts shall

11   extend over such immigrant stations.

12                   AMERICAN INDIANS BORN IN CANADA

13   SEC. 289. Nothing in this title shall be construed to

14   affect the right of American Indians born in Canada to pass

15   the borders of the United States, but such right shall

16   extend only to persons who possess at least fifty per centum

17   of blood of the American Indian race.

18   CENTRAL FILE; INFORMATION FROM OTHER DEPARTMENTS

19                           AND AGENCIES

20   SEC. 290. (a) There shall be established in the office of

21   the Commissioner, for the use of the security and enforce-

22   ment agencies of the Government of the United States, a

23   central index, which shall contain the names of all aliens

24   heretofore admitted to the United States, or excluded there-

25   from, insofar as such information is available from the exist-

167

1  ing records of the Service, and the names of all aliens here-

2  after admitted to the United States, or excluded therefrom,

3  the names of their sponsors of record, if any, and such

4  other relevant information as the Attorney General shall re-

5  quire as an aid to the proper enforcement of this Act.

6      (b) All records kept by any department or agency

7  of the Government containing information relating to the

8  identity and location of aliens in the United States shall be

9  made available to the Service upon request made by the

10  Attorney General to the head of any such department or

11  agency.

12      (c) The Federal Security Administrator shall notify

13  the Attorney General whenever any alien is issued a social

14  security account number and social security card. The

15  Administrator shall also furnish such information as may

16  be requested by the Attorney General regarding aliens em-

17  ployed in the United States.

18                    BURDEN OF PROOF

19      SEC. 291. Whenever any person makes application for

20  a visa or any other document required for entry, or attempts

21  to enter the United States, the burden of proof shall be upon

22  such person to establish that he is not subject to exclusion

23  under any provision of this Act, and, if an alien, that he is

24  entitled to the nonimmigrant, quota immigrant, or nonquota

25  immigrant status claimed, as the case may be. If such

168

1   person fails to establish to the satisfaction of the consular

2   officer that he is eligible to receive a visa or other document

3   required for entry, no visa or other document required for

4   entry shall be issued to such person, nor shall such person

5   be admitted to the United States unless he establishes to

6   the satisfaction of the Attorney General that he is not subject

7   to exclusion under any provision of this Act.  In any de-

8   portation proceeding under chapter 5 against any person, the

9   burden of proof shall be upon such person to show the time,

10  place, and manner of his entry into the United States, but

11  in presenting such proof he shall be entitled to the production

12  of his visa or other entry document, if any, and of any other

13  documents and records, not considered by the Attorney Gen-

14  eral to be confidential, pertaining to such entry in the

15  custody of the Service.  If such burden of proof is not sus-

16  tained, such person shall be presumed to be in the United

17  States in violation of law.

18                    RIGHT TO COUNSEL

19      SEC. 292. In any exclusion or deportation proceedings

20  before a special inquiry officer and in any appeal proceed-

21  ings before the Attorney General from any such exclusion

22  or deportation proceedings, the person concerned shall be

23  entitled to be represented by counsel of his own choice,

24  authorized to practice before the service, at no expense to the

25  Government.

169

1    TITLE III—NATIONALITY AND

2    NATURALIZATION

3    CHAPTER 1—NATIONALITY AT BIRTH AND BY COLLECTIVE

4    NATURALIZATION

5    NATIONALS AND CITIZENS OF THE UNITED STATES AT BIRTH

6    SEC. 301. (a) The following shall be nationals and cit-

7    izens of the United States at birth:

8        (1) a person born in the United States, and sub-

9    ject to the jurisdiction thereof;

10       (2) a person born in the United States to a mem-

11   ber of an Indian, Eskimo, Aleutian, or other aboriginal

12   tribe: *Provided*, That the granting of citizenship under

13   this subsection shall not in any manner impair or other-

14   wise affect the right of such person to tribal or other

15   property;

16       (3) a person born outside of the United States and

17   its outlying possessions of parents both of whom are

18   citizens of the United States and one of whom has

19   had a residence in the United States or one of its out-

20   lying possessions, prior to the birth of such person;

21       (4) a person born outside of the United States and

22   its outlying possessions of parents one of whom is a

23   citizen of the United States who has been physically

24   present in the United States or one of its outlying pos-

25   sessions for a continuous period of one year prior to

170

1   the birth of such person, and the other of whom is a

2   national, but not a citizen of the United States;

3      (5) a person born in an outlying possession of the

4   United States of parents one of whom is a citizen of the

5   United States who has been physically present in the

6   United States or one of its outlying possessions for a

7   continuous period of one year at any time prior to the

8   birth of such person;

9      (6) a person of unknown parentage found in the

10  United States while under the age of five years, until

11  shown not to have been born in the United States;

12     (7) a person born outside the geographical limits of

13  the United States and its outlying possessions of parents

14  one of whom is an alien, and the other a citizen of the

15  United States who, prior to the birth of such person, was

16  physically present in the United States or its outlying

17  possessions for a period or periods totalling not less than

18  ten years, at least five of which were after attaining the

19  age of fourteen years: *Provided,* That any periods of

20  honorable service in the armed forces of the United

21  States by such citizen parent may be included in com-

22  puting the physical presence requirements of this para-

23  graph.

24     (b) Any person who is a national and citizen of the

25  United States at birth under paragraph (7) of subsection

171

1   (a), shall lose his nationality and citizenship unless he shall

2   come to the United States prior to attaining the age of

3   twenty-three years and shall immediately following any such

4   coming be continuously physically present in the United

5   States for at least five years: *Provided,* That such physical

6   presence follows the attainment of the age of fourteen years

7   and precedes the age of twenty-eight years.

8   '     (c) Subsection (b) shall apply to a person born abroad

9   subsequent to May 24, 1934: *Provided, however,* That

10   nothing contained in this subsection shall be construed to

11   alter or affect the citizenship of any person born abroad

12   subsequent to May 24, 1934, who, prior to the effective

13   date of this Act, has taken up a residence in the United

14   States before attaining the age of sixteen years, and there-

15   after, whether before or after the effective date of this

16   Act, complies or shall comply with the residence require-

17   ments for retention of citizenship specified in subsections (g)

18   and (h) of section 201 of the Nationality Act of 1940,

19   as amended.

20          PERSONS BORN IN PUERTO RICO ON OR AFTER

21                      APRIL 11, 1899

22          SEC. 302. All persons born in Puerto Rico on or after

23   April 11, 1899, and prior to January 13, 1941, subject to

24   the jurisdiction of the United States, residing on January 13,

25   1941, in Puerto Rico or other territory over which the

172

1  United States exercises rights of sovereignty and not citi-
2  zens of the United States under any other Act, are hereby
3  declared to be citizens of the United States as of January 13,
4  1941. All persons born in Puerto Rico on or after January
5  13, 1941, and subject to the jurisdiction of the United
6  States, are citizens of the United States at birth.

7  PERSONS BORN IN THE CANAL ZONE OR REPUBLIC OF

8  PANAMA ON OR AFTER FEBRUARY 26, 1904

9  SEC. 303. (a) Any person born in the Canal Zone on
10 or after February 26, 1904, and whether before or after
11 the effective date of this Act, whose father or mother or
12 both at the time of the birth of such person was or is a
13 citizen of the United States, is declared to be a citizen of
14 the United States.

15 (b) Any person born in the Republic of Panama on or
16 after February 26, 1904, and whether before or after the
17 effective date of this Act, whose father or mother or both
18 at the time of the birth of such person was or is a citizen of
19 the United States employed by the Government of the
20 United States or by the Panama Railroad Company, is de-
21 clared to be a citizen of the United States.

22 PERSONS BORN IN ALASKA ON OR AFTER MARCH 30, 1867

23 SEC. 304. A person born in Alaska on or after March
24 30, 1867, except a noncitizen Indian, is a citizen of the
25 United States at birth. A noncitizen Indian born in Alaska

173

1   on or after March 30, 1867, and prior to June 2, 1924, is

2   declared to be a citizen of the United States as of June 2,

3   1924.   An Indian born in Alaska on or after June 2, 1924,

4   is a citizen of the United States at birth.

5       PERSONS BORN IN THE TERRITORY OF HAWAII

6       SEC. 305. A person born in Hawaii on or after August

7   12, 1898, and before April 30, 1900, is declared to be a

8   citizen of the United States as of April 30, 1900.   A person

9   born in Hawaii on or after April 30, 1900, is a citizen of

10   the United States at birth.   A person who was a citizen

11   of the Republic of Hawaii on August 12, 1898, is declared

12   to be a citizen of the United States as of April 30, 1900.

13      PERSONS LIVING IN AND BORN IN THE VIRGIN ISLANDS

14       SEC. 306. (a) The following persons and their children

15   born subsequent to January 17, 1917, and prior to February

16   25, 1927, are declared to be citizens of the United States as

17   of February 25, 1927:

18       (1) All former Danish citizens who, on January 17,

19   1917, resided in the Virgin Islands of the United States, and

20   were residing in those islands or in the United States or

21   Puerto Rico on February 25, 1927, and who did not make

22   the declaration required to preserve their Danish citizen-

23   ship by article 6 of the treaty entered into on August 4,

24   1916, between the United States and Denmark, or who,

25   having made such a declaration have heretofore renounced

174

1  or may hereafter renounce it by a declaration before a court

2  of record;

3     (2) All natives of the Virgin Islands of the United

4  States who, on January 17, 1917, resided in those islands,

5  and were residing in those islands or in the United States

6  or Puerto Rico on February 25, 1927, and who were not

7  on February 25, 1927, citizens or subjects of any foreign

8  country;

9     (3) All natives of the Virgin Islands of the United

10  States who, on January 17, 1917, resided in the United

11  States, and were residing in those islands on February 25,

12  1927, and who were not on February 25, 1927, citizens or

13  subjects of any foreign country; and

14     (4) All natives of the Virgin Islands of the United

15  States who, on June 28, 1932, were residing in continental

16  United States, the Virgin Islands of the United States,

17  Puerto Rico, the Canal Zone, or any other insular possession

18  or territory of the United States, and who, on June 28,

19  1932, were not citizens or subjects of any foreign country,

20  regardless of their place of residence on January 17, 1917.

21     (b) All persons born in the Virgin Islands of the

22  United States on or after January 17, 1917, and prior to

23  February 25, 1927, and subject to the jurisdiction of the

24  United States are declared to be citizens of the United

25  States as of February 25, 1927; and all persons born in

175

1 those islands on or after February 25, 1927, and subject

2 to the jurisdiction of the United States, are declared to be

3 citizens of the United States at birth.

4            PERSONS LIVING IN AND BORN IN GUAM

5     SEC. 307. (a) The following persons, and their children

6 born after April 11, 1899, are declared to be citizens of

7 the United States as of August 1, 1950, if they were residing

8 on August 1, 1950, on the island of Guam or other territory

9 over which the United States exercises rights of sovereignty:

10     (1) All inhabitants of the island of Guam on April 11,

11 1899, including those temporarily absent from the island

12 on that date, who were Spanish subjects, who after that

13 date continued to reside in Guam or other territory over

14 which the United States exercises sovereignty, and who have

15 taken no affirmative steps to preserve or acquire foreign

16 nationality; and

17     (2) All persons born in the island of Guam who resided

18 in Guam on April 11, 1899, including those temporarily

19 absent from the island on that date, who after that date con-

20 tinued to reside in Guam or other territory over which the

21 United States exercises sovereignty, and who have taken

22 no affirmative steps to preserve or acquire foreign nationality.

23     (b) All persons born in the island of Guam on or after

24 April 11, 1899 (whether before or after August 1, 1950),

25 subject to the jurisdiction of the United States, are hereby

1 declared to be citizens of the United States: *Provided,* That

2 in the case of any person born before August 1, 1950, he

3 has taken no affirmative steps to preserve or acquire foreign

4 nationality.

5 (c) Any person hereinbefore described who is a citizen

6 or national of a country other than the United States and

7 desires to retain his present political status shall make, prior

8 to August 1, 1952, a declaration under oath of such desire,

9 said declaration to be in form and executed in the manner

10 prescribed by regulations.   From and after the making of

11 such a declaration any such person shall be held not to be a

12 national of the United States by virtue of this Act.

13 NATIONALS BUT NOT CITIZENS OF THE UNITED STATES AT

14 BIRTH

15 SEC. 308. Unless otherwise provided in section 301 of

16 this title, the following shall be nationals, but not citizens, of

17 the United States at birth:

18 (1) A person born in an outlying possession of the

19 United States on or after the date of formal acquisition of

20 such possession:

21 (2) A person born outside the United States and its out-

22 lying possessions of parents both of whom are nationals, but

23 not citizens, of the United States, and have had a residence

24 in the United States, or one of its outlying possessions prior

25 to the birth of such person; and

177

1      (3) A person of unknown parentage found in an out-
2  lying possession of the United States while under the age of
3  five years, until shown not to have been born in such outlying
4  possession.

5              CHILDREN BORN OUT OF WEDLOCK

6      SEC. 309. (a) The provisions of paragraphs (3), (4),
7  (5), and (7) of section 301 (a), and of paragraph (2)
8  of section 308, of this title shall apply as of the date
9  of birth to a child born out of wedlock on or after the
10  effective date of this Act, if the paternity of such child is
11  established while such child is under the age of twenty-one
12  years by legitimation, or adjudication of a competent court.

13      (b) The provisions of section 301 (a) (7) shall apply
14  to a child born out of wedlock on or after January 13, 1941,
15  and prior to the effective date of this Act, as of the date of
16  birth, if the paternity of such child is established before or
17  after the effective date of this Act and while such child
18  is under the age of twenty-one years by legitimation, or
19  adjudication of a competent court.

20      (c) Notwithstanding the provisions of subsection (a)
21  of this section, a child born, on or after the effective
22  date of this Act, outside the United States and out of wed-
23  lock shall be held to have acquired at birth the nationality
24  status of its mother, if the mother had the nationality of the

          S. 716——12

178

1  United States at the time of the child's birth, and if the

2  mother had previously been physically present in the United

3  States or one of its outlying possessions for a continuous

4  period of one year.

5  CHAPTER 2—NATIONALITY THROUGH NATURALIZATION

6  JURISDICTION TO NATURALIZE

7  SEC. 310. (a) Exclusive jurisdiction to naturalize per-

8  sons as citizens of the United States is hereby conferred

9  upon the following specified courts: District courts of the

10  United States now existing, or which may hereafter be

11  established by Congress in any State, District Courts of the

12  United States for the Territories of Hawaii and Alaska, and

13  for the District of Columbia and for Puerto Rico, the

14  District Court of the Virgin Islands of the United States, and

15  the District Court of Guam; also all courts of record in any

16  State or Territory now existing, or which may hereafter be

17  created, having a seal, a clerk, and jurisdiction in actions at

18  law or equity, or law and equity, in which the amount in

19  controversy is unlimited. The jurisdiction of all the courts

20  herein specified to naturalize persons shall extend only to such

21  persons resident within the respective jurisdiction of such

22  courts, except as otherwise specifically provided in this title.

23  (b) A person who petitions for naturalization in any

24  State court having naturalization jurisdiction may petition

25  within the State judicial district or State judicial circuit in

179

1   which he resides, whether or not he resides within the county

2   in which the petition for naturalization is filed.

3       (c) The courts herein specified, upon request of the

4   clerks of such courts, shall be furnished from time to time

5   by the Attorney General with such blank forms as may be

6   required in naturalization proceedings.

7       (d) A person may be naturalized as a citizen of the

8   United States in the manner and under the conditions pre-

9   scribed in this title, and not otherwise.

10          ELIGIBILITY FOR NATURALIZATION

11      SEC. 311. The right of a person to become a naturalized

12  citizen of the United States shall not be denied or abridged

13  because of race or sex or because such person is married.

14  Notwithstanding section 405 (b), this section shall apply

15  to any person whose petition for naturalization shall hereafter

16  be filed, or shall have been pending on the effective date of

17  this Act.

18  REQUIREMENTS AS TO UNDERSTANDING THE ENGLISH LAN-

19      GUAGE, HISTORY, PRINCIPLES, AND FORM OF GOVERN-

20      MENT OF THE UNITED STATES

21      SEC. 312. No person except as otherwise provided in

22  this title shall hereafter be naturalized as a citizen of the

23  United States upon his own petition who cannot demon-

24  strate—

25          (1) an understanding of the English language,

1   including an ability to read, write, and speak words in

2   ordinary usage in the English language: *Provided*, That

3   this requirement shall not apply to any person physically

4   unable to comply therewith, if otherwise qualified to be

5   naturalized, or to any person who, on the effective date

6   of this Act, is over fifty years of age and has been

7   residing in the United States for twenty years: *Provided*

8   *further*, That the requirements of this section relating

9   to ability to read and write shall be met if the applicant

10   can read or write simple words and phrases to the end

11   that a reasonable test of his literacy shall be made and

12   that no extraordinary or unreasonable conditions shall

13   be imposed upon the applicant; and

14        (2) a knowledge and understanding of the funda-

15   mentals of the history, and of the principles and form

16   of government of the United States.

17   PROHIBITION UPON THE NATURALIZATION OF PERSONS

18        OPPOSED TO GOVERNMENT OR LAW, OR WHO FAVOR

19        TOTALITARIAN FORMS OF GOVERNMENT

20   SEC. 313.  (a)  No person shall hereafter be nat-

21   uralized as a citizen of the United States—

22        (1) who advocates or teaches, or who is a mem-

23   ber of or affiliated with any organization that advocates

24   or teaches, opposition to all organized government; or

25        (2) who is a member of or affiliated with (i) the

**181**

1      Communist Party of the United States; (ii) any

2      other totalitarian party of the United States; (iii) the

3      Communist political association; (iv) the Com-

4      munist or other totalitarian party of any State of the

5      United States, of any foreign state, or of any political

6      or geographical subdivision of any foreign state; (v)

7      any section, subsidiary, branch, affiliate, or subdivision of

8      any such association or party; or (vi) the direct pred-

9      ecessors or successors of any such association or party,

10      regardless of what name such group or organization

11      may have used, may now bear, or may hereafter adopt;

12      or (vii) who is a member of or affiliated with any

13      Communist-action organization that is registered or re-

14      quired to be registered under the provisions of section 7

15      of the Subversive Activities Control Act of 1950; or

16      (3) who, although not within any of the other pro-

17      visions of this section, advocates the economic, inter-

18      national, and governmental doctrines of world com-

19      munism or the economic or governmental doctrines of

20      any other form of totalitarianism, or who is a member

21      of or affiliated with any organization that advocates

22      the economic, international, and governmental doctrines

23      of world communism, or the economic and governmental

24      doctrines of any other form of totalitarianism, either

25      through its own utterances or through any written or

182

1    printed publications issued or published by or with the

2    permission or consent of or under authority of such

3    organization or paid for by the funds of such organiza-

4    tion; or

5        (4)  who advocates or teaches or who is a member

6    of or affiliated with any organization that advocates or

7    teaches (i) the overthrow by force or violence or other

8    unconstitutional means of the Government of the United

9    States or of all forms of law; or (ii) the duty, necessity,

10    or propriety of the unlawful assaulting or killing of any

11    officer or officers (either of specific individuals or of

12    officers generally) of the Government of the United

13    States or of any other organized government because of

14    his or their official character; or (iii) the unlawful

15    damage, injury, or destruction of property; or (iv)

16    sabotage; or

17        (5)  who writes or publishes or causes to be written

18    or published, or who knowingly circulates, distributes,

19    prints, or displays, or knowingly causes to be circulated,

20    distributed, printed, published, or displayed, or who

21    knowingly has in his possession for the purpose of circu-

22    lation, publication, distribution, or display, any written

23    or printed matter, advocating or teaching opposition to

24    all organized government, or advocating (i) the over-

25    throw by force, violence, or other unconstitutional means

183

1    of the Government of the United States or of

2    all forms of law; or (ii) the duty, necessity, or

3    propriety of the unlawful assaulting or killing of any

4    officer or officers (either of specific individuals or of

5    officers generally) of the Government of the United

6    States or of any other organized government, because

7    of his or their official character; or (iii) the unlawful

8    damage, injury, or destruction of property; or (iv)

9    sabotage; or (v) the economic, international, and

10    governmental doctrines of world communism or the

11    economic and governmental doctrines of any other form

12    of totalitarianism; or

13    (6) who is a member of or affiliated with any

14    organization that writes, circulates, distributes, prints,

15    publishes, or displays, or causes to be written, circulated,

16    distributed, printed, published, or displayed, or that has

17    in its possession for the purpose of circulation, distribu-

18    tion, publication, issue, or display, any written or printed

19    matter of the character described in subparagraph (5).

20    (b) The provisions of this section or of any other sec-

21    tion of this Act shall not be construed as declaring that

22    any of the organizations referred to in this section or in

23    any other section of this Act do not advocate the overthrow

24    of the Government of the United States by force, violence,

25    or other unconstitutional means.

184

1    (c) The provisions of this section shall be applicable

2  to any applicant for naturalization who at any time within

3  a period of ten years immediately preceding the filing of

4  the petition for naturalization is, or has been, found to be

5  within any of the classes enumerated within this section,

6  notwithstanding that at the time the petition is filed he may

7  not be included within such classes.

8    (d)  Any alien who is within any of the classes described

9  in subsection (a) solely because of past membership in,

10  or past affiliation with, a party or organization may be nat-

11  uralized without regard to the provisions of subsection (c)

12  if such alien establishes that such membership or affiliation

13  occurred and terminated prior to the attainment by such

14  alien of the age of fourteen years.

15  INELIGIBILITY TO NATURALIZATION OF DESERTERS FROM

16      THE ARMED FORCES OF THE UNITED STATES

17    SEC. 314.  A person who, at any time during which the

18  United States has been or shall be at war, deserted or shall

19  desert the military, air, or naval forces of the United States,

20  or who, having duly enrolled, departed, or shall depart from

21  the jurisdiction of the district in which enrolled, or who,

22  whether or not having duly enrolled, went or shall go beyond

185

1   the limits of the United States, with intent to avoid any

2   draft into the military, air, or naval service, lawfully ordered,

3   shall, upon conviction thereof by a court martial or a court

4   of competent jurisdiction, be permanently ineligible to be-

5   come a citizen of the United States; and such deserters and

6   evaders shall be forever incapable of holding any office of

7   trust or of profit under the United States, or of exercising

8   any rights of citizens thereof.

9   ALIEN RELIEVED FROM TRAINING AND SERVICE IN THE

10      ARMED   FORCES   OF   THE   UNITED   STATES   SOLELY

11      BECAUSE OF ALIENAGE BARRED FROM CITIZENSHIP

12      SEC. 315. (a) Any alien who applies or has applied

13   for exemption or discharge from training or service in the

14   armed forces of the United States solely on the ground that

15   he is an alien, and is or was relieved or discharged from

16   such training or service solely on such ground, shall be

17   permanently ineligible to become a citizen of the United

18   States.

19      (b) The records of the Selective Service System or of

20   the National Military Establishment shall be conclusive as to

21   whether an alien was relieved or discharged from such

22   liability for training or service solely because he was an

23   alien.

186

1  REQUIREMENTS AS TO RESIDENCE, GOOD MORAL CHARAC-

2      TER, ATTACHMENT TO THE PRINCIPLES OF THE CON-

3      STITUTION, AND FAVORABLE DISPOSITION TO THE

4      UNITED STATES

5  SEC. 316. (a) No person, except as otherwise provided

6  in this title, shall be naturalized unless such petitioner, (1)

7  immediately preceding the date of filing his petition for

8  naturalization has resided continuously, after being lawfully

9  admitted for permanent residence, within the United States

10  for at least five years and during the five years immediately

11  preceding the date of filing his petition has been physically

12  present therein for periods totaling at least half of that time,

13  and who has resided within the State in which the petitioner

14  filed the petition for at least six months, (2) has resided

15  continuously within the United States from the date of the

16  petition up to the time of admission to citizenship, and (3)

17  during all the periods referred to in this subsection has been

18  and still is a person of good moral character, attached to the

19  principles of the Constitution of the United States, and well

20  disposed to the good order and happiness of the United

21  States.

22      (b) Absence from the United States of less than one

23  year during the period for which continuous residence is

24  required for admission to citizenship, immediately preceding

25  the date of filing the petition for naturalization, or during

187

1  the period between the date of filing the petition and the

2  date of final hearing, shall break the continuity of such resi-

3  dence, unless the petitioner shall establish to the satisfaction

4  of the court that he did not in fact abandon his residence in

5  the United States during such period.

6     Absence from the United States for a continuous period

7  of one year or more during the period for which continuous

8  residence is required for admission to citizenship (whether

9  preceding or subsequent to the filing of the petition for nat

10  uralization) shall break the continuity of such residence,

11  except that in the case of a person who has been physically

12  present and residing in the United States, after being law-

13  fully admitted for permanent residence, for an uninterrupted

14  period of at least one year, and who thereafter is employed

15  by or under contract with the Government of the United

16  States or an American institution of research recognized as

17  such by the Attorney General, or is employed by an Ameri-

18  can firm or corporation engaged in whole or in part in the

19  development of foreign trade and commerce of the United

20  States, or a subsidiary thereof more than 50 per centum of

21  whose stock is owned by an American firm or corporation,

22  or is employed by a public international organization in which

23  the United States participates by treaty or statute and by

24  which the alien was not employed until after being law-

25  fully admitted for permanent residence, no period of absence

188

1   from the United States shall break the continuity of residence

2   if—

3          (1) prior to the beginning of such period of employ-

4        ment (whether such period begins before or after his

5        departure from the United States) the person has estab-

6        lished to the satisfaction of the Attorney General that his

7        absence from the United States for such period is to be

8        on behalf of such Government, or for the purpose of

9        carrying on scientific research on behalf of such institu-

10       tion, or to be engaged in the development of such foreign

11       trade and commerce or whose residence abroad is neces-

12       sary to the protection of the property rights in such

13       countries of such firm or corporation, or to be employed

14       by a public international organization in which · the

15       United States participates by treaty or statute and by

16       which the alien was not employed until after being law-

17       fully admitted for permanent residence; and

18          (2) such person proves to the satisfaction of the

19       court that his absence from the United States for such

20       period has been for such purpose.

21   (c) The granting of the benefits of subsection (b) of

22   this section shall not relieve the petitioner from the require-

23   ment of physical presence within the United States for the

24   period specified in subsection (a) of this section, except in

189

1   the case of those persons who are employed by, or under
2   contract with, the Government of the United States.

3       (d) No finding by the Attorney General that the peti-
4   tioner is not deportable shall be accepted as conclusive
5   evidence of good moral character.

6       (e) In determining whether the petitioner has sustained
7   the burden of establishing good moral character and the other
8   qualifications for citizenship specified in subsection (a) of
9   this section, the court shall not be limited to the petitioner's
10  conduct during the five years preceding the filing of the
11  petition, but may take into consideration as a basis for such
12  determination the petitioner's conduct and acts at any time
13  prior to that period.

14      (f) Any alien who, whether or not he is within any
15  of the provisions of section 313, has been at any time within
16  ten years next preceding the filing of his petition for natural-
17  ization, or is at the time of filing such petition, or has been
18  at any time between such filing and the time of taking of the
19  final oath of citizenship, a member of or affiliated with
20  any organization which is registered or required to be regis-
21  tered under section 7 of the Subversive Activities Control
22  Act of 1950 as a Communist-front organization, shall be
23  presumed to be a person not attached to the principles of
24  the Constitution of the United States and not well disposed

190

1   to the good order and happiness of the United States and

2   unless he shall rebut such presumption he shall not be nat-

3   uralized as a citizen of the United States: *Provided,* That the

4   provisions of this subsection shall not apply to any person

5   who shall be a member of or affiliated with any such Com-

6   munist-front organization who shall, within three months

7   from the date upon which such organization was so regis-

8   tered or so required to be registered, renounce, withdraw

9   from, and utterly abandon such membership or affiliation, and

10  who thereafter ceases entirely to be affiliated with such or-

11  ganization, or who at any time prior to the time when such

12  organization was so registered or so required to be regis-

13  tered, renounced, withdrew from, and utterly abandoned

14  such membership or affiliation, and who thereafter ceased

15  entirely to be affiliated with such organization.   No petition

16  for naturalization shall be heard nor shall naturalization be

17  granted by a naturalization court while registration proceed-

18  ings or proceedings to require registration against an alleged

19  Communist-front organization of which the petitioner is a

20  member or affiliate are pending under section 13 or 14 of the

21  Subversive Activities Control Act of 1950.

22  TEMPORARY ABSENCE OF PERSONS PERFORMING RELIGIOUS

23                              DUTIES

24      SEC. 317. Any person who is authorized to perform the

25  ministerial or priestly functions of a religious denomination

191

1   having a bona fide organization within the United States,

2   or any person who is engaged solely by a religious denomina-

3   tion having a bona fide organization within the United States

4   as a missionary, nun, or sister, who (1) has been lawfully

5   admitted to the United States for permanent residence, (2)

6   has thereafter been physically present and residing within

7   the United States for an uninterrupted period of at least

8   one year, and (3) has heretofore been or may hereafter be

9   absent temporarily from the United States in connection

10   with or for the purpose of performing the ministerial or

11   priestly functions of such religious denomination, or serving

12   as a missionary, nun, or sister, shall be considered as resid-

13   ing in the United States for the purpose of naturalization,

14   notwithstanding any such absence from the United States,

15   if he shall in all other respects comply with the requirements

16   of the naturalization law.  Such person shall prove to the sat-

17   isfaction of the Attorney General and the naturalization court

18   that his absence from the United States has been solely for

19   the purpose of performing the ministerial or priestly func-

20   tions of such religious denomination, or of serving as a

21   missionary, nun, or sister.

22   PREREQUISITES TO NATURALIZATION; BURDEN OF PROOF

23       SEC. 318.  Except as otherwise provided in this title, no

24   person shall be naturalized unless he has been lawfully

25   admitted to the United States for permanent residence in

192

1  accordance with all applicable provisions of this Act.  The

2  burden of proof shall be upon such person to show that he

3  entered the United States lawfully, and the time, place, and

4  manner of such entry into the United States, but in present-

5  ing such proof he shall be entitled to the production of his

6  immigrant visa, if any, or of other entry document, if any,

7  and of any other documents and records, not considered by

8  the Attorney General to be confidential, pertaining to such

9  entry, in the custody of the Service.  No person shall be

10 naturalized against whom there is outstanding a final find-

11 ing of deportability pursuant to a warrant of arrest issued

12 under the provisions of this or any other Act; and no peti-

13 tion for naturalization shall be finally heard by a naturaliza-

14 tion court if there is pending against the petitioner a deporta-

15 tion proceeding pursuant to a warrant of arrest issued under

16 the provisions of this or any other Act: *Provided*, That the

17 findings of the Attorney General in terminating deportation

18 proceedings or in suspending the deportation of an alien

19 pursuant to the provisions of this Act, shall not be deemed

20 binding in any way upon the naturalization court with respect

21 to the question of whether such person has established his

22 eligibility for naturalization as required by this title.

23                         MARRIED PERSONS

24     SEC. 319. Any person, (1) whose spouse is (A) a

25 citizen of the United States, (B) in the employment of the

193

1  Government of the United States, or of an American insti-

2  tution of research recognized as such by the Attorney Gen-

3  eral, or of an American firm or corporation engaged in whole

4  or in part in the development of foreign trade and commerce

5  of the United States, or a subsidiary thereof, or of a public

6  international organization in which the United States partici-

7  pates by treaty or statute, and (C) regularly stationed

8  abroad in such employment, and (2) who is in the United

9  States at the time of naturalization, and (3) who declares

10  before the naturalization court in good faith an intention to

11  take up residence within the United States immediately upon

12  the termination of such employment abroad of the citizen

13  spouse, may be naturalized upon compliance with all the re-

14  quirements of the naturalization laws, except that no prior

15  residence or specified period of physical presence within the

16  United States or within the jurisdiction of the naturalization

17  court or proof thereof shall be required.

18  CHILD BORN OUTSIDE OF UNITED STATES OF ONE ALIEN

19      AND ONE CITIZEN PARENT AT TIME OF BIRTH; CON-

20      DITIONS UNDER WHICH CITIZENSHIP AUTOMATICALLY

21      ACQUIRED

22      SEC. 320. (a) A child born outside of the United

23  States, one of whose parents at the time of the child's birth

24  was an alien and the other of whose parents then was and

S. 716——13

194

1 never thereafter ceased to be a citizen of the United

2 States, shall, if such alien parent is naturalized, become a

3 citizen of the United States, when—

4    (1) such naturalization takes place while such child

5 is under the age of sixteen years; and

6    (2) such child is residing in the United States

7 pursuant to a lawful admission for permanent residence

8 at the time of naturalization or thereafter and begins to

9 reside permanently in the United States while under

10 the age of sixteen years.

11  (b) Subsection ( *i* ) of this section shall not apply to

12 an adopted child.

13 CHILD BORN OUTSIDE OF UNITED STATES OF ALIEN PAR-

14    ENT; CONDITIONS UNDER WHICH CITIZENSHIP AUTO-

15    MATICALLY ACQUIRED

16    SEC. 321. (a) A child born outside of the United States

17 of alien parents, or of an alien parent and a citizen parent

18 who has subsequently lost citizenship of the United States,

19 becomes a citizen of the United States upon fulfillment of

20 the following conditions:

21    (1) The naturalization of both parents; or

22    (2) The naturalization of the surviving parent if one

23 of the parents is deceased; or

24    (3) The naturalization of the parent having legal

1 custody of the child when there has been a legal separation

2 of the parents; and if

3     (4) Such naturalization takes place while such child

4 is under the age of sixteen years; and

5     (5) Such child is residing in the United States pur-

6 suant to a lawful admission for permanent residence at the

7 time of the naturalization of the parent last naturalized under

8 clause (1) of this section, or the parent naturalized under

9 clause (2) or (3) of this section, or thereafter begins to

10 reside permanently in the United States while under the age

11 of sixteen years.

12     (b) Subsection (a) of this section shall not apply to

13 an adopted child.

14 CHILD BORN OUTSIDE OF UNITED STATES; NATURALIZA-

15     TION ON PETITION OF CITIZEN PARENT; REQUIRE-

16     MENTS AND EXEMPTIONS

17     SEC. 322. (a) A child born outside of the United

18 States, one of whose parents is at the time of petitioning for

19 the naturalization of the child a citizen of the United States,

20 either by birth or naturalization, may be naturalized if under

21 the age of eighteen years and not otherwise disqualified from

22 becoming a citizen and if residing permanently in the United

23 States with the citizen parent, on the petition of such citizen

196

1  parent, upon compliance with the applicable procedural pro-

2  visions of this title.

3  (b) Subsection (a) of this section shall not apply to

4  an adopted child.

5  CHILDREN ADOPTED BY UNITED STATES CITIZENS

6  SEC. 323. An adopted child may, if not otherwise dis-

7  qualified from becoming a citizen, be naturalized before

8  reaching the age of eighteen years upon the petition of the

9  adoptive parent or parents, upon compliance with all the

10  provisions of this title, if the adoptive parent or parents are

11  citizens of the United States, and the child—

12  (1) was lawfully admitted to the United States

13  for permanent residence;

14  (2) was adopted in the United States before attain-

15  ing the age of sixteen years; and

16  (3) subsequent to such adoption has resided con-

17  tinuously in the United States in the legal custody of

18  the adoptive parent or parents for two years prior to

19  the date of filing such petition.

20  FORMER CITIZENS OF UNITED STATES REGAINING UNITED

21  STATES CITIZENSHIP

22  SEC. 324. (a) Any person formerly a citizen of the

23  United States who (1) prior to September 22, 1922, lost

24  United States citizenship by marriage to an alien, or by the

25  loss of United States citizenship of such person's spouse,

197

1 or (2) on or after September 22, 1922, lost United States

2 citizenship by marriage to an alien ineligible to citizenship,

3 may if no other nationality was acquired by an affirmative

4 act of such person other than by marriage be naturalized

5 upon compliance with all requirements of this title, except—

6     (1) no period of residence or specified period of

7     physical presence within the United States or within

8     the State where the petition is filed shall be required;

9     (2) the petition need not set forth that it is the

10     intention of the petitioner to reside permanently within

11     the United States;

12     (3) the petition may be filed in any court having

13     naturalization jurisdiction, regardless of the residence of

14     the petitioner;

15     (4) the petition may be heard at any time after

16     filing if there is attached to the petition at the time of

17     filing a certificate from a naturalization examiner stat-

18     ing that the petitioner has appeared before such exam-

19     iner for examination.

20 Such person, or any person who was naturalized in

21 accordance with the provisions of section 317 (a) of the

22 Nationality Act of 1940, shall have, from and after her

23 naturalization, the status of a native-born or naturalized

24 citizen of the United States, whichever status existed in

25 the case of such person prior to the loss of citizenship:

198

1   *Provided,* That nothing contained herein or in any other

2   provision of law shall be construed as conferring United

3   States citizenship retroactively upon such person, or upon

4   any person who was naturalized in accordance with the

5   provisions of section 317 (a) of the Nationality Act of

6   1940, during any period in which such person was not a

7   citizen.

8       (b) No person who is otherwise eligible for naturaliza-

9   tion in accordance with the provisions of subsection (a) of

10  this section shall be naturalized unless such person shall

11  establish to the satisfaction of the naturalization court that

12  she has been a person of good moral character, attached to

13  the principles of the Constitution of the United States, and

14  well disposed to the good order and happiness of the United

15  States for a period of not less than five years immediately

16  preceding the date of filing a petition for naturalization and

17  up to the time of admission to citizenship, and, unless

18  has resided continuously in the United States since the date

19  of her marriage, has been lawfully admitted for permanent

20  residence prior to filing her petition for naturalization.

21      (c) (1) A woman who was a citizen of the United

22  States at birth and (A) who has or is believed to have lost

23  her United States citizenship solely by reason of her mar-

24  riage prior to September 22, 1922, to an alien, or by her

25  marriage on or after such date to an alien ineligible to

1  citizenship, (B) whose marriage to such alien shall have

2  terminated subsequent to the effective date of this Act, and

3  (C) who has not acquired by an affirmative act other than

4  by marriage any other nationality, shall, from and after tak-

5  ing the oath of allegiance as prescribed in section 337 of this

6  title, be a citizen of the United States and have the status

7  of a citizen of the United States by birth: *Provided*, That

8  nothing contained herein or in any other provision of law

9  shall be construed as conferring United States citizenship

10  retroactively upon such person, or upon any person who was

11  naturalized in accordance with the provisions of section 317

12  (a) of the Nationality Act of 1940, during any period in

13  which such person was not a citizen.

14  (2) Such oath of allegiance may be taken abroad before

15  a diplomatic or consular officer of the United States, or in

16  the United States before the judge or clerk of a naturalization

17  court.

18  (3) Such oath of allegiance shall be entered in the rec-

19  ords of the appropriate embassy, legation, consulate, or nat-

20  uralization court, and, upon demand, a certified copy of the

21  proceedings, including a copy of the oath administered, under

22  the seal of the embassy, legation, consulate, or naturaliza-

23  tion court, shall be delivered to such woman at a cost not

24  exceeding $5, which certified copy shall be evidence of the

25  facts stated therein before any court of record or judicial

200

1   tribunal and in any department or agency of the Govern-

2   ment of the United States.

3       (d) Notwithstanding section 405 (c), any woman

4   who was eligible to regain her United States citizenship

5   under the provisions of section 317 (b) of the Nationality

6   Act of 1940, or under the provisions of the Act of June 25,

7   1936, as amended, who failed to take the oath of allegiance

8   therein prescribed before the effective date of this Act, may

9   regain her United States citizenship by taking, within two

10   years after the effective date of this Act, an oath of allegiance

11   as prescribed in subsection (c) of this section.  Upon taking

12   such oath in the case of a woman whose marriage has termi-

13   nated, such woman shall be deemed to be a citizen of the

14   United States as of June 25, 1936, or as of the date of the

15   termination of such marriage, whichever date is later.  Upon

16   taking such oath in the case of a woman whose marriage

1.   has not terminated, she shall be deemed to be a citizen of

18   the United States as of July 2, 1940.  Any such woman who

19   shall fail to take such oath within the time herein prescribed

20   shall be regarded as having remained an alien from and after

21   the date of her marriage: *Provided*, That nothing contained

22   in this subsection shall be deemed in any way to affect the

23   claim to citizenship, under the Act of June 25, 1936, or

24   citizenship rights flowing therefrom, of any woman who died

25   prior to the effective date of this A .

1   NATIONALS BUT NOT CITIZENS OF THE UNITED STATES;

2   RESIDENCE WITHIN OUTLYING POSSESSIONS

3   SEC. 325. A person not a citizen who owes permanent

4   allegiance to the United States, and who is otherwise quali-

5   fied, may, if he becomes a resident of any State, be natural-

6   ized upon compliance with the applicable requirements of

7   this title, except that in petitions for naturalization filed

8   under the provisions of this section residence and physical

9   presence within the United States within the meaning of

10   this title shall include residence and physical presence within

11   any of the outlying possessions of the United States.

12   RESIDENT FILIPINOS EXCEPTED FROM CERTAIN

13   REQUIREMENTS

14   SEC. 326. Any person who  (1)  was a citizen of the

15   Commonwealth of the Philippines prior to July 4, 1946,

16   (2) entered the United States prior to May 1, 1934, and

17   (3) has, since such entry, resided continuously in the United

18   States shall be regarded as having been lawfully admitted to

19   the United States for permanent residence for the purpose

20   of petitioning for naturalization under this title.

21   FORMER UNITED STATES CITIZENS LOSING CITIZENSHIP

22   BY ENTERING THE ARMED FORCES OF FOREIGN COUN-

23   TRIES DURING WORLD WAR II

24   SEC. 327. (a) Any person who,  (1)  during World

25   War II and while a citizen of the United States, served in

202

1 the military, air, or naval forces of any country at war with

2 a country with which the United States was at war after

3 December 7, 1941, and before September 2, 1945, and (2)

4 has lost United States citizenship by reason of entering or

5 serving in such forces, or taking an oath or obligation for the

6 purpose of entering such forces, may, upon compliance with

7 all the provisions of title III of this Act, except section 316

8 (a), and except as otherwise provided in subsection (b), be

9 naturalized by taking before any naturalization court specified

10 in section 310 (a) of this title the oath prescribed in

11 section 337 of this title.   Certified copies of such oath shall

12 be sent by such court to the Department of State and to the

13 Department of Justice.

14      (b) No person shall be naturalized under subsection

15 (a) of this section unless he—

16          (1) is, and has been for a period of at least five

17      years immediately preceding taking the oath required

18      in subsection (a), a person of good moral character,

19      attached to the principles of the Constitution of the

20      United States and well disposed to the good order and

21      happiness of the United States; and

22          (2) has been lawfully admitted to the United States

23      for permanent residence and intends to reside perma-

24      nently in the United States.

25      (c) Any person naturalized in accordance with the

1  provisions of this section, or any person who was naturalized

2  in accordance with the provisions of section 323 of the

3  Nationality Act of 1940, shall have, from and after such

4  naturalization, the status of a native-born, or naturalized,

5  citizen of the United States, whichever status existed in the

6  case of such person prior to the loss of citizenship: *Pro-*

7  *vided,* That nothing contained herein, or in any other pro-

8  vision of law, shall be construed as conferring United States

9  citizenship retroactively upon any such person during any

10 period in which such person was not a citizen.

11   (d) For the purposes of this section, World War II

12 shall be deemed to have begun on September 1, 1939, and

13 to have terminated on September 2, 1945.

14   (e) This section shall not apply to any person who

15 during World War II served in the armed forces of a country

16 which was at war with the United States at any time during

17 World War II.

18 NATURALIZATION THROUGH SERVICE IN THE ARMED

19                FORCES OF THE UNITED STATES

20   SEC. 328. (a) A person who has served honorably at

21 any time in the armed forces of the United States for a

22 period or periods aggregating three years, and who, if sepa-

23 rated from such service, was never separated except under

24 honorable conditions, may be naturalized without having

25 resided, continuously immediately preceding the date of fil-

204

1    ing such person's petition, in the United States for at least

2    five years, and in the State in which the petition for natu-

3    ralization is filed for at least six months, and without having

4    been physically present in the United States for any speci-

5    fied period, if such petition is filed while the petitioner is

6    still in the service or within six months after the termina-

7    tion of such service.

8        (b) A person filing a petition under subsection (a)

9    of this section shall comply in all other respects with the

10   requirements of this title, except that—

11          (1) no residence within the jurisdiction of the court

12       shall be required;

13          (2) notwithstanding section 336 (c), such peti-

14       tioner may be naturalized immediately if the petitioner

15       be then actually in the armed services of the United

16       States, and if prior to the filing of the petition, the pe-

17       titioner shall have appeared before and been examined

18       by a representative of the service;

19          (3) the petitioner shall furnish to the Attorney

20       General, prior to the final hearing upon his petition,

21       a certified statement from the proper executive de-

22       partment for each period of his service upon which

23       he relies for the benefits of this section, clearly show-

24       ing that such service was honorable and that no dis-

25       charges from service, including periods of service not

205

1 relied upon by him for the benefits of this section, were

2 other than honorable. The certificate or certificates

3 herein provided for shall be conclusive evidence of such

4 service and discharge.

5 (c) In the case such petitioner's service was not con-

6 tinuous, the petitioner's residence in the United States and

7 State, good moral character, attachment to the principles

8 of the Constitution of the United States, and favorable dis-

9 position toward the good order and happiness of the United

10 States, during any period within five years immediately

11 preceding the date of filing such petition between the

12 periods of petitioner's service in the armed services, shall

13 be alleged in the petition filed under the provisions of sub-

14 section (a) of this section, and proved at the final hearing

15 thereon. Such allegation and proof shall also be made as

16 to any period between the termination of petitioner's service

17 and the filing of the petition for naturalization.

18 (d) The petitioner shall comply with the requirements

19 of section 316 (a) of this title, if the termination of such

20 service has been more than six months preceding the date of

21 filing the petition for naturalization, except that such service

22 within five years immediately preceding the date of filing such

23 petition shall be considered as residence and physical pres-

24 ence within the United States.

25 (e) Any such period or periods of service under

1   honorable conditions, and good moral character, attach-

2   nent to the principles of the Constitution of the United

3   States, and favorable disposition toward the good order and

4   happiness of the United States, during such service, shall be

5   proved by duly authenticated copies of the records of the

6   executive departments having custody of the records of such

7   service, and such authenticated copies of records shall be

8   accepted in lieu of compliance with the provisions of section

9   316 (a).

10  NATURALIZATION  THROUGH  ACTIVE-DUTY  SERVICE  IN

11       ARMED  FORCES  DURING  WORLD  WAR  I  OR  WORLD

12       WAR II

13      SEC. 329. (a) Any person who, while an alien or a

14  noncitizen national of the United States, has served

15  honorably in an active-duty status in the military, air, or

16  naval forces of the United States during either World War I

17  or during a period beginning September 1, 1939, and end-

18  ing December 31, 1946, and who, if separated from such

19  service, was separated under honorable conditions, may be

20  naturalized as provided in this section if (1) at the time

21  of enlistment or induction such person shall have been in

22  the United States, the Canal Zone, American Samoa, or

23  Swain's Island, or (2) at any time subsequent to enlistment

24  or induction such person shall have been lawfully admitted to

25  the United States for permanent residence.  The executive

207

1   department under which such person served shall determine

2   whether persons have served honorably in an active-duty

3   status, and whether separation from such service was under

4   honorable conditions: *Provided, however,* That no person who

5   is or has been separated from such service on account of alien-

6   age, or who was a conscientious objector who performed no

7   military, air, or naval duty whatever or refused to wear the

8   uniform, shall be regarded as having served honorably or

9   having been separated under honorable conditions for the

10   purposes of this section.  No period of service in the armed

11   forces shall be made the basis of a petition for naturalization

12   under this section if the applicant has previously been

13   naturalized on the basis of the same period of service.

14       (b) A person filing a petition under subsection (a) of

15   this section shall comply in all other respects with the

16   requirements of this title, except that—

17           (1) he may be naturalized regardless of age, and

18       notwithstanding the provisions of section 331 of this

19       title;

20           (2) no period of residence or specified period of

21       physical presence within the United States or any State

22       shall be required;

23           (3) the petition for naturalization may be filed in

24       any court having naturalization jurisdiction regardless

25       of the residence of the petitioner;

208

1          (4) service in the military, air, or naval forces of

2      the United States shall be proved by a duly authenticated

3      certification from the executive department under which

4      the petitioner served or is serving, which shall state

5      whether the petitioner served honorably in an active-

6      duty status during either World War I or during a period

7      beginning September 1, 1939, and ending December 31,

8      1946, and was separated from such service under honor-

9      able conditions; and

10          (5) notwithstanding section 336 (c) of this title,

11      the petitioner may be naturalized immediately if prior

12      to the filing of the petition the petitioner shall have

13      appeared before and been examined by a representative

14      of the Service.

15      (c) Citizenship granted pursuant to this section may be

16  revoked in accordance with section 340 of this title if at any

17  time subsequent to naturalization the person is separated from

18  the military, air, or naval forces under other than honorable

19  conditions, and such ground for revocation shall be in addi-

20  tion to any other provided by law.   The fact that the natu-

21  ralized person was separated from the service under other

22  than honorable conditions shall be proved by a duly authenti-

23  cated certification from the executive department under

24  which the person was serving at the time of separation.

25      (d) The eligibility for naturalization of any person who

209

1  filed a petition for naturalization prior to January 1, 1947,

2  under section 701 of the Nationality Act of 1940, as amended

3  (56 Stat. 182, 58 Stat. 886, 59 Stat. 658; 8 U. S. C. 1001),

4  and which is still pending on the effective date of this Act,

5  shall be determined in accordance with the provisions of this

6  section.

7  CONSTRUCTIVE RESIDENCE THROUGH SERVICE ON CERTAIN

8  UNITED STATES VESSELS

9      SEC. 330. (a) (1) Any periods of time during all of

10  which a person who was previously lawfully admitted for

11  permanent residence has served honorably or with good

12  conduct, in any capacity other than as a member of the

13  armed forces of the United States, (A) on board a vessel

14  operated by the United States, or an agency thereof, the full

15  legal and equitable title to which is in the United States; or

16  (B) on board a vessel whose home port is in the United

17  States, and (i) which is registered under the laws of the

18  United States, or (ii) the full legal and equitable title to

19  which is in a citizen of the United States, or a corporation

20  organized under the laws of any of the several States of the

21  United States, shall be deemed residence and physical

22  presence within the United States within the meaning of

23  section 316 (a) of this title, if such service occurred within

24  five years immediately preceding the date such person shall

210

1   file a petition for naturalization.  Service on vessels described

2   in clause (A) of this subsection shall be proved by duly

3   authenticated copies of the records of the executive depart-

4   ments or agency having custody of the records of such

5   service.  Service on vessels described in clause (B) of this

6   subsection may be proved by certificates from the masters

7   of such vessels.

8      (2) For the purposes of this subsection, any periods of

9   time prior to September 23, 1950, during all of which any

10   person had—

11      (A) prior to September 23, 1950, served honor-

12      ably or with good conduct for an aggregate period of

13      five years on any vessel described in section 325 (a)

14      of the Nationality Act of 1940 prior to its amendment

15      by the Act of September 23, 1950; or

16      (B) prior to September 23, 1950, served honor-

17      ably or with good conduct on such vessel and was so

18      serving on September 23, 1950,

19   shall be deemed residence and physical presence within the

20   United States within the meaning of section 316 (a) of this

21   title, if such person at any time prior to filing his petition

22   for naturalization shall have been lawfully admitted to the

23   United States for permanent residence and if such petition is

24   file on or before September 23, 1955.

25      (b) Any person who was excepted from certain

211

1 requirements of the naturalization laws under section 325

2 of the Nationality Act of 1940 prior to its amendment by

3 the Act of September 23, 1950, and had filed a petition

4 for naturalization under section 325 of the Nationality Act

5 of 1940, may, if such petition was pending on September

6 23, 1950, and is still pending on the effective date of this

7 Act, be naturalized upon compliance with the applicable

8 provisions of the naturalization laws in effect upon the date

9 such petition was filed.

10     ALIEN ENEMIES; NATURALIZATION UNDER SPECIFIED

11              CONDITIONS AND PROCEDURE

12     SEC. 331. (a)  An alien who is a native, citizen, subject,

13 or denizen of any country, state, or sovereignty with which

14 the United States is at war may, after his loyalty has been

15 fully established upon investigation by the Attorney General,

16 be naturalized as a citizen of the United States if such alien's

17 petition for naturalization shall be pending at the beginning

18 of the state of war and the petitioner is otherwise entitled

19 to admission to citizenship.

20     (b)  An alien embraced within this section shall not

21 have his petition for naturalization called for a hearing, or

22 heard, except after ninety days' notice given by the clerk of

23 the court to the Attorney General to be represented at the

24 hearing, and the Attorney General's objection to such final

1 hearing shall cause the petition to be continued from time to
2 time for so long as the Attorney General may require.

3    (c)  The Attorney General may, in his discretion, upon
4 investigation fully establishing the loyalty of any alien enemy
5 who did not have a petition for naturalization pending at
6 the beginning of the state of war, except such alien enemy
7 from the classification of alien enemy for the purposes of this
8 title, and thereupon such alien shall have the privilege of
9 filing a petition for naturalization.

10    (d)  An alien who is a native, citizen, subject, or denizen
11 of any country, state, or sovereignty with which the United
12 States is at war shall cease to be an alien enemy within the
13 meaning of this section upon the determination by proclama-
14 tion of the President, or by concurrent resolution of the
15 Congress, that hostilities between the United States and such
16 country, state, or sovereignty have ended.  This subsection
17 shall also apply to the case of any such alien whose petition
18 for naturalization was filed prior to the effective date of this
19 Act and which is still pending on that date.

20    (e)  Nothing contained herein shall be taken or con-
21 strued to interfere with or prevent the apprehension and
22 removal, consistent with law, of any alien enemy at any time
23 prior to the actual naturalization of such alien.

213

1    PROCEDURAL AND ADMINISTRATIVE PROVISIONS;

2    EXECUTIVE FUNCTIONS

3    SEC. 332. (a) The Attorney General shall make such
4    rules and regulations as may be necessary to carry into
5    effect the provisions of this title and is authorized to pre-
6    scribe the scope and nature of the examination of petitioners
7    for naturalization as to their admissibility to citizenship for
8    the purpose of makng appropriate recommendations to the
9    naturalization courts.  Such examination shall be limited to
10   inquiry concerning the applicant's residence, physical pres-
11   ence in the United States, good moral character, under-
12   standing of and attachment to the fundamental principles of
13   the Constitution of the United States, ability to read, write,
14   and speak English, and other qualifications to become a
15   naturalized citizen as required by law, and shall be uniform
16   throughout the United States.

17   (b) The Attorney General is authorized to promote in-
18   struction and training in citizenship responsibilities of appli-
19   cants for naturalization including the sending of names of
20   candidates for naturalization to the public schools, prepar-
21   ing and distributing citizenship textbooks to such candi-
22   dates as are receiving instruction in preparation for citizen-
23   ship within or under the supervision of the public schools,

214

1  preparing and distributing monthly an immigration and natu-

2  ralization bulletin and securing the aid of and cooperating

3  with official State and National organizations, including those

4  concerned with vocational education.

5    (c) The Attorney General shall prescribe and furnish

6  such forms as may be required to give effect to the provisions

7  of this chapter, and only such forms as may be so provided

8  shall be legal. All certificates of naturalization and of citi-

9  zenship shall be printed on safety paper and shall be con-

10  secutively numbered in separate series.

11    (d) Employees of the Service may be designated by

12  the Attorney General to administer oaths and to take deposi-

13  tions without charge in matters relating to the administra-

14  tion of the naturalization and citizenship laws. In cases

15  where there is a likelihood of unusual delay of hardship,

16  the Attorney General may, in his discretion, authorize such

17  depositions to be taken before a postmaster without charge,

18  or before a notary public or other person authorized to ad-

19  minister oaths for general purposes.

20    (e) A certificate of naturalization or of citizenship

21  issued by the Attorney General under the authority

22  of this title shall have the same effect in all courts, tribunals,

23  and public offices of the United States, at home and

24  abroad, of the District of Columbia, and of each State, Terri-

25  tory, and insular possession of the United States, as a cer-

215

1  tificate of naturalization or of citizenship issued by a court

2  having naturalization jurisdiction.

3  (f)  Certifications and certified copies of all papers, docu-

4  ments, certificates, and records required or authorized to be

5  issued, used, filed, recorded, or kept under any and all pro-

6  visions of this Act shall be admitted in evidence equally

7  with the originals in any and all cases and proceedings under

8  this Act and in all cases and proceedings in which the orig-

9  inals thereof might be admissible as evidence.

10  (g)  The officers in charge of property owned or leased

11  by the Government are authorized, upon the recommenda-

12  tion of the Attorney General, to provide quarters, without

13  payment of rent, in any building occupied by the Service,

14  for a photographic studio, operated by welfare organizations

15  without profit and solely for the benefit of persons seeking

16  to comply with requirements under the immigration and

17  nationality laws.   Such studio shall be under the supervision

18  of the Attorney General.

19                    PHOTOGRAPHS

20  Sec. 333. (a) Three identical photographs of the ap-

21  plicant shall be signed by and furnished by each petitioner

22  for naturalization or citizenship.   One of such photographs

23  shall be affixed by the clerk of the court to the original

24  certificate of naturalization issued to the naturalized citizen

216

1   and one to the duplicate certificate of naturalization required

2   to be forwarded to the Service.

3      (b)  Three identical photographs of the applicant shall

4   be furnished by each applicant for—

5         (1)  a record of lawful admission for permanent

6      residence to be made under section 249 (a);

7         (2)  a certificate of derivative citizenship;

8         (3)  a certificate of naturalization or of citizenship;

9         (4)  a special certificate of naturalization;

10        (5)  a certificate of naturalization or of citizenship,

11     in lieu of one lost, mutilated, or destroyed; and

12        (6)  a new certificate of citizenship in the new name

13     of any naturalized citizen who, subsequent to naturaliza-

14     tion, has had such citizen's name changed by order of

15     of a court of competent jurisdiction or by marriage.

16     One such photograph shall be affixed to each such cer-

17   tificate issued by the Attorney General and one shall be

18   affixed to the copy of such certificate retained by the

19   Service.

20        PETITION FOR NATURALIZATION—CONTENTS

21     SEC. 334.  (a)  An applicant for naturalization shall

22   make and file in the office of the clerk of a naturalization

23   court, in duplicate, a sworn petition in writing, signed by the

24   applicant in the applicant's own handwriting if physically

25   able to write, which petition shall be on a form prescribed

217

1   by the Attorney General and shall include averments of

2   all facts which in the opinion of the Attorney General may

3   be material to the applicant's naturalization, and required

4   to be proved upon the hearing of such petition.

5       (b) No person shall file a valid petition for naturaliza-

6   tion unless (1) he shall have attained the age of eighteen

7   years and (2) he shall have first filed an application there-

8   for at an office of the Service in the form and manner pre-

9   scribed by the Attorney General.  An application for peti-

10  tion for naturalization by an alien shall contain an averment

11  of lawful admission for permanent residence.

12      (c)  Petitions for naturalization may be made and

13  filed during the term time or vacation of the naturalization

14  court and shall be docketed the same day as filed, but final

15  action thereon shall be had only on stated days, to be fixed

16  by rule of the court.

17      (d) If the applicant for naturalization is prevented by

18  sickness or other disability from presenting himself in the

19  office of the clerk to make the petition required by subsec-

20  tion (a), such applicant may make such petition at such

21  other place as may be designated by the clerk of court or

22  by such clerk's authorized deputy.

23      (e) Before a petition for naturalization may be made

24  outside of the office of the clerk of court, pursuant to sub-

25  section (d) above, or before a final hearing on a petition

1   may be held or the oath of allegiance administered outside

2   of open court, pursuant to sections 336 (a) and 337 (d)

3   respectively of this title, the court must satisfy itself that

4   the illness or other disability is sufficiently serious to prevent

5   appearance in the office of the clerk of the court and is of

6   a permanent nature, or of a nature which so incapacitates

7   the person as to prevent him from personally appearing in

8   the office of the clerk of court or in court as otherwise

9   required by law.

10      INVESTIGATION OF PETITIONERS; PRELIMINARY

11          EXAMINATIONS ON PETITIONS

12      SEC. 335. (a) Prior to the holding of a preliminary

13   examination upon a petition for naturalization provided for

14   by subsection (b), or prior to the final hearing if no such

15   preliminary examination is held, an employee of the Service,

16   or of the United States designated by the Attorney General,

17   shall, unless otherwise directed by the Attorney General in

18   his discretion, conduct a personal investigation of the person

19   petitioning for naturalization in the vicinity or vicinities in

20   which such person has maintained his actual place of abode

21   and in the vicinity or vicinities in which such person has

22   been employed or has engaged in business or work for at least

23   five years immediately preceding the filing of his petition

24   for naturalization.

25      (b) The Attorney General shall designate employees

1  of the Service to conduct preliminary examinations upon

2  petitions for naturalization to any naturalization court and

3  to make recommendations thereon to such court.  For such

4  purposes any such employee so designated is hereby author-

5  ized to take testimony concerning any matter touching

6  or in any way affecting the admissibility of any petitioner

7  for naturalization, to administer oaths, and to require by

8  subpena the attendance and testimony of witnesses, including

9  petitioner, before such employee so designated and the

10  production of relevant books, papers, and documents, and

11  to that end may invoke the aid of any court exercising

12  naturalization jurisdiction as specified in section 310 of

13  this title; and any such court may, in the event of neglect

14  or refusal to respond to a subpena issued by any such

15  employee so designated or refusal to testify before such

16  employee so designated issue an order requiring such person

17  to appear before such employee so designated, produce

18  relevant books, papers, and documents if demanded, and

19  testify; and any failure to obey such order of the court may

20  be punished by the court as a contempt thereof.  The record

21  of the preliminary examination authorized by this subsection

22  shall be admissible as evidence in any final hearing conducted

23  by a naturalization court designated in section 310 of this

24  title.

25      (c) The record of the preliminary examination upon

220

1    any petition for naturalization may be transmitted to the

2    Attorney General and the recommendation with respect

3    thereto of the employee designated to conduct such pre-

4    liminary examination shall when made also be transmitted

5    to the Attorney General.

6        (d) The recommendation of the employee designated

7    to conduct any such preliminary examination shall be sub-

8    mitted to the court at the hearing upon the petition and shall

9    include a recommendation that the petition be granted, or

10   denied, or continued, with reasons therefor.  In any case

11   in which the recommendation of the Attorney General does

12   not agree with that of the employee designated to conduct

13   such preliminary examination, the recommendations of both

14   such employee and the Attorney General shall be submitted

15   to the court at the hearing upon the petition, and the officer

16   of the Service in attendance at such hearing shall, at the

17   request of the court, present both the views of such employee

18   and those of the Attorney General with respect to such

19   petition to the court.  The recommendations of such employee

20   and of the Attorney General shall be accompanied by dupli-

21   cate lists containing the names of the petitioners, classified

22   according to the character of the recommendations, and signed

23   by such employee or the Attorney General, as the case may

24   be.  The judge to whom such recommendations are submitted

25   shall, if he approve such recommendations, enter a written

221

1   order with such exceptions as the judge may deem proper,

2   by subscribing his name to each such list when corrected to

3   conform to his conclusions upon such recommendations.   One

4   of each such lists shall thereafter be filed permanently of

5   record in such court and the duplicate of each such list shall

6   be sent by the clerk of such court to the Attorney General.

7       (e) After the petition for naturalization has been filed

8   in the office of the clerk of the naturalization court, the

9   petitioner shall not be permitted to withdraw his petition,

10  except with the consent of the Attorney General.   In cases

11  where the Attorney General does not consent to withdrawal

12  of the petition, the court shall determine the petition on its

13  merits and enter a final order accordingly.   In cases where

14  the petitioner fails to prosecute his petition, the petition shall

15  be decided upon its merits unless the Attorney General moves

16  that the petition be dismissed for lack of prosecution.

17      (f) As to each period and place of residence in the

18  State in which the petitioner resides at the time of filing the

19  petition, during the entire period of at least six months

20  immediately preceding the date of filing the petition, there

21  shall be included in the petition for naturalization the affi-

22  davits of at least two credible witnesses, citizens of the United

23  States, stating that each has personally known the petitioner

24  to have been a resident at such place for such period, and that

25  the petitioner is and during all such periods has been a person

222

1    of good moral character, attached to the principles of the

2    Constitution of the United States, and well disposed to the

3    good order and happiness of the United States.

4         (g) At the hearing on the petition, residence in the

5    State in which the petitioner resides at the time of filing the

6    petition, for at least six months immediately preceding the

7    date of filing the petition, and the other qualifications required

8    by subsection (a) of section 316 during such residence shall

9    be proved by the oral testimony of at least two credible

10   witnesses, citizens of the United States, in addition to the

11   affidavits required by subsection (f) of this section to be

12   included in the petition.  At the hearing, residence and

13   physical presence within the United States during the five-

14   year period required by section 316 (a), but outside the

15   State, or within the State but prior to the six months imme-

16   diately preceding the date of filing the petition, and the other

17   qualifications required by subsection (a) of section 316 dur-

18   ing such period at such places, shall be proved either by

19   depositions taken in accordance with subsection (d) of section

20   332, or oral testimony, of at least two such witnesses for

21   each place of residence.

22        (h) Notwithstanding the provisions of subsections (f)

23   and (g) of this section, the requirements of subsection (a)

24   of section 316 as to the petitioner's residence, moral char-

25   acter, attachment to the principles of the Constitution of the

223

1  United States, and disposition toward the good order and

2  happiness of the United States may be established by any

3  evidence satisfactory to the naturalization court in those cases

4  under subsection (b) of section 316 in which the alien has

5  been absent from the United States because of his employ-

6  ment by or contract with the Government of the United

7  States or an American institution of research, recognized as

8  such by the Attorney General, or employment by an Ameri-

9  can firm or corporation engaged in whole or in part in the

10  development of foreign trade and commerce of the United

11  States or a subsidiary thereof, or employment by a public

12  international organization in which the United States

13  participates.

14  FINAL HEARING IN OPEN COURT UPON PETITIONS FOR

15      NATURALIZATION; FINAL ORDER UNDER THE HAND

16      OF THE COURT ENTERED UPON RECORD; EXAMINATION

17      OF PETITIONER AND WITNESSES BEFORE THE COURT

18      SEC. 336. (a) Every final hearing upon a petition for

19  naturalization shall be had in open court before a judge or

20  judges thereof, and every final order which may be made

21  upon such petition shall be under the hand of the court and

22  entered in full upon a record kept for that purpose, and

23  upon such final hearing of such petition the petitioner and the

24  witnesses, except as provided in subsection (b) of this sec-

224

1   tion, shall be examined under oath before the court and in

2   the presence of the court.

3       If the petitioner is prevented by sickness or other dis-

4   ability from being in open court for the final hearing upon

5   a petition for naturalization, such final hearing may be had

6   before a judge or judges of the court at such place as may

7   be designated by the court.

8       (b) The requirement of subsection (a) of this section

9   for the examination of the petitioner and the witnesses under

10  oath before the court and in the presence of the court shall

11  not apply in any case where an employee designated under

12  section 335 (b) has conducted the preliminary examination

13  authorized by subsection (b) of section 335; except that

14  the court may, in its discretion, and shall, upon demand

15  of the petitioner, require the examination of the petitioner

16  and the witnesses under oath before the court and in the

17  presence of the court.

18      (c) Except as otherwise specifically provided in this

19  title, no final hearing shall be held on any petition for

20  naturalization nor shall any person be naturalized nor shall

21  any certificate of naturalization be issued by any court within

22  thirty days after the filing of the petition for naturaliza-

23  tion.  Notwithstanding any other provisions of this title, but

24  except as provided in sections 328 (b) (2) and 329

25  (b) (5), in any case in which the final hearing on any peti-

225

1   tion for naturalization is scheduled to be held within sixty

2   days preceding the holding of a general election within the

3   territorial jurisdiction of the naturalization court, such final

4   hearing may be held, but the petitioner shall not be permitted

5   to take the oath required in section 337 (a) of this title prior

6   to the day next following such general election. In any

7   case in which the oath is not taken at the time of the final

8   hearing, the petitioner shall not be a citizen of the United

9   States until such oath has been taken.

10   (d) The Attorney General shall have the right to appear

11   before any court in any naturalization proceedings for the

12   purpose of cross-examining the petitioner and the witnesses

13   produced in support of the petition concerning any matter

14   touching or in any way affecting the petitioner's right to

15   admission to citizenship, and shall have the right to call wit-

16   nesses, including the petitioner, produce evidence, and be

17   heard in opposition to, or in favor of, the granting of any

18   petition in naturalization proceedings.

19   (e) The clerk of court shall, if the petitioner requests

20   it at the time of filing the petition for naturalization, issue

21   a subpena for the witnesses named by such petitioner to

22   appear upon the day set for the final hearing, but in case

23   such witnesses cannot be produced upon the final hearing

24   other witnesses may be summoned upon notice to the At-

S. 716——15

226

1  torney General, in such manner and at such time as the

2  Attorney General may by regulation prescribe.   If it should

3  appear after the petition has been filed that any of the verify-

4  ing witnesses thereto are not competent, and it further ap-

5  pears that the petitioner has acted in good faith in produc-

6  ing such witnesses found to be incompetent, other witnesses

7  may be substituted in accordance with such regulations.

8      (f)  It shall be lawful at the time and as a part of the

9  naturalization of any person, for the court, in its discretion,

10  upon the prayer of the petitioner included in the petition

11  for naturalization of such person, to make a decree changing

12  the name of said person, and the certificate of naturalization

13  shall be issued in accordance therewith.

14              OATH OF RENUNCIATION AND ALLEGIANCE

15  SEC. 337.  (a)  A person who has petitioned for natural-

16  ization shall, in order to be and before being admitted to

17  citizenship, take in open court the oath set forth in sub-

18  section (b) of this section (1) to support the Constitution

19  of the United States; (2) to renounce and abjure abso-

20  lutely and entirely all allegiance and fidelity to any foreign

21  prince, potentate, state, or sovereignty of whom or which

22  the petitioner was before a subject or citizen; (3) to sup-

23  port and defend the Constitution and the laws of the United

24  States against all enemies, foreign and domestic; (4) to

25  bear true faith and allegiance to the same; and (5) to

227

1   bear arms on behalf of the United States when required

2   by law, and to perform noncombatant service in the armed

3   forces of the United States when required by law, and to

4   perform work of national importance under civilian direc-

5   tion when required by law: *Provided,* That in the case of

6   the naturalization of a child under the provisions of section

7   322 or 323 of this title the naturalization court may waive

8   the taking of the oath if in the opinion of the court the child

9   is unable to understand its meaning.

10   (b) As provided in subsection (a) of this section, the

11   petitioner for naturalization shall take the following oath:

12   I hereby declare, on oath, that I absolutely and en-

13   tirely renounce and abjure all allegiance and fidelity to any

14   foreign prince, potentate, state, or sovereignty of whom or

15   which I have heretofore been a subject or citizen; that I

16   will support and defend the Constitution and laws of the

17   United States of America against all enemies, foreign and

18   domestic; that I will bear true faith and allegiance to the

19   same; that I will bear arms on behalf of the United States

20   when required by law, and that I will perform noncom-

21   batant service in the armed forces of the United States

22   when required by law, and that I will perform work of

23   national importance under civilian direction when required

24   by law; and that I take this obligation freely without any

25   mental reservation or purpose of evasion: So help me God.

228

1 In acknowledgment whereof I have hereunto affixed my
2 signature.

3 (c) In case the person petitioning for naturalization
4 has borne any hereditary title, or has been of any of the
5 orders of nobility in any foreign state, the petitioner shall
6 in addition to complying with the requirements of subsec-
7 tions (a) and (b) of this section, make under oath in open
8 court in the court in which the petition for naturalization is
9 made, an express renunciation of such title or order of
10 nobility, and such renunciation shall be recorded in the court
11 as a part of such proceedings

12 (d) If the petitioner is prevented by sickness or other
13 disability from being in open court, the oath required to be
14 taken by subsection (a) of this section may be taken before
15 a judge of the court at such place as may be designated by
16 the court.

17 CERTIFICATE OF NATURALIZATION; CONTENTS

18 SEC. 338. A person admitted to citizenship by a
19 naturalization court in conformity with the provisions of
20 this title shall be entitled upon such admission to receive
21 from the clerk of such court a certificate of naturalization,
22 which shall contain substantially the following information:
23 Number of petition for naturalization; number of certificate
24 of naturalization; date of naturalization; name, signature,
25 place of residence, autographed photograph, and personal

229

1  description of the naturalized person, including age, sex,

2  marital status, and country of former nationality; title,

3  venue, and location of the naturalization court; statement

4  that the court, having found that the petitioner intends to

5  reside permanently in the United States, had complied in all

6  respects with all of the applicable provisions of the naturali-

7  zation laws of the United States, and was entitled to be ad-

8  mitted a citizen of the United States of America, there-

9  upon ordered that the petitioner be admitted as a citizen of

10  the United States of America; attestation of the clerk of

11  the naturalization court; and seal of the court.

12              FUNCTIONS AND DUTIES OF CLERKS

13      SEC. 339.  (a)  It shall be the duty of the clerk of each

14  and every naturalization court to forward to the Attorney

15  General a duplicate of each petition for naturalization within

16  thirty days after the close of the month in which such peti-

17  tion was filed, and to forward to the Attorney General certi-

18  fied copies of such other proceedings and orders instituted in

19  or issued out of said court affecting or relating to the naturali-

20  zation of persons as may be required from time to time by the

21  Attorney General.

22      (b)  It shall be the duty of the clerk of each and every

23  naturalization court to issue to any person admitted by such

24  court to citizenship a certificate of naturalization and to for-

25  ward to the Attorney General within thirty days after the

1 close of the month in which such certificate was issued, a

2 duplicate thereof, and to make and keep on file in the clerk's

3 office a stub for each certificate so issued, whereon shall be

4 entered a memorandum of all the essential facts set forth in

5 such certificate, and to forward a duplicate of each such stub

6 to the Attorney General within thirty days after the close of

7 the month in which such certificate was issued.

8 (c) It shall be the duty of the clerk of each and every

9 naturalization court to report to the Attorney General, within

10 thirty days after the close of the month in which the final

11 hearing and decision of the court was had, the name and

12 number of the petition of each and every person who shall

13 be denied naturalization together with the cause of such

14 denial.

15 (d) Clerks of courts shall be responsible for all blank

16 certificates of naturalization received by them from time

17 to time from the Attorney General, and shall account to the

18 Attorney General for them whenever required to do so.  No

19 certificate of naturalization received by any clerk of court

20 which may be defaced or injured in such manner as to pre-

21 vent its use as herein provided shall in any case be destroyed,

22 but such certificates shall be returned to the Attorney

23 General.

24 (e) It shall be the duty of the clerk of each and every

25 naturalization court to cause to be filed in chronological order

231

1   in separate volumes, indexed, consecutively numbered, and

2   made a part of the records of such court, all petitions for

3   naturalization.

REVOCATION OF NATURALIZATION

4

5   SEC. 340. (a) It shall be the duty of the United States

6   district attorneys for the respective districts, upon affidavit

7   showing good cause therefor, to institute proceedings in any

8   court specified in subsection (a) of section 310 of this title

9   in the judicial district in which the naturalized citizen may

10  reside at the time of bringing suit, for the purpose of revok-

11  ing and setting aside the order admitting such person to

12  citizenship and canceling the certificate of naturalization on

13  the ground that such order and certificate of naturalization

14  were procured by concealment of a material fact or by willful

15  misrepresentation.

16      (b) The party to whom was granted the naturalization

17  alleged to have been procured by concealment of a material

18  fact or by willful misrepresentation shall, in any such pro-

19  ceedings under subsection (a) of this section, have sixty

20  days' personal notice in which to make answer to the petition

21  of the United States; and if such naturalized person be absent

22  from the United States or from the judicial district in which

23  such person last had his residence, such notice shall be given

24  either by personal service upon him or by publication in the

25  manner provided for the service of summons by publication

232

1   or upon absentees by the laws of the State or the place where

2   such suit is brought.

3      (c) If a person who shall have been naturalized after

4   January 1, 1951, shall within five years next following such

5   naturalization—

6       (1) become a member of or affiliated with any

7      organization, membership in or affiliation with which at

8      the time of naturalization would have precluded such

9      person from naturalization under the provisions of sec-

10     tion 313; or

11      (2) become a member of any organization, mem-

12     bership in which at the time of naturalization would have

13     raised the presumption that such person was not attached

14     to the principles of the Constitution of the United States

15     and not well disposed to the good order and happiness

16     of the United States, under the provisions of section

17     316 (f),

18   it shall be considered prima facie evidence that such person

19   was not attached to the principles of the Constitution of the

20   United States and was not well disposed to the good order

21   and happiness of the United States at the time of naturaliza-

22   tion, and, in the absence of countervailing evidence, it shall

23   be sufficient in the proper proceeding to authorize the revoca-

24   tion and setting aside of the order admitting such person to

25   citizenship and the cancellation of the certificate of natural-

233

1   ization as having been obtained by concealment of a material

2   fact or by willful misrepresentation.

3       (d) If a person who shall have been naturalized shall,

4   within five years after such naturalization, return to the

5   country of his nativity, or go to any other foreign country,

6   and take permanent residence therein, it shall be considered

7   prima facie evidence of a lack of intention on the part of

8   such person to reside permanently in the United States

9   at the time of filing his petition for naturalization, and, in

10   the absence of countervailing evidence, it shall be sufficient

11   in the proper proceeding to authorize the revocation and

12   setting aside of the order admitting such person to citizenship

13   and the cancellation of the certificate of naturalization as

14   having been obtained by concealment of a material fact or

15   by willful misrepresentation.  The diplomatic and consular

16   officers of the United States in foreign countries shall from

17   time to time, through the Department of State, furnish the

18   Department of Justice with statements of the names of those

19   persons within their respective jurisdictions who have been

20   so naturalized and who have taken permanent residence in

21   the country of their nativity, or in any other foreign country,

22   and such statements, duly certified, shall be admissible in

23   evidence in all courts in proceedings to revoke and set aside

24   the order admitting to citizenship and to cancel the certificate

25   of naturalization.

1    · (e) Any person who (1) claims United States citizen-

2    ship through the naturalization of a parent or spouse whose

3    citizenship has been voided, before or after the effective

4    date of this Act, by revoking and setting aside the order

5    admitting such parent or spouse to citizenship, and can-

6    celing his certificate of naturalization, under the provisions

7    of subsection (a), (c), (d), or (g) of this section or of

8    section 329 (c) of this title, or under the provisions of

9    section 338 of the Nationality Act of 1940, or under the

10   provisions of section 15 of the Act of June 29, 1906, as

11   amended (34 Stat. 601), and (2) has his residence within

12   the United States at the time such naturalization is revoked,

13   or has his residence within the United States on the effective

14   date of this Act in cases where such naturalization has been

15   previously revoked, shall not be deemed to have lost citizen-

16   ship or any right or privilege of citizenship which would have

17   been enjoyed by such person had such naturalization not been

18   revoked.

19   (f) Notwithstanding the provisions of any other law

20   heretofore enacted, any person who (1) claims United States

21   citizenship through the naturalization of a parent or spouse

22   whose citizenship has been voided, prior to the effective date

23   of this Act, by revocation and setting aside the order admit-

24   ting such parent or spouse to citizenship and cancellation

25   of his certificate of naturalization on the ground of actual

235

1  fraud, under the provisions of section 338 (a) of the Nation-

2  ality Act of 1940 or under the provisions of section 15 of the

3  Act of June 29, 1906, and (2) has his residence outside

4  the United States upon the effective date of this Act, shall

5  be deemed to have lost his citizenship and any right or

6  privilege of citizenship as of the date the naturalization of

7  such parent or spouse was revoked.

8      (g) When a person shall be convicted under section

9  1425 of title 18 of the United States Code of knowingly

10  procuring naturalization in violation of law, the court in

11  which such conviction is had shall thereupon revoke, set

12  aside, and declare void the final order admitting such person

13  to citizenship, and shall declare the certificate of naturaliza-

14  tion of such person to be canceled.  Jurisdiction is hereby

15  conferred on the courts having jurisdiction of the trial of

16  such offense to make such adjudication.

17      (h) Whenever an order admitting an alien to citizen-

18  ship shall be revoked and set aside or a certificate of nat-

19  uralization shall be canceled, or both, as provided in this

20  section, the court in which such judgment or decree is ren-

21  dered shall make an order canceling such certificate and

22  shall send a certified copy of such order to the Attorney Gen-

23  eral.  In case such certificate was not originally issued by the

24  court making such order, it shall direct the clerk of the

25  naturalization court in which the order is revoked and set

236

1    aside to transmit a copy of such order and judgment to the

2    court out of which such certificate of naturalization shall have

3    been originally issued.  It shall thereupon be the duty of the

4    clerk of the court receiving such certified copy of the order

5    and judgment of the court to enter the same of record and to

6    cancel such original certificate of naturalization, if there be

7    any, upon the record and to notify the Attorney General

8    of the entry of such order and of such cancellation.  A per-

9    son holding a certificate of naturalization or citizenship

10   which has been canceled as provided by this section shall

11   upon notice by the court by which the decree of cancellation

12   was made, or by the Attorney General, surrender the same

13   to the Attorney General.

14        (i) The provisions of this section shall apply not only

15   to any naturalization granted and to certificates of naturaliza-

16   tion and citizenship issued under the provisions of this title,

17   but to any naturalization heretofore granted by any court, and

18   to all certificates of naturalization and citizenship which may

19   have been issued heretofore by any court or by the Commis-

20   sioner based upon naturalization granted by any court, or by

21   a designated representative of the Commissioner under the

22   provisions of section 702 of the Nationality Act of 1940,

23   as amended.

237

1    CERTIFICATES OF CITIZENSHIP; PROCEDURE

2    SEC. 341. A person who claims to have derived United

3    States citizenship through the naturalization of a parent or

4    through the naturalization or citizenship of a husband, or

5    who is a citizen of the United States by virtue of the pro-

6    visions of section 1993 of the United States Revised

7    Statutes, or of section 1993 of the United States Revised

8    Statutes, as amended by section 1 of the Act of May 24,

9    1934 (48 Stat. 797), or who is a citizen of the United

10   States by virtue of the provisions of section 201 (c), (d),

11   (e), (g), and (i) of the Nationality Act of 1940, as

12   amended (54 Stat. 1138; U. S. C., title 8, sec. 601), or

13   of the Act of May 7, 1934 (48 Stat. 667), or of para-

14   graphs (3), (4), (5), and (7) of section 301 (a) of this

15   title, or under the provisions of the Act of August 4, 1937

16   (50 Stat. 558), or under the provisions of section 203 of

17   the Nationality Act of 1940 (54 Stat. 1139, 8 U. S. C.

18   603), or under the provisions of section 303 of this title,

19   may apply to the Attorney General for a certificate of citi-

20   zenship.  Upon proof to the satisfaction of the Attorney

21   General that the applicant is a citizen, and that the appli-

22   cant's alleged citizenship was derived as claimed, or acquired,

23   as the case may be, and upon taking and subscribing before

238

1    a member of the Service within the United States to the

2    oath of allegiance required by this Act of a petitioner for

3    naturalization, such individual shall be furnished by the

4    Attorney General with a certificate of citizenship, but only

5    if such individual is at the time within the United States.

6    REVOCATION OF CERTIFICATES ISSUED BY THE ATTORNEY

7        GENERAL, THE COMMISSIONER OR A DEPUTY COMMIS-

8        SIONER; ACTION NOT TO AFFECT CITIZENSHIP STATUS

9        SEC. 342. The Attorney General is authorized to can-

10    cel any certificate of citizenship, certificate of naturalization,

11    copy of a declaration of intention, or other certificate, docu-

12    ment or record heretofore issued or made by the Commis-

13    sioner or a Deputy Commissioner or hereafter made by the

14    Attorney General if it shall appear to the Attorney General's

15    satisfaction that such document or record was illegally or

16    fraudulently obtained from, or was created through illegality

17    or by fraud practiced upon him or upon the Commissioner

18    or a Deputy Commissioner; but the person for or to whom

19    such document or record has been issued or made shall be

20    given at such person's last-known place of address written

21    notice of the intention to cancel such document or record

22    with the reasons therefor and shall be given at least sixty

23    days in which to show cause why such document or record

24    should not be canceled.  The cancellation of any document

25    purporting to show the citizenship status of the person to

239

1   whom it was issued shall affect only the document and not

2   the citizenship status of the person in whose name the

3   document was issued.

4   DOCUMENTS AND COPIES ISSUED BY THE ATTORNEY

5   GENERAL

6   SEC. 343. (a) A person who claims to have been

7   naturalized in the United States under section 323 of the

8   Nationality Act of 1940, or under section 327 of this title,

9   may make application to the Attorney General for a certifi-

10  cate of naturalization. Upon proof to the satisfaction of the

11  Attorney General that the applicant is a citizen and that he

12  has been naturalized as claimed in the application, such indi-

13  vidual shall be furnished a certificate of naturalization by

14  the Attorney General, but only if the applicant is at the time

15  within the United States.

16  (b) If any certificate of naturalization or citizenship

17  issued to any citizen or any declaration of intention fur-

18  nished to any declarant is lost, mutilated, or destroyed,

19  the citizen or declarant may make application to the

20  Attorney General for a new certificate or declaration. If the

21  Attorney General finds that the certificate or declaration

22  is lost, mutilated, or destroyed, he shall issue to the applicant

23  a new certificate or declaration. If the certificate or declara-

24  tion has been mutilated, it shall be surrendered to the

25  Attorney General before the applicant may receive such

240

1  new certificate or declaration.  If the certificate or declara-

2  tion has been lost, the applicant or any other person who

3  may come into possession of it is hereby required to surrender

4  it to the Attorney General.

5      (c) The Attorney General shall issue for any nat-

6  uralized citizen, on such citizen's application therefor, a

7  special certificate of naturalization for use by such citizen

8  only for the purpose of obtaining recognition as a citizen

9  of the United States by a foreign state.  Such certificate

10  when issued shall be furnished to the Secretary of State for

11  transmission to the proper authority in such foreign state.

12      (d) If the name of any naturalized citizen has, subse-

13  quent to naturalization, been changed by order of any court

14  of competent jurisdiction, or by marriage, the citizen may

15  make application for a new certificate of naturalization in

16  the new name of such citizen.  If the Attorney General

17  finds the name of the applicant to have been changed as

18  claimed, the Attorney General shall issue to the applicant

19  a new certificate and shall notify the naturalization court of

20  such action.

21      (e) The Attorney General is authorized to make and

22  issue, certifications of any part of the naturalization records

23  of any court, or of any certificate of naturalization or citizen-

24  ship, for use in complying with any statute, State or Federal,

25  or in any judicial proceeding.  No such certification shall

241

1  be made by any clerk of court except upon order of the

2  court.

<center>FISCAL PROVISIONS</center>

3

4  SEC. 344. (a) The clerk of each and every naturaliza-

5  tion court shall charge, collect, and account for the following

6  fees:

7      (1) For making, filing, and docketing a petition for

8  naturalization, $10, including the final hearing on such peti-

9  tion, if such hearing be held, and a certificate of naturaliza-

10  tion, if the issuance of such certificate is authorized by the

11  naturalization court.

12      (b) The Attorney General shall charge, collect, and ac-

13  count for the following fees:

14      (1) For application for a certificate of naturalization

15  or declaration of intention in lieu of a certificate or declara-

16  tion alleged to have been lost, mutilated, or destroyed, $5.

17      (2) For application for a certificate of citizenship, $5.

18      (3) For application for the issuance of a special cer-

19  tificate of citizenship to obtain recognition, $5.

20      (4) For application for a certificate of naturalization

21  under section 323 of the Nationality Act of 1940, or under

22  section 327 or section 343 (a) of this title, $5.

23      (5) For application for a certificate of citizenship in

24  changed name, $5.

242

1    (6) Reasonable fees in cases where such fees have

2   not been established by law, to cover the cost of furnishing

3   copies, whether certified or uncertified, of any part of the

4   records, or information from the records, of the Service.

5   Such fees shall not exceed a maximum of 25 cents per folio

6   of one hundred words, with a minimum fee of 50 cents for

7   any one such service, in addition to a fee of $1 for any

8   official certification furnished under seal.   No such fee shall

9   be required from officers or agencies of the United States

10  or of any State or any subdivision thereof, for such copies or

11  information furnished for official use in connection with the

12  official duties of such officers or agencies.

13   (7) Notwithstanding the preceding provisions of this

14  subsection, no fee shall be charged or collected for an applica-

15  tion for declaration of intention or a certificate of naturaliza-

16  tion in lieu of a declaration or a certificate alleged to have

17  been lost, mutilated, or destroyed, submitted by a person who

18  was a member of the military or naval forces of the United

19  States at any time after April 20, 1898, and before July 5,

20  1902; or at any time after April 5, 1917, and before No-

21  vember 12, 1918; or who served on the Mexican border as

22  a member of the Regular Army or National Guard between

23  June 1916 and April 1917; or who has served or hereafter

24  serves in the military, air, or naval forces of the United

25  States after September 16, 1940, and who was not at any

243

1  time during such period or thereafter separated from such
2  forces under other than honorable conditions, who was not
3  a conscientious objector who performed no military duty
4  whatever or refused to wear the uniform, or who was not at
5  any time during such period or thereafter discharged from
6  such military, air, or naval forces on account of alienage.

7  (c) The clerk of any naturalization court specified in
8  subsection (a) of section 310 (except the courts specified
9  in subsection (d) of this section) shall account for and pay
10  over to the Attorney General one-half of all fees up to
11  the sum of $6,000, and all fees in excess of $6,000, col-
12  lected by any such clerk in naturalization proceedings in
13  any fiscal year.

14  (d) The clerk of any United States district court (ex-
15  cept in Alaska and in the District Court of the Virgin
16  Islands of the United States) shall account for and pay
17  over to the Attorney General all fees collected by any
18  such clerk in naturalization proceedings.

19  (e) The accounting required by subsections (c) and
20  (d) of this section shall be made and the fees paid over to
21  the Attorney General by such respective clerks in their quar-
22  terly accounts which they are hereby required to render to
23  the Attorney General within thirty days from the close of
24  each quarter of each and every fiscal year, in accordance
25  with regulations prescribed by the Attorney General.

244

1      (f) The clerks of the various naturalization courts shall

2   pay all additional clerical force that may be required in

3   performing the duties imposed by this title upon clerks of

4   courts from fees retained under the provisions of this section

5   by such clerks in naturalization proceedings.

6      (g) All fees collected by the Attorney General and all

7   fees paid over to the Attorney General by clerks of naturali-

8   zation courts under the provisions of this title shall be de-

9   posited by the Attorney General in the Treasury of the

10   United States.

11      (h) During the time when the United States is at war

12   no clerk of a United States court shall charge or collect a

13   naturalization fee from an alien in the military, air, or

14   naval service of the United States for filing a petition for

15   naturalization or issuing a certificate of naturalization upon

16   admission to citizenship, and no clerk of any State court shall

17   charge or collect any fee for such services unless the laws

18   of the State require such charge to be made, in which case

19   nothing more than the portion of the fee required to be paid

20   to the State shall be charged or collected.  A report of all

21   transactions under this subsection shall be made to the

22   Attorney General as in the case of other reports required of

23   clerks of courts by this title.

24      (i) In addition to the other fees required by this title,

25   the petitioner for naturalization shall, upon the filing of a

1   petition for naturalization, deposit with and pay to the clerk

2   of the naturalization court a sum of money sufficient to cover

3   the expenses of subpenaing and paying the legal fees of any

4   witnesses for whom such petitioner may request a subpena,

5   and upon the final discharge of such witnesses, they shall

6   receive, if they demand the same from the clerk, the cus-

7   tomary and usual witness fees from the moneys which the

8   petitioner shall have paid to such clerk for such purpose,

9   and the residue, if any, shall be returned by the clerk to

10   the petitioner.

11   MAIL RELATING TO NATURALIZATION TRANSMITTED FREE

12       OF POSTAGE AND REGISTERED

13       SEC. 345. All mail matter of whatever class, relating

14   to naturalization, including duplicate papers required by law

15   or regulation to be sent to the Service by clerks of courts

16   addressed to the Department of Justice or the Service, or

17   any official thereof, and endorsed "Official Business", shall

18   be transmitted free of postage and by registered mail if neces-

19   sary, and so marked.

20   AUTHORIZATION GRANTED FOR PUBLICATION AND DIS-

21       TRIBUTION OF CITIZENSHIP TEXTBOOKS FROM NAT-

22       URALIZATION FEES

23       SEC. 346. Authorization is hereby granted for the pub-

24   lication and distribution of the citizenship textbook described

25   in subsection (b) of section 332 and for the reimbursement

1    of the printing and binding appropriation of the Department

2    of Justice upon the records of the Treasury Department from

3    the naturalization fees deposited in the Treasury through the

4    Service for the cost of such publication and distribution, such

5    reimbursement to be made upon statements by the Attorney

6    General of books so published and distributed.

7    COMPILATION OF NATURALIZATION STATISTICS AND

8             PAYMENT FOR EQUIPMENT

9        SEC. 347. The Attorney General is authorized and di-

10   rected to prepare from the records in the custody of the Serv-

11   ice a rep.˙ upon those heretofore seeking citizenship to show

12   by nationalities their relation to the numbers of aliens annu-

13   ally arriving and to the prevailing census populations of the

14   foreign-born, their economic, vocational, and other classifica-

15   tion, in statistical form, with analytical comment thereon,

16   and to prepare such report annually hereafter.  Payment for

17   the equipment used in preparing such compilaton shall be

18   made from the appropriation for the enforcement of this

19   Act by the Service.

20   ADMISSIBILITY IN EVIDENCE OF TESTIMONY AS TO STATE-

21      MENTS VOLUNTARLY MADE TO OFFICERS OR EM-

22      PLOYEES IN THE COURSE OF THEIR OFFICIAL DUTIES

23       SEC. 348. (a) It shall be lawful and admissible as

24   evidence in any proceedings founded under this title, or any

25   of the penal or criminal provisions of any law relating to

247

1  immigration, naturalization, or citizenship, for any officer or

2  employee of the United States to render testimony as to

3  any statement voluntarily made to such officer or employee

4  in the course of the performance of the official duties of such

5  officer or employee by any defendant at the time or sub-

6  sequent to the alleged commission of any crime or offense

7  which may tend to show that such defendant did not have

8  or could not have had knowledge of any matter concerning

9  which such defendant is shown to have made affidavit, or

10  oath, or to have been a witness pursuant to such law or laws.

11    (b) In case any clerk of court shall refuse or neglect

12  to comply with any of the provisions of section 339 (a),

13  (b), or (c), such clerk of court shall forfeit and pay to

14  the United States the sum of $25 in each and every case in

15  which such violation or omission occurs, and the amount

16  of such forfeiture may be recovered by the United States in

17  a civil action against such clerk.

18    (c) If any clerk of court shall fail to return to the

19  Service or properly account for any certificate of naturaliza-

20  tion furnished by the Service as provided in subsection (d)

21  of section 339, such clerk of court shall be liable to the

22  United States in the sum of $50, to be recovered in a civil

23  action, for each and every such certificate not properly

24  accounted for or returned.

248

1    CHAPTER 3—LOSS OF NATIONALITY

2    LOSS OF NATIONALITY BY NATIVE-BORN OR NATURALIZED

3                          CITIZEN

4        SEC. 349. From and after the effective date of this

5    Act a person who is a national of the United States,

6    whether by birth or naturalization, shall lose his nationality

7    by—

8            (1)  obtaining naturalization in a foreign state upon

9        his own application, upon an application filed in his

10       behalf by a parent, guardian, or duly authorized agent,

11       or through the naturalization of a parent having legal

12       custody of such person: *Provided,* That nationality shall

13       not be lost by any person under this section as the result

14       of the naturalization of a parent or parents while such

15       person is under the age of twenty-one years, or as

16       the result of a naturalization obtained on behalf of a

17       person under twenty-one years of age by a parent,

18       guardian, or duly authorized agent, unless such person

19       shall fail to enter the United States to establish a

20       permanent residence prior to his twenty-third birthday:

21       *And provided further,* That a person who shall have lost

22       nationality prior to January 1, 1948, through the nat-

23       uralization in a foreign state of a parent or parents, may,

24       within one year from the effective date of this Act,

25       apply for a visa and for admission to the United States

249

1   as a nonquota immigrant under the privisions of section

2   101 (a) (26) (E) ; or

3   (2) taking an oath or making an affirmation or

4   other formal declaration of allegiance to a foreign state

5   or a political subdivision thereof: *Provided,* That a

6   person who holds or shall hold an office, post, or em-

7   ployment under the government of a foreign state or a

8   political subdivision thereof for which office, post, or

9   employment an oath, affirmation, or declaration of alle-

10   giance is required, shall be conclusively presumed to

11   have taken an oath within the meaning of this para-

12   graph; or

13   (3) entering, or serving in, the armed forces of a

14   foreign state unless, prior to such entry or service, such

15   entry or service is specifically authorized in writing

16   by the Secretary of State and the Secretary of Defense:

17   *Provided,* That the entry into such service by a person

18   prior to the attainment of his eighteenth birthday shall

19   serve to expatriate such person only if there exists an

20   option to secure a release from such service and such

21   person fails to exercise such option at the attainment

22   of his eighteenth birthday; or

23   (4) accepting, serving in, or performing the duties

24   of any office, post, or employment under the govern-

25   ment    a foreign state or a political subdivision thereof,

250

1 if he has or acquires the nationality of such foreign

2 state; or

3  (5) voting in a political election in a foreign state

4 or participating in an election or plebiscite to determine

5 the sovereignty over foreign territory; or

6  (6) making a formal renunciation of nationality

7 before a diplomatic or consular officer of the United

8 States in a foreign state, in such form as may be pre-

9 scribed by the Secretary of State; or

10  (7) making in the United States a formal written

11 renunciation of nationality in such form as may be

12 prescribed by, and before such officer as may be desig-

13 nated by, the Attorney General, whenever the United

14 States shall be in a state of war and the Attorney

15 General shall approve such renunciation as not contrary

16 to the interests of national defense; or

17  (8) deserting the military, air, or naval forces of

18 the United States in time of war, if and when he is

19 convicted thereof by court martial and as the result of

20 such conviction is dismissed or dishonorably discharged

21 from the service of such military, air, or naval forces:

22 *Provided*, That, notwithstanding loss of nationality or

23 citizenship under the terms of this or previous laws by

24 reason of desertion committed in time of war, restora-

25 tion to active duty with such military, air, or naval

1  forces in time of war or the reenlistment or induction of

2  such a person in time of war with permission of com-

3  petent military, air, or naval authority shall be deemed

4  to have the immediate effect of restoring such nationality

5  or citizenship heretofore or hereafter so lost; or

6      (9) committing any act of treason against, or at-

7  tempting by force to overthrow, or bearing arms against,

8  the United States, if and when he is convicted thereof

9  by a court martial or by a court of competent jurisdic-

10  tion; or

11      (10) departing from or remaining outside of the

12  jurisdiction of the United States in time of war or during

13  a period declared by the President to be a period of

14  national emergency for the purpose of evading or avoid-

15  ing training and service in the military, air, or naval

16  forces of the United States. For the purposes of this

17  paragraph failure to comply with any provision of any

18  compulsory service laws of the United States shall raise

19  the presumption that the departure from or absence from

20  the United States was for the purpose of evading or

21  avoiding training and service in the military, air, or

22  naval forces of the United States.

23      **DIVESTITURE OF FOREIGN NATIONALITY**

24      SEC. 350. A person who acquired at birth the nationality

25  of the United States and of a foreign state and who has

252

1   not succeeded in legally divesting himself of the nationality

2   of the foreign state shall hereafter lose his United States

3   nationality by having a continuous residence at any time

4   for three years in the foreign state of which he is a national

5   by birth after attaining the age of twenty-two years unless

6   he shall—

7       (1) prior to the expiration of such three-year

8       period, take an oath of allegiance to the United States

9       and abjure any foreign allegiance before a United States

10      diplomatic or consular officer in a manner prescribed

11      by the Secretary of State; and

12      (2) have his residence outside of the United States

13      solely for one of the reasons set forth in paragraph

14      (1), (2), (4), (5), (6), (7), or (8) of section 353,

15      or paragraph (1) or (2) of section 354 of this title:

16      *Provided, however,* That nothing contained in this sec-

17      tion shall deprive any person of his United States

18      nationality if his foreign residence shall begin after he

19      shall have attained the age of sixty-five years and shall

20      have had his residence in the United States for twenty-

21      five years after having attained the age of eighteen years.

22                    RESTRICTIONS ON EXPATRIATION

23   SEC. 351. (a) Except as provided in paragraphs (7),

24   (8), and (9) of section 349 of this title, no national of the

25   United States can expatriate himself, or be expatriated, under

253

1  this Act while within the United States or any of its outlying

2  possessions, but expatriation shall result from the perform-

3  ance within the United States or any of its outlying posses-

4  sions of any of the acts or the fulfillment of any of the

5  conditions specified in this chapter if and when the national

6  thereafter takes up a residence outside the United States

7  and its outlying possessions.

8      (b)  A national who within six months after attaining

9  the age of eighteen years asserts his claim to United States

10  nationality, in such manner as the Secretary of State shall

11  by regulation prescribe, shall not be deemed to have ex-

12  patriated himself by the commission, prior to his eighteenth

13  birthday, of any of the acts specified in paragraphs (2),

14  (4), (5), and (6) of section 349 of this title.

15  LOSS OF NATIONALITY BY NATURALIZED NATIONAL

16      SEC. 352. (a) A person who has become a national

17  by naturalization shall lose his nationality by—

18      (1) having a continuous residence for three years

19      in the territory of a foreign state of which he was for-

20      merly a national or in which the place of his birth is

21      situated, except as provided in section 353 of this title,

22      whether such residence commenced before or after the

23      effective date of this Act;

24      (2) having a continuous residence for five years

25      in any other foreign state or states, except as provided

1     in sections 353 and 354 of this title, whether such resi-

2     dence commenced before or after the effective date of

3     this Act.

4     (b) For the purposes of this section, the time during

5 which the person had his residence abroad solely or princi-

6 pally for a reason or purpose within the scope of any pro-

7 vision of section 353 or of sections 353 and 354 shall not

8 be counted in computing quantum of residence for the pur-

9 pose of paragraph (1) or paragraph (2), respectively, of

10 subsection (a) of this section.

11 SECTION 352 NOT EFFECTIVE AS TO CERTAIN PERSONS

12     SEC. 353. Section 352 (a) shall have no application to

13 a national who—

14     (1) has his residence abroad in the employment of

15     the Government of the United States; or

16     (2) is receiving compensation from the Govern-

17     ment of the United States and has his residence abroad

18     on account of disability incurred in its service; or

19     (3) shall have had his residence in the United

20     States for not less than twenty-five years subsequent to

21     his naturalization and shall have attained the age of

22     sixty-five years when the foreign residence is estab-

23     lished; or

24     (4) had his residence abroad on October 14, 1940,

25     or who thereafter has gone or goes abroad, and tempo-

1   rarily has his residence abroad, solely or principally to

2   represent a bona fide American educational, scientific,

3   philanthropic, commercial, financial, or business organi-

4   zation, having its principal office or place of business in

5   the United States, or a bona fide religious organization

6   having an office and representative in the United States,

7   or an international agency of an official character in

8   which the United States participates, for which he re-

9   ceives a substantial compensation; or

10   (5) has his residence abroad and is prevented from

11   returning to the United States exclusively (A) by his

12   own ill health; or (B) by the ill health of a parent,

13   spouse, or child who cannot be brought to the United

14   States, and for whose care he solely is responsible:

15   *Provided*, That in such case the person having his

16   residence abroad shall, at least every six months, register

17   at the appropriate Foreign Service office and submit

18   evidence satisfactory to the Secretary of State that his

19   case continues to meet the requirements of this sub-

20   paragraph; or (C) by reason of the death of a parent,

21   spouse, or child: *Provided*, That in the case of the death

22   of such parent, spouse, or child the person having his

23   residence abroad shall return to the United States

24   within six months after the death of such relative; or

25   (6) has his residence abroad for the purpose of

1    pursuing a full course of study of a specialized character

2    or attending full-time an institution of learning of a

3    grade above that of a preparatory school: *Provided,*

4    That such residence does not exceed five years; or

5    (7) is the wife, husband, or unmarried child under

6    twenty-one years of age of an American citizen, and

7    who has his residence abroad for the purpose of being

8    with an American citizen spouse or parent who has his

9    residence abroad for one of the objects or causes speci-

10    fied in paragraph (1), (2), (3), (4), (5), or (6)

11    of this section, or paragraph (2) of section 354 of this

12    title; or

13    (8) is the wife, husband, or unmarried child under

14    twenty-one years of age of an American national by

15    birth who while under the age of twenty-one years

16    had his residence in the United States for a period or

17    periods totaling ten years, and has his residence abroad

18    for the purpose of being with said spouse or parent; or

19    (9) was born in the United States or one of its

20    outlying possessions, who originally had American na-

21    tionality and who, after having lost such nationality

22    through marriage to an alien, reacquired it; or

23    (10) has, by Act of Congress or by treaty, United

24    States nationality solely by reason of former national-

257

1    ity and birth or residence in an area outside the conti-

2    nental United States.

3    SECTION 352 (a) (2) NOT APPLICABLE AS TO CERTAIN

4                        PERSONS

5    SEC. 354. Section 352 (a) (2) of this title shall have

6  no application to a national—

7        (1) who is a veteran of the Spanish-American

8    War, World War I, or World War II, and the spouse,

9    children under twenty-one years of age, and dependent

10    parents of such veteran: *Provided*, That any such vet-

11    eran who upon the date of the enactment of this Act

12    has had his residence continuously in the territory of

13    a foreign state of which he was formerly a national or

14    in which the place of his birth is situated, and who has

15    not become expatriated solely because of the exception

16    contained in section 406 (h) of the Nationality Act of

17    1940, shall not be subject to the provisions or require-

18    ments of section 352 (a) (1) of this title unless he

19    fails to establish residence in the United States within

20    one year following the effective date of this Act;

21        (2) who establishes to the satisfaction of the Secre-

22    tary of State, as evidenced by possession of a valid un-

23    expired United States passport or other valid document

S. 716——17

258

1   issued by the Secretary of State, that his residence is

2   temporarily outside of the United States for the purpose

3   of (A) carrying on a commercial enterprise which in

4   the opinion of the Secretary of State will materially

5   benefit American trade or commerce; or (B) carrying

6   on scientific research on behalf of an institution

7   accredited by the Secretary of State and engaged in

8   research which in the opinion of the Secretary of State

9   is beneficial to the interests of the United States; or

10  (C) engaging in such professional work as has been

11  designated by the Secretary of State to be beneficial to

12  the interests of the United States;

13      (3) who is the widow or widower of a citizen of

14  the United States and who has attained the age of sixty

15  years, and who has had a residence outside of the United

16  States and its outlying possessions for a period of not less

17  than ten years during all of which period a marriage re-

18  lationship has existed with a spouse who has had a resi-

19  dence outside of the United States and its outlying pos-

20  sessions in an occupation or capacity of the type desig-

21  nated in paragraphs (1), (2), (3), (4), or (5) (A)

22  of section 353, or paragraphs (1), (2), or (4) of this

23  section; or

24      (4) who has attained the age of sixty years, and

25  has had a residence outside of the United States and its

259

1    outlying possessions for not less than ten years, during

2    all of which period he has been engaged in an occupa-

3    tion of the type designated in paragraphs (1), (2), or

4    (4) of section 353, or paragraph (2) of this sec-

5    tion, and who is in bona fide retirement from such

6    occupation.

7    LOSS OF AMERICAN NATIONALITY THROUGH PARENT'S

8    EXPATRIATION; NOT EFFECTIVE UNTIL CHILD ATTAINS

9    AGE OF TWENTY-FIVE YEARS

10    SEC. 355. A person having American nationality, who

11    is under the age of twenty-one and whose residence is in a for-

12    eign state with or under the legal custody of a parent who

13    hereafter loses American nationality under section 350

14    or 352 of this title, shall also lose his American nationality

15    if such person has or acquires the nationality of such foreign

16    state: *Provided,* That, in such case, American nationality

17    shall not be lost as the result of loss of American nationality

18    by the parent unless and until the child attains the age of

19    twenty-five years without having established his residence

20    in the United States.

21    NATIONALITY LOST SOLELY FROM PERFORMANCE OF ACTS

22    OR FULFILLMENT OF CONDITIONS

23    SEC. 356. The loss of nationality under this chapter shall

24    result solely from the performance by a national of the acts

25    or fulfillment of the conditions specified in this chapter.

260

1        APPLICATION OF TREATIES; EXCEPTIONS

2      SEC. 357. Nothing in this title shall be applied in con-

3  travention of the provisions of any treaty or convention to

4  which the United States is a party and which has been

5  ratified by the Senate upon the effective date of this title:

6  *Provided, however,* That no woman who was a national of

7  the United States shall be deemed to have lost her nationality

8  solely by reason of her marriage to an alien on or after

9  September 22, 1922, or to an alien racially ineligible to

10  citizenship on or after March 3, 1931, or, in the case of a

11  woman who was a United States citizen at birth, through

12  residence abroad following such marriage, notwithstanding

13  the provisions of any existing treaty or convention.

14          CHAPTER 4—MISCELLANEOUS

15  CERTIFICATE OF DIPLOMATIC OR CONSULAR OFFICER OF

16     THE UNITED STATES AS TO LOSS OF AMERICAN NA-

17     TIONALITY UNDER CHAPTER IV, NATIONALITY ACT OF

18     1940, OR UNDER CHAPTER 3 OF THIS TITLE

19      SEC. 358. Whenever a diplomatic or consular officer

20  of the United States has reason to believe that a person

21  while in a foreign state has lost his American nationality

22  under any provision of chapter 3 of this title, or under

23  any provision of chapter IV of the Nationality Act of 1940,

24  he shall certify the facts upon which such belief is based to

261

1   the Department of State, in writing, under regulations pre-

2   scribed by the Secretary of State. If the report of the

3   diplomatic or consular officer is approved by the Secretary

4   of State, a copy of the certificate shall be forwarded to the

5   Attorney General, for his information, and the diplomatic

6   or consular office in which the report was made shall be

7   directed to forward a copy of the certificate to the person

8   to whom it relates.

9   CERTIFICATE OF NATIONALITY TO BE ISSUED BY THE SEC-

10       RETARY OF STATE FOR A PERSON NOT A NATURALIZED

11       CITIZEN OF THE UNITED STATES FOR USE IN PROCEED-

12       INGS OF A FOREIGN STATE

13   SEC. 359. The Secretary of State is hereby authorized

14   to issue, in his discretion and in accordance with rules and

15   regulations prescribed by him, a certificate of nationality

16   for any person not a naturalized citizen of the United States

17   who presents satisfactory evidence that he is an American

18   national and that such certificate is needed for use in judi-

19   cial or administrative proceedings in a foreign state. Such

20   certificate shall be solely for use in the case for which it

21   was issued and shall be transmitted by the Secretary of

22   State through appropriate official channels to the judicial

23   or administrative officers of the foreign state in which it is

24   to be used.

262

1 JUDICIAL PROCEEDINGS FOR DECLARATION OF UNITED

2     STATES NATIONALITY IN THE EVENT OF DENIAL OF

3     RIGHTS AND PRIVILEGES AS NATIONAL

4     SEC. 360. If any person who is within the United States

5 claims a right or privilege as a national of the United States

6 and is denied such right or privilege by any department or

7 independent agency, or executive official thereof, upon the

8 ground that he is not a national of the United States, such

9 person may institute an action against the head of such de-

10 partment or independent agency for a judgment declaring

11 him to be a national of the United States, except that no

12 such action may be instituted in any case if the issue of such

13 person's status as a national of the United States (1) arose

14 by reason of, or in connection with, any deportation or ex-

15 clusion proceeding under the provisions of this or any other

16 Act, or (2) is in issue in any such deportation or exclusion

17 proceeding.  An action under this section may only be in-

18 stituted within five years after the final administrative denial

19 of such right or privilege and shall be filed in the District

20 Court of the United States for the District of Columbia or

21 in the district court of the United States for the district in

22 which such person resides, and jurisdiction over such officials

23 in such cases is hereby conferred upon those courts.

1    TITLE IV—MISCELLANEOUS

2    AMENDMENTS TO OTHER LAWS

3    SEC. 401. (a) Section 1546 of title 18 of the United

4    States Code is amended to read as follows:

5    "§ 1546.   Fraud and misuse of visas, permits, and other

6                    entry documents

7        "Whoever knowingly forges, counterfeits, alters, or

8    falsely makes any immigrant or nonimmigrant visa, permit,

9    or other document required for entry into the United States,

10   or utters, uses, attempts to use, possesses, obtains, accepts,

11   or receives any such visa, permit, or document, knowing it

12   to be forged, counterfeited, altered, or falsely made, or to

13   have been procured by means of any false claim or state-

14   ment, or to have been otherwise procured by fraud or un-

15   lawfully obtained; or

16       "Whoever, except under direction of the Attorney Gen-

17   eral or the Commissioner of the Immigration and Naturali-

18   zation Service, or other proper officer, knowingly possesses

19   any blank permit, or engraves, sells, brings into the United

20   States, or has in his control or possession any plate in the

21   likeness of a plate designed for the printing of permits, or

22   makes any print, photograph, or impression in the like-

23   ness of any immigrant or nonimmigrant visa, permit or

264

1   other document required for entry into the United States,

2   or has in his possession a distinctive paper which has been

3   adopted by the Attorney General or the Commissioner of

4   the Immigration and Naturalization Service for the print-

5   ing of such visas, permits, or documents; or

6       "Whoever, when applying for an immigrant or non-

7   immigrant visa, permit, or other document required for entry

8   into the United States, or for admission to the United States

9   personates another, or falsely appears in the name of a de-

10  ceased individual, or evades or attempts to evade the immi-

11  gration laws by appearing under an assumed or fictitious

12  name without disclosing his true identity, or sells or other-

13  wise disposes of, or offers to sell or otherwise dispose of, or

14  utters, such visa, permit, or other document, to any person

15  not authorized by law to receive such document; or

16      "Whoever knowingly makes under oath any false state-

17  ment with respect to a material fact in any application,

18  affidavit, or other document required by the immigration

19  laws or regulations prescribed thereunder, or knowingly pre-

20  sents any such application, affidavit, or other document con-

21  taining any such false statement—

22      "Shall be fined not more than $2,000 or imprisoned not

23  more than five years, or both."

265

1           AMENDMENTS TO OTHER LAWS

2      (b) Chapter 69 of title 18, United States Code, is

3  amended by adding after section 1428 the following new

4  section:

5      "SEC. 1429. Penalties for neglect or refusal to answer

6  subpena.

7      "Any person who has been subpenaed under the provi-

8  sions of subsection (e) of section 336 of the Immigration

9  and Nationality Act to appear at the final hearing of a peti-

10 tion for naturalization, and who shall neglect or refuse to

11 so appear and to testify, if in the power of such person to do

12 so, shall be fined not more than $5,000 or imprisoned not

13 more than five years, or both."

14     (c) Section 1114 of title 18, United States Code, is

15 amended by deleting the language "any immigrant inspector

16 or any immigration patrol inspector" and by substituting

17 therefor the language "any immigration officer".

18     (d) Subsection (c) of section 8 of the Act of June 8,

19 1938 (52 Stat. 631; 22 U. S. C. 611–621), entitled "An

20 Act to require the registration of certain persons employed

21 by agencies to disseminate propaganda in the United States,

22 and for other purposes", as amended, is hereby further

23 amended by deleting the language "sections 19 and 20 of

266

1  the Immigration Act of 1917 (39 Stat. 889, 890), as

2  amended." and by substituting therefor the language "sec-

3  tions 241, 242, and 243 of the Immigration and Nationality

4  Act."

5     (e) Section 4 of the Act of June 30, 1950 (Public

6  Law 597, Eighty-first Congress, second session), entitled

7  "An Act to provide for the enlistment of aliens in the regular

8  army" is amended to read as follows:

9     "Sec. 4. Notwithstanding the dates or periods of service

10  specified and designated in section 329 of the Immigration

11  and Nationality Act, the provisions of that section are ap-

12  plicable to aliens enlisted or reenlisted pursuant to the

13  provisions of this Act and who have completed five or more

14  years of military service, if honorably discharged therefrom.

15  Any alien enlisted or reenlisted pursuant to the provisions

16  of this Act who subsequently enters the United States, Ameri-

17  can Samoa, Swain's Island, or the Canal Zone, pursuant

18  to military orders shall, if otherwise qualified for citizenship,

19  and after completion of five or more years of military service,

20  if honorably discharged therefrom, be deemed to have been

21  lawfully admitted to the United States for permanent resi-

22  dence within the meaning of such section 329 (a)."

23     (f) Section 201 of the Act of January 27, 1948 (Pub-

24  lic Law 402, Eightieth Congress, second session, 62 Stat. 6)

25  entitled "An Act to promote the better understanding of the

267

1   United States among the peoples of the world and to

2   strengthen cooperative international relations" is amended to

3   read as follows:

4      "SEC. 201. The Secretary is authorized to provide for

5   interchanges on a reciprocal basis between the United States

6   and other countries of students, trainees, teachers, guest in-

7   structors, professors, and leaders in fields of specialized

8   knowledge or skill and shall wherever possible provide these

9   interchanges by using the services of existing reputable

10  agencies which are successfully engaged in such activity.

11  The Secretary may provide for orientation courses and other

12  appropriate services for such persons from other countries

13  upon their arrival in the United States, and for such persons

14  going to other countries from the United States.  When any

15  country fails or refuses to cooperate in such program on a

16  basis of reciprocity the Secretary shall terminate or limit

17  such program, with respect to such country, to the extent

18  he deems to be advisable in the interests of the United

19  States.  The persons specified in this section shall be ad-

20  mitted as nonimmigrants under section 101 (a) (14) of

21  the Immigration and Nationality Act, for such time and

22  under such conditions as may be prescribed by regulations

23  promulgated by the Secretary of State and the Attorney

24  General.  A person admitted under this section who fails to

25  maintain the status under which he was admitted or who fails

1 to depart from the United States at the expiration of the time

2 for which he was admitted, or who engages in activities of

3 a political nature detrimental to the interests of the United

4 States, or in activities not consistent with the security of

5 the United States, shall, upon the warrant of the Attorney

6 General, be taken into custody and promptly deported pur-

7 suant to sections 241, 242, and 243 of the Immigration and

8 Nationality Act.  Deportation proceedings under this section

9 shall be summary and the findings of the Attorney General

10 as to matters of fact shall be conclusive.  Such persons shall

11 not be eligible for suspension of deportation under section

12 244 of the Immigration and Nationality Act."

13      (g)  Paragraph 7 of section 1 of the Act of February 4,

14 1887, as amended (24 Stat. 379; 54 Stat. 899; 62 Stat. 602;

15 49 U. S. C. 1 (7) ), is further amended by deleting the

16 words "immigration inspectors" and by substituting therefor

17 the words "immigration officers".

18      (h)  (1) The first sentence of subsection (c) of section

19 3 of the Act of June 25, 1948, as amended (62 Stat. 1009;

20 64 Stat. 219), is amended by deleting therefrom the lan-

21 guage "from the immigration quota for the country of the

22 alien's nationality as defined in section 12 of the Immigration

23 Act of May 26, 1924 (8 U. S. C. 212) " and by substituting

24 therefor the language "from the annual quota to which an

269

1  immigrant is chargeable as provided in section 202 of the

2  Immigration and Nationality Act,".

3  (2) The second proviso to subsection (c) of section 3

4  of the Act of June 25, 1948, as amended (62 Stat. 1009; 64

5  Stat. 219), is amended by deleting the language "as defined

6  in section 6 of the Act of May 26, 1924, as amended (8 U.

7  S. C. 206)," and by substituting therefor "as provided in

8  section 203 (a) (4) of the Immigration and Nationality

9  Act,".

10  (3) Section 4 (a) of the Act of June 25, 1948, as

11  amended (62 Stat. 1009; 64 Stat. 219), is further amended

12  by deleting the language "upon receipt of a fee of $18, which

13  shall be deposited in the Treasury of the United States to the

14  account of miscellaneous receipts,". The proviso to section

15  4 (a) of the Act of June 25, 1948, as amended, is amended

16  by deleting the language "the immigration quota of the

17  country of the alien's nationality as defined in section 12 of

18  the Immigration Act of May 26, 1924," and by substituting

19  therefor the language "the annual quota to which an immi-

20  grant is chargeable as provided in section 202 of the Immi-

21  gration and Nationality Act,".

22  (4) Section 5 of the Act of June 25, 1948 (62 Stat.

23  1009) is amended to read as follows:

24  "Sec. 5. The quota to which an alien is chargeable for

25  the purposes of this Act shall be determined in accordance

270

1    with the provisions of section 202 of the Immigration and

2    Nationality Act and no eligible displaced person shall be

3    issued an immigrant visa if he is known or believed by the

4    consular officer to be subject to exclusion from the United

5    States under any provision of the immigration laws, with

6    the exception of section 212 (a) (14) of the Immigration

7    and Nationality Act; and all eligible displaced persons and

8    eligible displaced orphans shall be exempt from paying visa

9    fees and head taxes."

10    (5) Section 6 of the Act of June 25, 1948, as amended

11    (62 Stat. 1009; 64 Stat. 219), is further amended by deleting

12    the language "section 6 of the Immigration Act of 1924,

13    as amended (8 U. S. C. 206)," and by substituting therefor

14    the language "section 203 of the Immigration and Nationality

15    Act,".  The last sentence of section 6 of the Act of June

16    25, 1948, is amended by deleting the language "sections 19

17    and 20 of the Immigration Act of February 5, 1917, as

18    amended." and by substituting therefor the language "sec-

19    tions 241, 242, and 243 of the Immigration and Nationality

20    Act."

21    (6) The first sentence of subsection (a) of section 12

22    of the Act of June 25, 1948, as amended (62 Stat. 1009;

23    64 Stat. 219), is amended by deleting the language "sec-

24    tion 12 of the Act of May 26, 1924, as amended," and by

25    substituting therefor the language "section 202 of the Immi-

271

1   gration and Nationality Act,".  Subsection (b) of section 12

2   of the Act of June 25, 1948, as amended (62 Stat. 1009;

3   64 Stat. 219), is amended by deleting the language "sec-

4   tion 11 (f) of the Immigration Act of May 26, 1924

5   (8 U. S. C. 211)," and by substituting therefor the language

6   "section 201 of the Immigration and Nationality Act,".

7   Subsection (b) of section 12 of the Act of June 25, 1948,

8   as amended, is amended by deleting the language "from

9   the immigration quota of the country of nationality of the

10  person who receives the visa as defined in section 12 of the

11  Immigration Act of May 26, 1924 (8 U. S. C. 212)" and

12  by substituting therefor the language "from the annual

13  quota to which the person who receives the visa is charge-

14  able as provided in section 202 of the Immigration and

15  Nationality Act".  The last sentence of subsection (c) of

16  section 12 of the Act of June 25, 1948, as amended, is

17  further amended to read as follows:

18      "Those provisions of section 5 of this Act which relate

19  to section 212 (a) (14) of the Immigration and Nationality

20  Act shall be applicable to persons whose admission is author-

21  ized under the provisions of this section."

22      (i) Section 202 of the Act of June 5, 1950 (Public

23  Law 535, Eighty-first Congress, second session), entitled

24  "An Act to provide foreign economic assistance", is amended

25  by deleting the following: ", and the Attorney General is

272

1 hereby authorized and directed to promulgate regulations

2 providing that such selected citizens of China who have been

3 admitted for the purpose of study in the United States, shall

4 be granted permission to accept employment upon application

5 filed with the Commissioner of Immigration and Naturali-

6 zation" at the end of the last proviso.

7 <center>LAWS REPEALED</center>

8 SEC. 402. (a) The following Acts and all amendments

9 thereto and parts of Acts and all amendments thereto are

10 repealed:

11 (1) Section 2164 of the Revised Statutes (8 U. S. C.

12 135);

13 (2) Act of February 26, 1885 (23 Stat. 332);

14 (3) Second paragraph under the heading "Treasury De-

15 partment" in Act of October 19, 1888 (25 Stat. 567; 8

16 U. S. C. 140);

17 (4) Second and fourth sentences of section 7 of the Act

18 of March 3, 1891 (26 Stat. 1085; 8 U. S. C. 101);

19 (5) Section 8 of Act of March 3, 1893 (27 Stat. 570;

20 8 U. S. C. 172);

21 (6) The last paragraph of section 10 of Act of April 30,

22 1900 (31 Stat. 143; 48 U. S. C. 504);

23 (7) Section 3 of Act of April 29, 1902 (32 Stat. 177);

24 (8) The proviso to the paragraph headed "Bureau of

273

1 Immigration" under caption "Department of Commerce and

2 Labor" in Act of February 3, 1905 (33 Stat. 684) ;

3     (9) The proviso to the paragraph headed "Enforce-

4 ment of Chinese Exclusion Act" under caption "Department

5 of Commerce and Labor" in Act of March 3, 1905 (33 Stat.

6 1182) ;

7     (10) Section 2 (e) of Act of February 9, 1909 (35

8 Stat. 614; 42 Stat. 596; 21 U. S. C. 175) ;

9     (11) The last proviso to the first paragraph headed

10 "Expenses of Regulating Immigration" under caption "De-

11 partment of Commerce and Labor" in the Act of March 4,

12 1909 (35 Stat. 982; 8 U. S. C. 133) ;

13     (12) The proviso to the first paragraph headed "Immi-

14 gration Service" under caption "Department of Commerce

15 and Labor" in the Act of March 4, 1911 (36 Stat. 1442) ;

16     (13) Act of February 5, 1917 (39 Stat. 874) ;

17     (14) Section 5b of Act of March 2, 1917 (39 Stat.

18 951; 48 Stat. 1245; 48 U. S. C. 733a–1) ;

19     (15) Act of May 22, 1918 (40 Stat. 559; 22 U. S. C.

20 223–226b) ;

21     (16) Act of October 16, 1918 (40 Stat. 1012; 8

22 U. S. C. 137) ;

S. 716——18

274

1 (17) Joint resolution of October 19, 1918 (40 Stat.

2 1014);

3 (18) Act of May 10, 1920 (41 Stat. 593; 8 U. S. C.

4 157);

5 (19) Act of December 26, 1920 (41 Stat. 1082; 8

6 U. S. C. 170);

7 (20) The proviso to the paragraph headed "Expenses,

8 Passport Control Act" in the Act of March 2, 1921 (41

9 Stat. 1217; 22 U. S. C. 227);

10 (21) Act of May 19, 1921 (42 Stat. 5);

11 (22) Joint resolution of December 27, 1922 (42 Stat.

12 1065);

13 (23) Act of May 26, 1924 (43 Stat. 153);

14 (24) Act of February 25, 1925 (43 Stat. 976; 8

15 U. S. C. 202 (i));

16 (25) The last proviso to the paragraph headed "Bureau

17 of Immigration" in title IV of the Act of February 27, 1925

18 (43 Stat. 1049; 8 U. S. C. 110);

19 (26) Section 7 (d) of the Act of May 20, 1926 (44

20 Stat. 572; 49 U. S. C. 177 (d));

21 (27) Act of May 26, 1926 (44 Stat. 657; 8 U. S. C.

22 231);

23 (28) Act of May 26, 1926 (44 Stat. 654; 8 U. S. C.

24 241–246);

275

1          (29)  Act of April 2, 1928 (45 Stat. 401; 8 U. S. C.

2   226a) ;

3          (30)  Act of March 4, 1929 (45 Stat. 1551; 8 U. S. C.

4   180–180d) ;

5          (31)  Act of February 18, 1931 (46 Stat. 1171; 8

6   U. S. C. 156a) ;

7          (32)  Act of March 2, 1931 (46 Stat. 1467; 8 U. S. C.

8   109a, 109b) ;

9          (33)  Act of March 17, 1932 (47 Stat. 67; 8 U. S. C.

10   137b–d) ;

11          (34)  Section 7 of Act of May 25, 1932 (47 Stat.

12   166; 8 U. S. C. 181) ;

13          (35)  Act of July 2, 1932 (47 Stat. 571; 8 U. S. C.

14   368b) ;

15          (36)  Section 3 of Act of May 14, 1937 (50 Stat.

16   165; 8 U. S. C. 213a) ;

17          (37)  Act of August 19, 1937 (50 Stat. 696, ch.

18   698) ;

19          (38)  Act of July 27, 1939 (53 Stat. 1133; 48 U. S. C.

20   1251–1257) ;

21          (39)  Title III of Act of June 28, 1940 (54 Stat. 673;

22   8 U. S. (. 451–460) ;

23          (40)  Act of July 2, 1940 (54 Stat. 715–716) ;

276

1    (41) Section 2 of Act of August 16, 1940 (54 Stat.
2    788);

3    (42) Act of August 22, 1940 (54 Stat. 858; 8
4    U. S. C. 109c);

5    (43) Act of October 14, 1940 (54 Stat. 1137);

6    (44) Act of June 20, 1941 (55 Stat. 252; 22 U. S. C.
7    228, 229);

8    (45) Section 2 of Act of December 17, 1943 (57 Stat.
9    601; 8 U. S. C. 212a);

10   (46) Sections 4 and 5 of Act of July 2, 1946 (60 Stat.
11   417; 8 U. S. C. 212b, 212c);

12   (47) Section 5 of the Act of May 31, 1947 (61 Stat.
13   122; 8 U. S. C. 732a).

14   (b) Except as otherwise provided in section 405, all
15   other laws, or parts of laws, in conflict or inconsistent with
16   this Act are, to the extent of such conflict or inconsistency,
17   repealed.

18                  AUTHORIZATION OF APPROPRIATIONS

19   SEC. 403. There are authorized to be appropriated such
20   sums as may be necessary to carry out the provisions of this
21   Act.

22                      RULES AND REGULATIONS

23   SEC. 404. The Attorney General is authorized and
24   empowered to make and prescribe such regulations not in
25   conflict with this Act as he may deem necessary and proper

277

1   in aid of the administration and enforcement of this Act,

2   except that all regulations, insofar as they relate to the

3   powers, duties, and functions of displomatic and consular

4   officers shall be prescribed by the Secretary of State: *Pro-*

5   *vided,* That the Secretary of State and the Attorney Gen-

6   eral may jointly make such rules and regulations as may

7   be necessary to carry into effect the provisions of chapters

8   1 and 3 of title III and such provisions of title I as relate to

9   those chapters.

10                    SAVINGS CLAUSES

11      SEC. 405. (a) Nothing contained in this Act, unless

12   otherwise specifically provided therein, shall be construed

13   to affect the validity of any declaration of intention, petition

14   for naturalization, certificate of naturalization, certificate of

15   citizenship, warrant of arrest, order or warrant of deportation,

16   order of exclusion, or other document or proceeding which

17   shall be valid at the time this Act shall take effect; or to affect

18   any prosecution, suit, action, or proceedings, civil or criminal,

19   brought, or any status, condition, right in process of acquisi-

20   tion, act, thing, or matter, civil or criminal, done or existing,

21   at the time this Act shall take effect; but as to all such prose-

22   cutions, suits, actions, proceedings, statuses, conditions,

23   rights, acts, things, or matters, the statutes or parts of statutes

24   repealed by this Act are, unless otherwise specifically pro-

25   vided therein, hereby continued in force and effect.

278

1     (b) Except as otherwise specifically provided in title

2 III, any petition for naturalization heretofore filed which may

3 be pending at the time this Act shall take effect shall be heard

4 and determined in accordance with the requirements of law

5 in effect when such petition was filed.

6     (c) The repeal of any statute by this Act shall not

7 terminate nationality heretofore lawfully acquired nor restore

8 nationality heretofore lost under any law of the United States

9 or any treaty to which the United States may have been a

10 party.

11     (d) This Act shall not be construed to repeal, alter,

12 or amend section 231 (a) of the Act of April 30, 1946

13 (60 Stat. 148; 22 U. S. C. 1281 (a) ), the Act of June

14 20, 1949 (Public Law 110, section 8, Eighty-first Congress,

15 first session; 63 Stat. 208), nor the Act of June 30, 1950

16 (Public Law 587, Eighty-first Congress, second session;

17 64 Stat. 306).

18                   SEPARABILITY

19     SEC. 406. If any particular provision of this Act, or the

20 application thereof to any person or circumstance, is held in-

21 valid, the remainder of the Act and the application of such

279

1   provision to other persons or circumstances shall not be

2   affected thereby.

3                    **EFFECTIVE DATE**

4      Sec. 407. This Act shall take effect at 12:01 ante

5   meridian on the ninetieth day immediately following the date

6   of its enactment.

82d CONGRESS
1st SESSION

# S. 716

# A BILL

To revise the laws relating to immigration, naturalization, and nationality; and for other purposes.

By Mr. McCARRAN

JANUARY 29, 1951

Read twice and referred to the Committee on the Judiciary